IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JEFFERY A. STALLWORTH**                                                  **PLAINTIFF**

**VS.**                         **CIVIL ACTION NO. 3:16cv246-CWR-FKB**

**GOVERNOR DEWEY PHILLIP**
**"PHIL" BRYANT, ET AL.**                                          **DEFENDANTS**
_____

**DEFENDANTS' MEMORANDUM BRIEF SUPPORTING
THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**
_____

Plaintiff Jeffery A. Stallworth disagrees with the 2016 Mississippi Legislature's policy decision to modify the number, appointment structure, and qualifications of the public airport authority board members governing the largest commercial airport serving the businesses and residents of Central Mississippi.  But he has no right to sue the State of Mississippi, the Mississippi Legislature, or Governor Phil Bryant (collectively the "Defendants") over that determination in this Court.  Stallworth lacks standing to assert his putative federal claims against the Defendants.  Even if he does somehow have standing, the Defendants' Eleventh Amendment and legislative immunities bar his claims.  In short order, Stallworth's purported claims against the Defendants should be dismissed.

**FACTS**

***Senate Bill 2162***.  The Mississippi Legislature duly enacted Senate Bill 2162 during its 2016 Regular Session.  On May 4, 2016, Governor Bryant signed Senate Bill 2162 into law.  Section 1 of the Act creates and establishes the Jackson Metropolitan Area Airport Authority (the "Metropolitan Authority"), and vests the Metropolitan Authority with various powers and duties.  [*See* Senate Bill 2162 at § 1, Ex. "1" to

Motion]. Section 1, (2)-(4) provides for appointing the Metropolitan Authority's nine commissioners, their qualifications, terms of office, and procedures for appointing successors. [*Id.* at § 1, (2)-(4)]. Section 1, (5) specifies that "[u]pon review and approval by the Federal Aviation Administration (FAA)" of the Metropolitan Authority "as an eligible airport sponsor and the FAA's review and approval of the issuance of an airport operating certificate under 14 CFR part 139 with respect to the Jackson-Medgar Wiley Evers International Airport,"[1] the Jackson Municipal Airport Authority (the "Municipal Authority") "is abolished, and all powers and duties, airport equipment, buildings, facilities, inventories, records, personnel, resources and all other property, real or personal, tangible or intangible, including any pertaining to or generated from revenues of the airport, are transferred to" the Metropolitan Authority. [*Id.* at § 1, (5)(a)]. The Act prohibits the Metropolitan Authority from "by sale or otherwise," disposing "of any real property acquired by transfer in accordance with this paragraph (a) or subsequently acquired by the authority." [*Id.*]. Further, Section 1, (5)(b) provides that "[u]pon the transfer required by paragraph (a) of this subsection, the Jackson Metropolitan Airport Authority shall assume all obligations of the Jackson Municipal Airport Authority pertaining to the airport that are in effect at the time of the transfer." [*Id.* at § 1, (5)(b)]. By its terms, Senate Bill 2162 provides the "act shall take effect and be in force from and after July 1, 2016." [*Id.* at p. 7].

---

[1] After Senate Bill 2162's enactment, on June 6, 2016, the FAA published a change to its policy regarding disputed changes of sponsorship at federally obligated, publicly owned airports. [June 6, 2016 FAA Notice of Policy Change on Evaluating Disputed Changes of Sponsorship at Federally Obligated Airports, Ex. "2" to Motion]. The published policy change makes clear that the FAA will not consider applications for changes in airport ownership, sponsorship, governance, or operations before legal disputes regarding such changes are resolved. [*Id.* at p. 2].

***Stallworth's Lawsuit***.  On April 6, 2016, while Senate Bill 2162 was still working its way through the legislative process, Plaintiff Stallworth filed this lawsuit against Governor Bryant, the State of Mississippi, the Mississippi Legislature, the Mississippi Department of Transportation, and "East Metro Parkway." [Complaint, Dkt. 1].  On May 6, 2016, Stallworth filed an amended complaint. [Amended Complaint, Dkt. 3].  Stallworth's amended complaint generally describes Senate Bill 2162, argues the enactment is bad public policy, [*Id.* at pp. 2-3], purports to invoke this Court's jurisdiction under 28 U.S.C. § 1331, [*Id.* at p. 2], and sets forth seven putative "counts" against the Defendants.  [*Id.* at pp. 4-8].

