IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JACKSON MUNICIPAL AIRPORT**                                            **PLAINTIFFS**
**AUTHORITY, ET AL.**

**V.**                                        **CAUSE NO. 3:16-CV-246-CWR-FKB**

**GOVERNOR PHIL BRYANT, ET AL.**                               **DEFENDANTS**

**ORDER**

In 2016, the State of Mississippi passed a law to transfer control of the Jackson-Medgar Wiley Evers International Airport from local elected officials to regional and statewide elected officials. *See* Miss. Code Ann. § 61-3-6. The City of Jackson and several of its citizens intervened in this suit as plaintiffs to challenge the law's constitutionality.

Now before the Court is Governor Phil Bryant and Lieutenant Governor Tate Reeves' motion for judgment on the pleadings. They seek to dismiss Counts I-IV of the plaintiffs' eight-count complaint. The motion is fully briefed and ready for adjudication.

**I.**      **Factual and Procedural History**

In 1960, the City of Jackson created the Jackson Municipal Airport Authority (JMAA) to operate the airport on City-owned land. The City retains ultimate control over the airport because the Mayor nominates, and the City Council confirms, JMAA's board members.

The relationship between the City, JMAA, and the Federal Aviation Administration (FAA) is roughly sketched out in the complaint and the briefing. Two facts are relevant today. First, JMAA holds an "Airport Operating Certificate" issued by the FAA. Second, JMAA and the City are "co-sponsors" on federal grants which support the airport. *See* Docket No. 146

(Statement of Interest of the FAA). The City says its contractual obligations under these grants are memorialized in "Sponsor Assurances."

The statute at issue in this case, § 61-3-6, announces the State's plan to replace JMAA with a new airport authority. The new authority's board members will be appointed by elected officials of the City of Jackson, Rankin County, and Madison County, along with the Governor and Lieutenant Governor. The effect is to seize control of the airport from the City of Jackson.

No transfer of power has occurred. In part that is by design: the statute explicitly requires the new airport authority to seek and receive an Airport Operating Certificate from the FAA before it takes over. The FAA, in turn, requires litigation over the airport's governance to be resolved before it will consider an application to transfer an Airport Operating Certificate. The result is that JMAA continues to operate the airport while this lawsuit is pending.

The Governor and Lieutenant Governor seek dismissal of Counts I-IV of the complaint. In Count I, the plaintiffs claim that § 61-3-6 is preempted by federal law. Count II claims that the statute violates the "paramount allegiance" clause of the Mississippi Constitution. Count III consolidates several due process arguments. And Count IV contends that the statute violates the contract clauses of the Mississippi and United States Constitutions.[1]

## II. Legal Standard

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to

---

[1] While federal courts usually cannot adjudicate state-law claims brought against state officials, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), in this case the defendants have voluntarily waived that objection.

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted). "[A] defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citation omitted).

### III. Discussion

#### A. Preemption

In Count I, the plaintiffs claim that § 61-3-6 conflicts with the federal government's comprehensive control of aviation, and therefore violates the Supremacy Clause of the U.S. Constitution. They specifically contend that the statute "contravenes federal law by improperly transferring the Sponsor's Assurances to the new authority . . . . This transfer would force the City to breach the obligations imposed upon the City by its Sponsor's Assurances, which obligations are imposed by the force of federal law." Docket No. 42, at 29.

##### 1. Substantive Law

"The federal government, when acting within the confines of its constitutional authority, is empowered to preempt state law to the extent necessary to achieve a federal purpose." *City of Morgan City v. S. La. Elec. Co-op. Ass'n*, 31 F.3d 319, 321–22 (5th Cir. 1994) (citation omitted).

Every pre-emption case requires the court to examine Congressional intent. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Congressional intent to preempt "can take multiple forms." *Castro v. Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011).

> Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law. Implied preemption can take the form of field preemption, where federal law is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation, or the federal interest in the field is so dominant that it precludes enforcement of state

3

laws on the same subject. Implied preemption can also take the form of conflict preemption: (1) where complying with both federal law and state law is impossible; or (2) where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[2]

*Id.* (quotation marks, citations, and brackets omitted).

Conflict preemption has been explained in fairly broad terms. It exists where state law "would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme. In other words, an application of state law that would frustrate the purpose of a federal statutory scheme is preempted." *Morgan City*, 31 F.3d at 322 (citation omitted); *see also Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004).

At the same time, courts have traditionally applied a "presumption against preemption." *See Levine*, 555 U.S. at 575. "[T]he presumption against preemption applies with particular force when federal law encroaches on a field which the States have traditionally occupied." *Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 656 (5th Cir. 2015) (quotation marks and citation omitted).