"Count One" purportedly states a federal Fifth Amendment "takings" claim. Stallworth proclaims that he "and other citizens of the City of Jackson had a right and an expectation that the JMAA and the airport which sets [sic] on land paid for by the City of Jackson and owned by it would remain in the City of Jackson." [*Id.* at p. 4].  He further contends "by passing House Bill 2162 [sic], the Defendants have constructed a hostile takeover of property belonging to the City of Jackson and its residents without any compensation whatsoever," and "[t]he Defendants Legislature, State of Mississippi, and Gov. Bryant violated Plaintiff's Fifth Amendment rights by taking his property interest without just compensation." [*Id.* at p. 5].

"Count Two" attempts to assert a federal Fourteenth Amendment procedural due process claim.  Stallworth alleges that "Plaintiff, as a citizen and taxpayer of Jackson, Mississippi, had a right to notice and a hearing before his property was taken," that "the Defendants gave no such hearing to the Plaintiff or the citizens of Jackson prior to taking the property," and "[a]s a direct and proximate cause of the acts of the

Defendants, Plaintiff has suffered harm including emotional distress and a violation of his due process rights." [*Id.* at p. 5].

"Count Three" sketches out a purported federal Fourteenth Amendment equal protection claim. Stallworth asserts that "Plaintiff, as a citizen of Jackson, Mississippi and a taxpayer therein, has a right under the Fourteenth Amendment of the United States Constitution to be treated in a way and manner that was similar to all similarly situated residents of other cities, particularly Madison and Rankin counties." [*Id.*]. He then vaguely contends "Plaintiff and other residents of the City of Jackson, is treated less favorably than these similarly situated residents of Madison, Rankin, and other counties and even less favorably than white residents of Jackson, Mississippi as it relates to obtaining resources or favorable development or treatment from the Department of Transportation or other Defendants including the East Parkway Commission." [*Id.* at pp. 5-6].

Stallworth's second "Count Three" alleges a "breach of fiduciary duty" claim, apparently premised on state law. Stallworth contends a fiduciary duty exists between Governor Bryant, the Legislature, and the Department of Transportation, and the "citizens of the State of Mississippi and of the City of Jackson." [*Id.* at p. 6]. Thus, according to Stallworth, "[t]hese Defendants' failure to pay Plaintiff and the Jackson residents the full value, or any value whatsoever, for its property is a breach of that fiduciary duty owed to Plaintiff thereby entitling his to damages in a [sic] amount to be determined by the jury and Court." [*Id.*].

"Count Four" asserts a "breach of covenant of good faith and fair dealing" claim, also apparently premised on state law. Stallworth alleges "[a]n implied covenant of

-4-

good faith and fair dealing arises from the relationship a State has with her citizens." [*Id*. at p. 7]. As such, Stallworth contends "[t]he Defendants' failure to take JMAA from the Plaintiff as a resident of Jackson and the city itself without just and adequate compensation is a breach of that implied covenant of good faith and fair dealing which entitles Plaintiff to damages and an injunction to prevent such a takeover without compensation." [*Id*.].

"Count Five" asserts another putative federal Fourteenth Amendment equal protection claim. According to Stallworth, "Senate Bill 2162 treats differently the City of Jackson as to its airport than it treats all other municipal airports in Mississippi," and "treats differently the City of Jackson, Mississippi as to its airport with a totally Black governing body than it treats all other municipal airports in Mississippi with white governing bodies." [*Id*. at p. 7].

"Count Six" is titled "weakening or diminishing voting power" but fails to identify any particular basis for such putative cause of action. According to Stallworth, "Senate Bill 2161 transfers property from residents of the City of Jackson to residents in Rankin and Madison counties when those residents either never lived in Jackson or fled Jackson through white flight. Permanent fixtures, which are part of real estate or real property, should not be given to people or residents who leave the property." [*Id*. at p. 7]. He further contends the Act "weakens the City of Jackson's voting strength by giving the City Council and Mayor far shorter terms of their appointees than the appointees of Madison and Rankin counties, the Governor, and Lieutenant Governor. This is a travesty of justice and a covert taking in violation of due process rights and equal protection." [*Id*. at p. 8].