"The party asserting federal preemption has the burden of persuasion." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) (citations omitted).

2.  **Analysis**

Federal laws and regulations certainly preempt inconsistent state laws in the field of airline operations and safety. *See Witty*, 366 F.3d at 384 ("Pursuant to its congressional charge to regulate air safety, the Federal Aviation Administration has issued a broad array of safety-related regulations codified in Title 14 of the Code of Federal Regulations."). In this case, however, the

---

[2] Federal regulations can also preempt inconsistent state laws. "To find that a federal regulation preempts state law, [the court] must be satisfied that such preemptive effect was both intended and within the scope of the agency's delegated authority." *Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 655 (5th Cir. 2015) (quotation marks and citations omitted).

plaintiffs have not shown how § 61-3-6 conflicts with federal law or interferes with the achievement of federal objectives.

Section 61-3-6 does not attempt to legislate airport safety, *id.*, regulate aircraft noise, *see City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638 (1973), or assert itself into another issue traditionally controlled by the FAA. The statute does not interfere with the FAA's decision to transfer (or decline to transfer) an Airport Operating Certificate. *See* 14 C.F.R. § 139.101 *et seq*. And the statute does not force the City to breach its Sponsor Assurances. As the Court understands the FAA's statement of interest, if the FAA approves a transfer of the Airport Operating Certificate, "the proposed new sponsor assumes all existing grant applications." Docket No. 146, at 2. In other words, if a transfer is approved, the FAA will relieve the City of its contractual burdens and place them upon the new airport authority.

Contrary to the plaintiffs' position, § 61-3-6 generally dovetails with our system of federalism. Local and state powers control land and governance, while federal regulators determine whether an airport's management is qualified to receive an Airport Operating Certificate and remain in operation. Local and state governments cannot issue Airport Operating Certificates—that authority is indeed preempted by federal law—and federal regulators cannot meddle in land use decisions in the absence of a federal aviation interest. *See Gustafson v. City of Lake Angelus*, 76 F.3d 778, 784 (6th Cir. 1996) ("The FAA has acknowledged that land use matters within the federal aviation framework are intrinsically local."); *Skysign Int'l, Inc. v. City and Cty. of Honolulu*, 276 F.3d 1109, 1117 (9th Cir. 2002) (noting that the FAA does not "preclude local regulation . . . that does not actually reach into the forbidden, exclusively federal areas, such as flight paths, hours, or altitudes."); *Tanis v. Twp. of Hampton*, 704 A.2d 62, 67 (N.J. App. Div. 1997) ("The federal government through the Federal Aviation Authority has the

5

power to regulate the use of air space; however, state and local governments control the establishment of new airports or landing strips.").

The plaintiffs claim support from *City of Oceanside v. AELD, LLC*, 740 F. Supp. 2d 1183 (S.D. Cal. 2010). In that case, a municipality attempted to sell airport land to a private party. The FAA objected. It claimed that the acreage was needed for runway safety purposes, and pointed to an "Airport Layout Plan" which gave the FAA authority to veto proposed modifications to the airport's layout. The district court, recognizing "the federal government's pervasive regulation of aircraft, airspace and aviation safety," agreed with the FAA. *Id.* at 1190. The sale was preempted by "the dominance of the federal interest in aviation safety and more specifically, land use for airport facilities." *Id.*

Our case is readily distinguishable. The FAA has not yet had the opportunity to determine whether a transfer of the airport's governance would violate federal aviation safety standards, an existing Airport Layout Plan, or some other federal interest. *City of Oceanside*'s relevance today might be its suggestion that this is just the start of litigation around § 61-3-6.

The plaintiffs then press that § 61-3-6 is flawed for not taking into account the City's status as an underlying landowner and co-sponsor on the grant agreements.[3] That argument may factor into the FAA's reasoning on whether to transfer an Airport Operating Certificate, but it is not evidence of Congressional intent to preempt local and state control of airport governance.

For these reasons, Count I is dismissed.

---

[3] The contours of this argument are not clear. Section 61-3-6 could not have lawfully conditioned the FAA's transfer decision on the City's consent—that is the definition of state interference with a federal regulatory decision. Perhaps the plaintiffs mean that § 61-3-6 should have required the City's consent before the new airport authority could *apply* to transfer the Airport Operating Certificate. There is no preemption issue there, although it arguably defeats the purpose of the legislation.