Based upon his putative "counts," Stallworth seeks "an order declaring that their action is a taking, enjoining the Defendants from taking JMAA from the City of Jackson." [*Id*. at p. 8]. Stallworth also claims entitlement to a money damages award "in an amount determined to be just and adequate plus prejudgment and post judgment interest and such other relief as this Court deems just and appropriate." [*Id*. at pp. 8-9].

On June 20, 2016, Defendants answered Stallworth's amended complaint. [Answer and Defenses, Dkt. 7]. On June 24, 2016, Stallworth filed a "Motion for Preliminary Injunction." [Pl. Mot., Dkt. 13].[2] After a telephonic status conference, the Court initially set Stallworth's preliminary injunction motion, and other motions, for a hearing to take place on June 30, 2016. [*See* June 28, 2016 Docket Entry]. The parties subsequently agreed to postpone the June 30 hearing until a later date established by the Court, and to confer on briefing and other deadlines regarding. As of this writing, a new hearing date and briefing schedule in conjunction with a hearing on Stallworth's or the proposed intervenors' motions has not been established, and the proposed intervenors have not been formally permitted to intervene or file and serve their proposed Class Action Complaint. A telephonic conference with the Magistrate Judge is currently set to take place on July 20, 2016 to address those issues. But, in the meantime, Defendants submit the claims asserted against them in Stallworth's amended complaint should be dismissed for the reasons that follow.

---

[2] In addition to Stallworth's preliminary injunction motion, on June 23 and 24, various potential intervenors filed a motion to intervene seeking leave to intervene and file a class action complaint against Governor Bryant and other new defendants, and a motion for preliminary injunction. [*See* Dkt. 9, 16 & 17].

# ARGUMENT

## I. Stallworth lacks standing to pursue his putative federal claims against the Defendants.

"It is well-established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke jurisdiction of the court must establish the requisite standing to sue." ***Whitmore v. Arkansas***, 495 U.S. 149, 154 (1990). Stallworth fails that initial, most basic, requirement for several reasons.

To make out an Article III case or controversy, a federal plaintiff has the burden of proving: (1) an "injury in fact" constituting "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and conduct complained of" meaning an injury "fairly traceable to the challenged action of the defendant[s], and not the result of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1991) (internal citations and quotations omitted). Additionally, and apart from Article III standing limitations, federal courts recognize "other limits on the class of persons who may invoke the courts' decisional and remedial powers." ***Warth v. Sedlin***, 422 U.S. 490, 499 (1975). Those limitations, often referred to as the "prudential standing" doctrine, include

> the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

***Cibolo Waste, Inc. v. City of San Antonio***, 718 F.3d 469, 474 (5th Cir. 2013)

(internal quotations and citations omitted).

Utilizing the foregoing framework, the Court must evaluate a plaintiff's standing for each claim he asserts, **Fontenot v. McGraw**, 777 F.3d 741, 746 (5th Cir. 2015), and a failure to establish each standing element with respect to each claim deprives the Court of jurisdiction over the particular claim at issue. *See* **Rivera v. Wyeth-Ayerst Labs.**, 283 F.3d 315, 319 (5th Cir. 2002).

Senate Bill 2162 does not seek to accomplish anything that would constitute an actionable Fifth or Fourteenth Amendment "taking" no matter what person(s) or entity(ies) may ever attempt to bring such a claim. But, in the meantime, it is patently obvious that Stallworth lacks any Article III standing to assert any such cause of action. At a minimum, Stallworth could never prove any injury in fact which could support a "takings" claim. He does not own the Jackson-Medgar Wiley Evers International Airport. Stallworth's amended complaint admits the property at issue belongs to the City of Jackson. [Amended Complaint at pp. 3-4, Dkt. 3]. He simply does not possess any requisite property interest establishing his standing to pursue a "takings" claim premised upon any governmental actions prescribed by Senate Bill 2162. **Cienega Gardens v. United States**, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken, even for regulatory takings."); **Maniere v. United States**, 31 Fed. Cl. 410, 420 (1994) (collecting authorities and explaining "[p]ursuant to a taking claim under the Fifth Amendment, a plaintiff must initially show standing, including proof of personal injury, that is, the requisite interest in the property at issue and the deprivation thereof by the United States[,]" and "to

demonstrate 'the requisite interest in the property at issue,' the plaintiff must demonstrate ownership of the property at the time of the taking."); ***Trunk v. City of San Diego***, 547 F.Supp.2d 1144, 1154 (S.D. Cal. 2007) ("[T]he Court is unaware of any case where a person with no ownership or occupancy interest in property has been found to have standing to challenge a taking of that property.").

Stallworth also lacks standing to assert his other putative federal claims. According to Stallworth's amended complaint, his alleged Fourteenth Amendment Due Process and Equal Protection injuries caused by Senate Bill 2162, and his ultimate standing to sue the Defendants over them, are apparently founded on his status as a Jackson citizen and taxpayer. [*See* Amended Complaint at pp. 3, 7, Dkt. 3]. At the least, the problem with Stallworth's standing contentions (separate and apart from his federal claims' lack of merit), is that his claimed injuries amount to nothing more than a generalized grievance of alleged harm "shared in substantially equal measure by all or a large class of citizens." ***Warth***, 422 U.S. at 499. Federal plaintiffs do not have standing "to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens." ***Hein v. Freedom from Religion Foundation, Inc.***, 551 U.S. 587, 598 (2007) (internal quotation omitted). "This is because '[t]he judicial power of the United States defined by Article III is not an unconditional authority to determine the constitutionality of legislative or executive acts.'" ***Id.*** (quoting ***Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.***, 454 U.S. 464, 471 (1982)); *see also* ***Lance v. Coffman***, 549 U.S. 437, 442 (2007) (when a plaintiff asserts that the law has not been followed, the plaintiff's "injury is precisely the kind of undifferentiated, generalized

grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past.").

Stallworth's alleged injuries which his amended complaint ties to Senate Bill 2612 are the same purported harms which can be said – and Stallworth even apparently admits – as shared between him and tens of thousands of other citizens and taxpayers. He lacks standing to assert his generalized equal protection and due process grievances on behalf of himself, or even purportedly on behalf of his fellow citizens.

## II.    The Eleventh Amendment bars most, if not all, of Stallworth's claims against the Defendants.

Even assuming for the sake of argument that Stallworth could ever prove standing to sue the State of Mississippi, the Legislature, or Governor Bryant, the Constitution bars his claims against them. The Eleventh Amendment prohibits Stallworth from asserting his putative claims against the Defendants here.

The Eleventh Amendment prohibits a federal court from hearing a claim against a state and its agencies and instrumentalities, regardless of the relief the plaintiff seeks. ***Pennhurst State School & Hosp. v. Halderman***, 465 U.S. 89, 104 (1984); *see also* ***Lewis v. Univ. of Texas Med. Branch at Galveston***, 665 F.3d 625, 630 (5th Cir. 2011) ("[I]n the absence of consent, a [federal court] suit in which the State or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment.") (quotation marks and citation omitted); ***Briggs v. Mississippi***, 331 F.3d 499, 503 (5th Cir. 2003) (the Eleventh Amendment bars suit against state or state entity, irrespective of the nature of relief sought). None of the Defendants consents to Stallworth's suit, and no other Eleventh Amendment exception conceivably applies here.

Accordingly, any and all of Stallworth's purported claims against the State of Mississippi and the Mississippi Legislature – whether based on federal or state law, and no matter whether he seeks declaratory, injunctive, or monetary relief – are barred. *See **El v. Mississippi***, 2013 WL 3712435, at *2-3 (S.D. Miss. July 12, 2013) (dismissing plaintiff's claims against the State of Mississippi pursuant to Eleventh Amendment); ***Fox v. Mississippi***, 2012 WL 3154971, at *4 (S.D. Miss. Aug. 2, 2012) (same), *aff'd*, 551 Fed. Appx. 772 (5th Cir. 2014); *see also **Tornheim v. New York State Senate***, 115 Fed. Appx. 482, 483 (2nd Cir. 2004) (recognizing state's legislative branch of government entitled to Eleventh Amendment immunity).[3] Rather than awarding Stallworth any preliminary injunctive relief against the State of Mississippi or the Mississippi Legislature, his putative claims against those entities should be dismissed.

The Eleventh Amendment also conclusively bars Stallworth's purported claims against Governor Bryant, to the extent any such claims are premised upon state law. Stallworth has apparently sued Governor Bryant in his official capacity.[4] Eleventh Amendment immunity extends to state officials sued in their official capacities. ***Moore***

---

[3] Stallworth's putative federal claims against the State of Mississippi and Mississippi Legislature also fail to state a claim. While his complaint solely cites 28 U.S.C. § 1331 as the basis for this Court's jurisdiction, 42 U.S.C. § 1983 is the only conceivable vehicle Stallworth for Stallworth's alleged federal constitutional claims. If Stallworth's Complaint is construed as asserting putative Section 1983 causes of action against the State of Mississippi or the Mississippi Legislature, any Section 1983 claims against those defendants are not only barred by the Eleventh Amendment, *see **Aguilar v. Texas Dept. of Criminal Justice***, 160 F.3d 1052, 1053 (5th Cir. 1998) ("The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983."), his Section 1983 claims would also fail as a matter of law. States and state agencies do not qualify as "persons" under Section 1983. ***Will v. Michigan Dep't of State Police***, 491 U.S. 58, 71 (1989); ***Burnett v. Hinds County, Miss. ex rel. Bd of Sup'rs***, 2015 WL 5785562, at *3 (S.D. Miss. Sept. 11, 2015).

[4] [*See* Complaint at p. 1 ("Plaintiff Jeffrey A. Stallworth . . . files his complaint against Dewey 'Phil' Bryant, Governor of the State of Mississippi"), Dkt. 1].

***v. Louisiana Bd. of Elementary & Secondary Educ.***, 743 F.3d 959, 963 (5th Cir. 2014).  As such, the Eleventh Amendment precludes claims against state officials acting in their official capacities where the plaintiff seeks monetary relief, or retroactive injunctive or declaratory relief based on allegations that the defendant state official violated federal law in the past.  ***Pennhurst***, 465 U.S. at 102-03; *see also* ***P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.***, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past").  The Amendment also absolutely bars any state law claims against defendant state officials violated, no matter whether the plaintiff seeks monetary damages, or any injunctive or declaratory relief.  ***Pennhurst***, 465 U.S. at 106, 121; ***Hughes v. Savell***, 902 F.2d 376, 378 (5th Cir. 1990).  The Eleventh Amendment completely forecloses Stallworth's monetary relief claims and state law claims against Governor Bryant, just as it does the other Defendants.

## III. Legislative immunity also bars Stallworth's claims against the Legislature and Governor Bryant.

In addition to the Constitutional standing and immunity defenses that trump Stallworth's asserted claims against the Defendants, his claims are also barred by common law legislative immunity.  Stallworth cannot sue the Legislature for passing Senate Bill 2162, or Governor Bryant for signing it.

As the United States Supreme Court has recognized, it "is well-established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities."  ***Bogan v. Scott-Harris***, 523 U.S. 44, 46 (1998).  State legislatures acting within the scope of their legislative duties are absolutely

immune from civil suits for damages.  ***Tenney v. Brandhove***, 341 U.S. 367, 372-79 (1951); *see also* ***Dombrowski v. Eastland***, 387 U.S. 82, 85 (1967) (the purpose of legislative immunity is to protect legislators engaged in the sphere of legitimate legislative activity from the consequences of litigation and the burden of defending themselves).  State legislators likewise enjoy immunity from claims for prospective or injunctive relief premised on their acts taken in a legislative capacity.  ***Supreme Court of Virginia v. Consumers Union***, 446 U.S. 719, 732-34 (1980); *see also* ***State Employees Bargaining Agent Coalition v. Rowland***, 494 F.3d 71, 85-87 (2nd Cir. 2007) (when applicable, legislative immunity doctrine may extinguish injunctive relief claims against state officials); ***Scott v. Taylor***, 405 F.3d 1251, 1255 (11th Cir. 2005) (holding legislator-defendants absolutely immune from claims for prospective relief); ***Larsen v. Senate of the Commonwealth***, 152 F.3d 240, 252-54 (3rd Cir. 1998) (state senators sued for declaratory and injunctive relief shielded by legislative immunity), *cert. denied*, 525 U.S. 1145 (1999).  Stallworth's purported claims targeting Defendant the Mississippi Legislature are barred by absolute legislative immunity.

Governor Bryant also enjoys absolute legislative immunity from Stallworth's claims.  The immunity extends to any government official acting in a legislative capacity, even if the official is not a member of the legislative branch.  ***Bogan***, 523 U.S. at 54-55 (legislative immunity applies to all acts taken as "integral steps in the legislative process").  State Governors, therefore, cannot be sued on claims disputing acts taken in their legislative capacities such as signing a bill into law.  ***Women's Emergency Network v. Bush***, 323 F.3d 937, 950 (11th Cir. 2003) ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law."); *see also*

-13-

*Lattaker v. Rendell*, 269 Fed. Appx. 230, 2008 WL 723978, at *2 (3rd Cir. Mar. 18, 2008) (governor entitled to absolute immunity "for such constitutionally authorized activities as whether to sign or veto a particular bill and whether to recommend proposed legislation to the General Assembly"); *Advanced Auto Transport, Inc. v. Pawlenty*, 2010 WL 2265159, at *3 n. 7 (D. Minn. Jun. 2, 2010) ("[A] governor cannot be sued for signing a bill into law under the doctrine of absolute legislative immunity."); *Lajoie v. Connecticut State Bd. of Labor Relations*, 837 F.Supp. 34, 40 (D. Conn. 1993) (legislative immunity barred claim against governor for failing to prevent legislation from becoming law).  Any and all claims Stallworth purportedly asserts against Governor Bryant premised upon his action(s) in conjunction with Senate Bill 2162's passage, including any claims for monetary damages, are barred by legislative immunity.[5]

## CONCLUSION

For these reasons, Defendants the State of Mississippi, the Mississippi Legislature, and Governor Phil Bryant respectfully request that the Court enter an order dismissing the claims asserted in Plaintiff Jeffery Stallworth's Amended Complaint against them.

---

[5] Additionally, to the extent Stallworth is asserting any state law claims for money damages against Governor Bryant or any of the other Defendants – whether based on a theory of "breach of fiduciary duty," "breach of convenant of good faith and fair dealing," or otherwise – any such claims are barred by sovereign immunity and the Mississippi Tort Claims Act, which is the exclusive remedy for recovery of money damages against the Defendants.  The MTCA bars Stallworth's purported state law damages claims for a number of reasons.  For example, Stallworth has failed to comply with the notice provisions of the Act.  *See* Miss. Code Ann. § 11-46-11(1), (2).  Furthermore, the MTCA specifically prohibits money damage claims against the Defendants premised upon Senate Bill 2162.  *See, e.g.*, Miss. Code Ann. § 11-46-9(1)(a), (e) (claims arising out of legislative action or inaction, and claims arising out of adopting or failing to adopt a statute, are barred).

THIS the 12th day of July, 2016.

          Respectfully submitted,

          STATE OF MISSISSIPPI, the
          MISSISSIPPI LEGISLATURE, and
          GOVERNOR PHIL BRYANT

      By:  JIM HOOD, ATTORNEY GENERAL

      By:  <u>S/Justin L. Matheny</u>
          Justin L. Matheny (Bar No. 100754)
          Krissy C. Nobile (Bar No. 103577)
          Office of the Attorney General
          P.O. Box 220
          Jackson, MS 39205
          Telephone: (601) 359-3680
          Facsimile: (601) 359-2003
          *jmath@ago.state.ms.us*

*Counsel for the State of Mississippi, the Mississippi Legislature, and Governor Phil Bryant*

          Whitney H. Lipscomb (Bar No. 104326)
          Office of Governor Phil Bryant
          550 High Street
          Jackson, MS 39201
          Telephone: (601) 359-3150
          Facsimile: (601) 359-3741
          *whitney.lipscomb@governor.ms.gov*

*Counsel for Governor Phil Bryant*

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date, and also served on the following persons via US Mail, properly addressed and postage prepaid:

Jeffrey A. Stallworth
6286 Hanging Moss Road
Jackson, MS 39206

James L. Henley
P.O. Box 31464
Jackson, MS 39286-1464

Kimberly C. Banks
P.O. Box 2779
Jackson, MS 39207-2779

THIS the 12th day of July, 2016.

                                          <u>S/Justin L. Matheny</u>
                                          Justin L. Matheny