### B. Preemption Redux

In Count II, the plaintiffs contend that § 61-3-6 violates the sections of the Mississippi Constitution which announce the State's commitment to the federal Supremacy Clause.

Section six of the Mississippi Constitution provides that Mississippians may control and amend their government as long as "[s]uch change be not repugnant to the constitution of the United States." Section seven of the Mississippi Constitution, meanwhile, prohibits passing "any law . . . in derogation of the paramount allegiance of the citizens of this state to the government of the United States."

The plaintiffs' argument mirrors their earlier contentions about the federal Supremacy Clause. With no explanation for how the analysis should differ, we are left with the same outcome. Count II is dismissed.

### C. Due Process

The plaintiffs next contend that § 61-3-6 violates the Due Process guarantees of the U.S. Constitution and the Mississippi Constitution. They specifically claim that the statute violates Mississippi Code § 61-3-7, which governs how municipalities may band together to establish regional airport authorities.

A review indicates that § 61-3-6 does not run afoul of § 61-3-7. The latter statute explains how municipalities may create (or disband) a regional airport; it covers such topics as the number of days' notice a municipality must give its citizens before voting on whether to join a regional airport. But it does not attempt to govern a municipality or individual's due process rights to object to *the legislature's* consideration of a new airport authority. There is no conflict.

That brings us to the constitutional provisions. There are a bevy of actors and claims here: two sets of plaintiffs (the City and a set of individual residents); two different constitutions

7

(the U.S. Constitution and the Mississippi Constitution); and two types of due process. As the Fifth Circuit explains,

> Due process has two major meanings: first, substantive due process may require courts to void certain types of government action that infringe on individual rights and individual freedom of action; second, procedural due process may require government to assure that individuals are afforded certain procedures before they are deprived of life, liberty, or property.

*Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir. 1993) (citations omitted).

The analysis is simplified by the fact that "[t]he due process required by the Federal Constitution is the same due process required by the Mississippi Constitution." *Sec'y of State v. Wiesenberg*, 633 So. 2d 983, 996 (Miss. 1994) (citation omitted). The remaining distinctions will be discussed below.

### 1. The City's Due Process Rights

This claim is dispensed with ease. Municipalities may not use the federal due process clause to challenge state statutes. *See City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 438 (S.D. Miss. 2012); *Rogers v. Brockette*, 588 F.2d 1057, 1068, 1070 (5th Cir. 1979) (clarifying that "correctly interpreted, these cases do not deal with 'standing,' in the sense in which we use the term," but rather "that, on the merits, the municipality had no rights under the particular constitutional provisions it invoked."). Because the federal and state constitutional provisions are coextensive, the City's state-law due process argument fails as well.

### 2. The Individual Plaintiffs' Due Process Rights

After careful review, the Governor and Lieutenant Governor's motion is insufficient to resolve the individual plaintiffs' due process claims. A footnote in the movants' brief suggests that the individual plaintiffs' procedural due process theory is unavailing because "once an action is characterized as legislative, procedural due process requirements do not apply." *Jackson*

8

*Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) (citations omitted). But the discussion is short and the individuals' substantive due process arguments are not addressed.[4] The better course of action is to await further motion practice on the issue.

Count III is dismissed in part and deferred in part.

**D.     Contract Clauses**

In Count IV, the plaintiffs contend that § 61-3-6 violates the contract clauses of the U.S. and Mississippi Constitutions. *See* U.S. Const. art. I, § 10, cl. 1; Miss. Const. § 16. The clauses are construed similarly. *See City of Starkville v. 4-Cty. Elec. Power Ass'n*, 909 So. 2d 1094, 1112 (Miss. 2005).

The plaintiffs' theory runs into familiar difficulties. With respect to "grants of political or governmental authority to cities, towns, counties, and the like[,] the legislative power of the states is not restrained by the contract clause of the Constitution." *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 250 U.S. 394, 398 (1919). Additionally, on the merits, the FAA's Statement of Interest suggests that the City will be relieved of its contractual obligations if the Airport Operating Certificate is transferred. The City will not have to violate any contract.

Although the briefing regarding any individual plaintiff's contract clause claim is once again thin, the issue can be resolved. The complaint does not describe any airport contract held by any of the individual plaintiffs. They cannot sue for impairment of a contract where no contract exists.

Count IV is dismissed.

---

[4] This may be due to ambiguity in the complaint. It is not clear how these claims may overlap with Count VIII.

## IV. Conclusion

The motion is granted in part and deferred in part.

**SO ORDERED**, this the 25th day of July, 2017.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE