UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JACKSON MUNICIPAL AIRPORT
AUTHORITY, ET AL.                                                                           PLAINTIFFS

VS.                                                     CIVIL ACTION NO. 3:16-cv-246-CWR-FKB

GOVERNOR PHIL BRYANT, ET AL.                                                         DEFENDANTS

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO ENFORCE SUBPOENAS

Before the Court is a Motion to Enforce Subpoenas [214] filed by Plaintiff-Intervenors Jackson Municipal Airport Authority ("JMAA"), the Board of Commissioners of the JMAA ("Board"), and each of the Board members ("Board Members")[1] in their official and individual capacities (collectively "JMAA Plaintiffs"). The motion seeks an order compelling certain members of the Mississippi Legislature (collectively, "Legislators")[2] to respond to subpoenas duces tecum served in this case. For the reasons stated below, the Court finds that the motion should be granted in part and denied in part.

I. Factual Background

This case presents a legal challenge to Senate Bill 2162 ("SB 2162"), a law passed by the Mississippi Legislature during the 2016 Legislative Session and signed by the Governor on May 4, 2016. *See* [42]. Plaintiffs challenge the law, arguing that it amounts to an unconstitutional takeover by the State of Mississippi of the JMAA. *See id.* Plaintiffs' Complaint asserts claims

---

[1] The Board Members include Dr. Rosie L.T. Pridgen, Reverend James L. Henley, Jr., LaWanda D. Harris, Vernon W. Hartley, Sr., and Evelyn O. Reed.
[2] The Legislators include Senators Josh Harkins, Dean Kirby, Philip Moran, Chris Caughman, Nickey Browning, and John A. Polk, Representative Mark Baker, and Alex Monsour, a former member of the Mississippi House of Representatives.

under both Mississippi and federal law. The case is before the Court on federal subject matter jurisdiction. The JMAA Plaintiffs' motion [214] concerns a discovery dispute with non-party members of the Mississippi Legislature who played roles in the passage of SB 2162.[3]

On March 7, 2017, JMAA and the Board served subpoenas on each of the Legislators. [130]-[137]. In April 2017, certain Board Members[4] served subpoenas on four of the Legislators.[5] [205]-[208].

At issue in this dispute is a request, Request #3, that was contained in each of the subpoenas. *See* [215] at 3. The subpoenas request the following:

> 3. Any and all documents, including but not limited to, email communications and text messages and any documents attached thereto (stored or otherwise) exchanged by (sent to and/or from) you and any person, including members of the Mississippi legislature and any governmental agency, body or its representative(s) regarding Senate Bill 2162 and / or the Jackson-Medgar Evers International Airport from January 1, 2014 to present. The responsive information is requested to be produced on a disk, in single page Tiff files, a summation load file, and OCR.

*See id.*

The Legislators object to the request on the grounds of (1) relevance, and (2) privilege. *See* [225] at 7. They argue:

> Documents responsive to category (3) include all correspondence and communications between the legislators and any other person with respect to the passage of Senate Bill 2162. The category seeks to obtain copies of communications between Members of the Mississippi Legislature and government officials regarding Senate Bill 2162's consideration and passage, but it extends to all other persons as well. The JMAA plaintiffs are not entitled to these documents because materials that pertain to the legislators' thought processes or the communications they had regarding legislation are privileged.

---

[3] SB 2162 lists Senator Harkins as its primary author. It lists Senators Kirby, Moran, Caughman, and Browning as additional authors. The bill passed through the Senate Committee on Accountability, Efficiency, and Transparency, chaired by Senator Polk. The bill passed through two House Committees: (1) Judiciary A, chaired by Representative Baker, and (2) Ports, Harbors and Airports, chaired by then-Representative Monsour.
[4] These Board Members included Pridgen, Harris, Hartley, and Reed.
[5] The four Legislators were Senators Kirby, Caughman, and Harkins, and Representative Baker.

[225] at 9. Additionally, the Legislators contend that federal law does not require that they produce a privilege log. They argue that any documents responsive to the request are by their very nature privileged, rendering the creation of a privilege log, as normally required by Fed. R. Civ. P. 26, superfluous. They contend that the doctrine of "absolute [legislative] immunity" also protects them from having to produce a privilege log. *See id.* at 12.[6]

The JMAA Plaintiffs now ask the Court to (1) order the Legislators to produce any responsive, nonprivileged documents, and (2) require them to produce a privilege log for documents the Legislators claim are privileged.

## II. Analysis

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). *See also, e.g., United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 467 (5th Cir. 2015). "The Fifth Circuit has traditionally adhered to a broad and liberal treatment of the federal discovery rules." *Gilleylen v. City of Tupelo*, Mississippi, No. 1:16CV94-SA-DAS, 2017 WL 3283863, at *1 (N.D. Miss. Aug. 2, 2017)(citing *United States v. Holley*, 942 F.2d 916, 924 (5th Cir. 1991)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

---

[6] The Legislators also claim that production of a privilege log "would be unduly burdensome and oppressive considering the small likelihood there would be any non-privileged communications relative to Senate Bill 2162." [225] at 12. To the extent the Legislators are claiming that production of a privilege log would be unduly burdensome due to the responsive documents being privileged, the Court addresses that argument *infra*. To the extent the Legislators contend that production of a privilege log would be unduly burdensome and oppressive for any other reason, the Legislators have failed to provide the required evidence in support of such a claim. *See Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014)("A party resisting discovery must show specifically how each . . . document request is overly broad, unduly burdensome, or oppressive. This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.")(citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

### a. Relevance.

The Complaint in this case alleges, *inter alia*, that Defendants, through passage of SB 2162, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *See* [42] at 39-49. More specifically, the Complaint states, "Plaintiffs, in their individual capacities and as citizens and taxpayers of the City of Jackson and the State of Mississippi, . . . allege that Senate Bill 2162 was based, either in whole or in part, on discriminatory purposes." *Id.* at 41. Courts, in reviewing Equal Protection Clause claims, have found that the motivations behind the allegedly discriminatory law are relevant in determining whether a violation has occurred. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) ("The Supreme Court has instructed us time and again, however, that disparate impact alone cannot suffice to state an Equal Protection violation . . . . Thus, a party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury.") *See also, Gaalla v. Brown,* 460 F. App'x 469, 477-78 (5th Cir. 2012) (citing *Washington v. Davis*, 426 U.S. 229, 243 (1976); *Arlington Hts. v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977); and *Hunter v. Underwood*, 471 U.S. 222, 227 (1985)).

Courts in the Fifth Circuit have found that statements by state legislators are relevant to show discriminatory intent in the passage of legislation. *See Hall v. Louisiana*, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *9 (M.D. La. Apr. 23, 2014)(citing *Village of Arlington,* 429 U.S. at 268.)("The legislators argue that the evidence requested is irrelevant to show discriminatory intent. Contrary to the legislators' argument, statements made by members of the lawmaking body are relevant to show discriminatory intent, which may be part of the proof used to establish Plaintiffs' substantive claims."); *see also Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014)("The evidence the United States seeks to compel [from the state

legislators] is highly relevant to its claim because it bears directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent in enacting SB 14.").

Request #3 appears reasonably tailored to seek documents which may shed light on the Legislators' motivations in drafting and passing SB 2162. Accordingly, the Court finds that Request #3 seeks material that may be relevant to the claims asserted in Counts VII and VIII of the Complaint.[7]

**b. Legislative Privilege**

In addition to requiring that discovery be relevant to the claims and defenses of the case, Rule 26 also requires that the discovery sought be "nonprivileged." The Legislators assert that all documents which may be responsive to Request #3 are protected by "legislative privilege," and, therefore, protected from disclosure.

The United States Constitution's Speech and Debate Clause states: ". . . for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." USCS Const. Art. I, § 6, Cl 1. However, because the Speech and Debate clause only applies to members of Congress, federal courts have had to determine in piecemeal fashion what protections should be afforded to state legislators. Consequently, determining whether a state legislator is entitled to invoke legislative privilege in federal court, or determining the scope of that privilege, is not as simple as it would be under either state law or if the legislator were a member of Congress.

---

[7] The Court's finding of relevance of the documents and information sought by Request #3 is made only as a preliminary finding under Rule 26 of the Federal Rules of Civil Procedure. The Court's finding that Request #3 seeks relevant documents and information should not be construed as a finding that *all* documents and information responsive to Request #3 would be relevant. Further, the Court makes no finding as to the relevance of the documents and information sought in Request #3 for purposes of analysis under the factors in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003), and under the legislative privilege.

**1. Federal Law Applies**

Federal law controls any assertion of legislative privilege the Legislators make in this case. The legislative privilege, as applied to claims to be decided under federal law, "is an evidentiary privilege 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)(citing *Perez v. Perry,* No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)). The rule states:

> Rule 501. Privilege in General
>
> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. While several claims in the Complaint are made under state law, Counts VII and VIII are federal. Accordingly, any privilege which the Legislators seek to invoke must be one found under federal common law.

The Legislators contend that if this case were decided under Mississippi law, they would be completely sheltered from having to produce the requested documents. They may well be correct. *See, e.g., Jones v. Loving*, 55 Miss. 109, 111 (Miss. 1877) (finding that it is not "possible . . . to inquire into the motives which prompted [legislative action]."); *Bond v. Marion Cty. Bd. of Supervisors*, 807 So. 2d 1208, 1218 (Miss. 2001)("this Court will not look to the journals of the legislature to determine whether the legislature [acted properly]."). Likewise, under federal law, if the Legislators were members of Congress, they would likely be shielded by the Speech and

Debate Clause from having to produce the documents requested, as they pertain to "legislative conduct." *See generally Gravel v. United States,* 408 U.S. 606, 622-24 (1972); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-04 (1975) (Congress enjoys absolute privilege from testimony and absolute immunity from liability under the Speech or Debate Clause).

A compelling argument can be made that state legislators should be afforded under federal common law the same protections as federal law provides federal legislators. After all, the law of any given state likely affords state legislators similar protections in state court to those the Constitution provides members of Congress. However, as will be discussed, federal common law in its current form provides state legislators less protection than it does members of Congress.

**2. State Legislators and the Qualified Legislative Privilege**

The Legislators assert a "legislative privilege," but many of the cases they cite to support their interpretation of that privilege discuss "legislative immunity." The doctrines of legislative privilege and legislative immunity are similar, but distinct. As described in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003) *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003) (hereinafter "*Rodriguez*"):

> Closely related to the concept of legislative immunity is the concept of legislative privilege. Although the two doctrines are often discussed interchangeably, there is one key difference. Legislative immunity entitles a state legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint, much as judicial immunity entitles judges to the dismissal of suits against them arising out of the performance of their judicial functions. Legislative privilege, on the other hand, is not absolute. Thus, courts have indicated that, notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions.

*Id.* at 95 (internal citations omitted); *see also United States EEOC v. Wash. Suburban Sanitary Comm'n,* 666 F. Supp. 2d 526, 531 (D. Md. 2009); *Village of Arlington Heights v. Metropolitan Housing Devel. Corp.*, 429 U.S. 252, 268 (1977).

The relevant doctrine to the motion at hand is "legislative privilege," not "legislative immunity." The Legislators are not parties to this action, but instead are the subjects of subpoenas seeking the production of documents. The question thus becomes whether the doctrine of legislative privilege shields the Legislators from having to (1) produce the documents, and/or (2) create a privilege log.

"The Speech and Debate Clause only applies to members of Congress and Senators and does not, by its plain language, apply to state legislators. However, federal courts have wrestled with whether a common law evidentiary legislative privilege applies to state legislators." *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) (citing *Village of Arlington Heights*, 429 U.S. at 268; *National Assn. of Social Workers v. Harwood*, 69 F.3d 622, 631 (1st Cir. 1995); *Star Distribs. Ltd. v. Marino*, 613 F.2d 4, 9 (2d. Cir. 1980); *Rodriguez*, 280 F.Supp.2d at 94-96; *Miles-Un-Ltd., Inc., v. Town of New Shoreham*, 917 F. Supp. 91, 97 (D.N.H. 1996)). "While a few such cases have held that state and local government legislators are immune from providing testimony in most civil cases, the evidentiary legislative privilege has not been extended to all document production." *Id.* (citing *Small v. Hunt*, 152 F.R.D. 509, 513 (E.D.N.C. 1994); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 n. 20 (D. Md. 1992)). "That is, state and local officials may be protected from testifying, but are not necessarily exempted from producing documents." *Id.* These cases also demonstrate that jurisprudence on the Speech and Debate Clause, i.e. cases involving members of Congress, is distinct from federal common law relating to the limited legislative privilege afforded state legislators. *See North Carolina State Conference v. McCrory,* No. 1:13CV658, 2015 WL 12683665, at *3 (M.D.N.C. Feb. 4, 2015)("Distinct from the

legislative immunity afforded federal legislators under Article I of the U.S. Constitution, the legislative privilege of State legislators derives from federal common law.").[8]

### 3. Fifth Circuit Authority on State Legislator Legislative Privilege

The Fifth Circuit has held that the legislative privilege is derived from federal common law and limited in scope, describing the relevant law as follows:

> "While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." This privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."

*Jefferson*, 849 F.3d at 624 (quoting *Perez*, 2014 WL 106927, at *1, and citing *Rodriguez*, 280 F. Supp. 2d at 93-94). Prior to *Jefferson*, district courts in the Fifth Circuit had ruled similarly. "Unlike the absolute privilege afforded to members of Congress, the legislative privilege for state lawmakers is qualified and capable of yielding." *Hall*, 2014 WL 1652791, at *8 (citing *Rodriguez*, 280 F.Supp.2d at 93–94; *Hobert v. City of Stafford*, 784 F.Supp.2d 732, 763 (S.D. Tex. 2011)). Courts in the Fifth Circuit examining the extent to which state legislative privilege is qualified have cited *Rodriguez*, or cases stemming from it, as providing the relevant analysis and law. *See Jefferson,* 849 F.3d at 624; *Perez,* 2014 WL 106927, at *1-2; *Hall*, 2014 WL 1652791, at *8-9; *Harding v. City. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016); *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *1, n. 3 (S.D. Tex. Apr. 3, 2014);

---

[8] The Court acknowledges that some courts examining state legislator legislative privilege have found that the privilege is absolute and indistinguishable from the doctrine of legislative immunity. *See Kay v. City of Rancho Palos Verdes,* No. CV 02-03922 MMM RZ, 2003 WL 25294710, at *11-14 (C.D. Cal. Oct. 10, 2003)(collecting cases finding in favor of an absolute state legislator legislative privilege. However, the court in *Kay* ultimately disagreed with those cases and concluded that the privilege is qualified). "The cases adopting this absolute approach rely in part on the policy underlying common law legislative immunity, i.e., to 'protect the integrity of the legislative process by ensuring the independence of individual legislators.'" *Id.* at 12. (quoting from *Miles-Un-Ltd., Inc.*, 917 F. Supp. at 98). These cases, however, appear to be heavily outnumbered by others finding that the privilege is qualified and distinct from legislative immunity, as the Fifth Circuit has found. *See* discussion *infra*.

and *BBC Baymeadows, LLC v. City of Ridgeland*, No. 3:14-CV-676-HTW-LRA, 2015 WL 5943250, at *5 (S.D. Miss. Oct. 13, 2015)) (citing *Perez*, 2014 WL 106927 at *2).

The *Rodriguez* court, examining legislative privilege in a redistricting case, found that "in deciding whether and to what extent the privilege should be honored, the Court must balance the extent to which production of the information sought would chill the [legislature's] deliberations concerning such important matters as redistricting against any other factors favoring disclosure." *Rodriguez*, 280 F. Supp. 2d at 100. It found that courts should weigh the following factors when determining whether the legislative privilege should be honored:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* at 101. Courts in the Fifth Circuit have adopted the five *Rodriguez* factors in determining whether legislative privilege applies. *See, e.g., Hall*, 2014 WL 1652791, at *9; *Perez*, 2014 WL 106927, at *2. "In considering these factors, 'the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's need to act free of worry about inquiry into its deliberations.'" *Hall*, 2014 WL 1652791, at *9 (quoting *Veasey*, 2014 WL 1340077, at *2; also citing *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct.12, 2011)).

Courts following *Rodriguez* have found that "the privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Hall*, 2014 WL 1652791, at *10 (citing *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9–10). "The privilege . . . also applies to any information that would reveal such opinions and motives. This

includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process." *Id.* Further, communications between legislators or legislative staff and any third party would *not* be subject to the legislative privilege.

If a document meets the requirements of the legislative privilege, the Legislators may properly assert the privilege. Even then, however, because the privilege is qualified, it may be overcome, and production of the document compelled, based upon the Court's weighing of the five *Rodriguez* factors.

### 4. Waiver of the Legislative Privilege

The Legislators urge the Court to find that communications between legislators and outsiders regarding legislation should also be protected by the legislative privilege. [225] at 10-11. In support of their position, the Legislators cite three cases: (1) *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007; (2) *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ari. 2016), and (3) *Tohono O'odham Nation v. Ducey*, 2016 WL 3402391 at *1, *4 (D. Ariz. June 21, 2016).

In response, JMAA Plaintiffs contend that the privilege does not extend to conversations between legislators and third parties. *See* [229] at 9 (citing, *Perez*, 2014 WL 106927, at *2; *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *10; and *Rodriguez*, 280 F. Supp. 2d at 101). While the Fifth Circuit has not addressed waiver of the legislative privilege, it has favorably cited and quoted from *Perez* with regard to the qualified nature of the privilege in general. *See Jefferson*, 849 F.3d at 624. And the *Perez* court found that "[t]o the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g. party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents

11

of those specific communications." *Perez*, 2014 WL 106927, at *2 (parenthetical in original). Other courts have also found that a legislator waives legislative privilege with regard to any document he shares with a third party. *See Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (Although the privilege extends to legislative staffs and experts, "communications with 'knowledgeable outsiders' — e.g., lobbyists — fall outside the privilege."); *Lee v. Virginia State Bd. of Elections,* No. 3:15-CV-357 (HEH-RCY), 2015 WL 9461505, at *1 (E.D. Va. Dec. 23, 2015)("legislative privilege does not preclude the production of communications between and among the Nonparty Legislators and third parties, such as state agencies, constituents, and lobbyists, among others ("Third Parties"), [and] . . . does not preclude the production of communications between and among the Legislative Employees and Third Parties . . . .").

The Court finds that to the extent otherwise-privileged documents or information have been shared with third parties, the privilege with regard to those specific documents or information has been waived. On this issue, the three cases cited by the Legislators are each readily distinguishable.

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates* addresses application of the legislative privilege to members of Congress *vis a vis* the Speech and Debate Clause. *See* 506 F. Supp. 2d 30, 52-60 (D.D.C. 2007). As discussed *supra*, the Speech and Debate Clause does not apply to state legislators. *See, e.g., Florida v. United States*, 886 F. Supp. 2d 1301, 1303 (N.D. Fla. 2012) ("To be sure, a state legislator's privilege is qualified, not absolute; a state legislator's privilege is not coterminous with the privilege of a member of Congress under the Constitution's Speech and Debate Clause.").

*Puente Arizona v. Arpaio* addresses a similar circumstance to that in the *case sub judice*, and supports the Legislators' position that all third-party communications should be privileged. However, the *Puente Arizona* court's decision is predicated upon that court's interpretation of two

other cases: *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) and *Almonte v. City of Long Beach*, 478 F.3d 100 (2nd Cir. 2007). The *Puente Arizona* court found that *Miller* defined the relevant scope of the legislative privilege as applied to state legislators. *Puente Arizona*, 314 F.R.D. at 670. *Miller*, however, concerned the legislative privilege as applied to members of Congress, not state legislators, and was thus not applicable. *See Miller*, 709 F.2d at 526 (former Congressman claimed privilege pertaining to actions taken while a member of Congress). The *Puente Arizona* court also found that *Rodriguez* was no longer good law, and had been abrogated by the Second Circuit in *Almonte*. *See Puente Arizona*, 314 F.R.D. at 670. *Almonte* does not, however, appear to have abrogated *Rodriguez*,[9] and this Court can find no other opinion which held similarly. In fact, earlier this year and ten years after the *Almonte* decision, the Fifth Circuit cited *Rodriguez* favorably in *Jefferson*, and, thus, found *Rodriguez* to be good law.

The third case the Legislators cite, *Tohono O'odham Nation v. Ducey*, also out of Arizona, relies on both the *Puente Arizona* decision, and upon *Gravel v. United States*, 408 U.S. 606, 625 (1972), a Speech and Debate Clause case regarding members of Congress and their staff. *See Tohono O'odham Nation*, 2016 WL 3402391, at *4. For the reasons already stated, the Court also finds this case unpersuasive.

The Court finds that to the extent documents or information otherwise protected by the legislative privilege have been shared with third parties, the privilege has been waived. Accordingly, the Legislators must produce those documents.

---

[9] The Court notes that *Almonte* did not address *Rodriguez* or the issue of legislative privilege. Instead, *Almonte* exclusively concerned legislative immunity. *See Almonte*, 478 F.3d at 103-04. And courts in the Second Circuit continue to cite *Rodriguez* as good law as recently as September 2017. *See, e.g., Citizens Union of City of New York v. Attorney Gen. of New York,* No. 16CV09592RMBKHP, 2017 WL 3836057, at *11 (S.D.N.Y. Sept. 1, 2017). Further, a three-judge panel of the same court as *Puente Arizona* cited *Rodriguez* and used the *Rodriguez* factors to find that documents were not protected by legislative privilege in 2014, seven years after the *Almonte* decision. *See Harris v. Ariz. Indep. Redistricting Comm'n,* 993 F. Supp. 2d 1042, 1070-71 (D. Ariz. 2014). The Supreme Court of the United States affirmed the three-judge panel's decision in *Harris v. Ariz. Indep. Redistricting Comm'n*, 136 S. Ct. 1301 (2016), though the legislative privilege issue was not addressed in the appeal.

**c. Privilege Log**

The Legislators have invoked the legislative privilege in response to Request #3 without producing an accompanying privilege log. Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure provides that where a party withholds documents under a privilege claim, the party must expressly make the claim, and must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See also Walker v. George Koch Sons, Inc.*, No. 2:07-CV-274-KS-MTP, 2008 WL 4371372, at *6 (S.D. Miss. Sept. 18, 2008).

> Rule 26 of the Local Uniform Civil Rules states:
>
> A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: name of the document, electronically stored information, or tangible thing; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege.

L.U.Civ.R. 26(e).

Claiming that *all* documents responsive to Request #3 would categorically fall within the legislative privilege, the Legislators have not produced a privilege log. In support of their position, the Legislators rely heavily on *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2013), and essentially claim that the legislative privilege is absolute. Although the Court finds that the Legislators have made a good faith argument based on *Hubbard*, the Court also finds that *Hubbard,* an Eleventh Circuit opinion, is inconsistent with the Fifth Circuit view (and apparent majority view) of the legislative privilege as a limited, qualified privilege.[10]

---

[10] *Hubbard* does not recognize a distinction between the concepts of legislative privilege, legislative immunity, and the Speech and Debate Clause as applied to state legislators. In support of its interpretation of state legislator "legislative privilege," *Hubbard* cites the following cases: *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (dealing

14

Considering the claims in this case, the specific request, and the privilege at issue, the Court finds that Fed. R. Civ. P. 26 and L.U.Civ.R. 26 require a privilege log. Accordingly, should the Legislators withhold any documents responsive to Request #3, they must also produce a privilege log identifying all such documents, in accordance with Fed R. Civ. P. 26 and L.U.Civ.R. 26. Should Plaintiffs wish to challenge a privilege claim as to any documents on the Legislators' privilege logs, Plaintiffs must file a motion identifying the specific documents to which they contest the claim of privilege and setting forth their arguments for production under the *Rodriguez* factors and otherwise. After briefing on any such motion has been completed, the Court will, if necessary, conduct an *in camera* review, in whole or part, and rule on the motion.

### III. Conclusion

For the reasons given above, IT IS ORDERED that:

The Motion to Enforce Subpoenas [214] is GRANTED IN PART and DENIED IN PART.

By February 28, 2018, the Legislators must produce the nonprivileged documents responsive to Request #3 and must produce a privilege log identifying the responsive documents withheld from production under a claim of privilege. Any privilege log must comply with and provide the information required by Fed. R. Civ. P. 26(b)(5)(A) and L.U.Civ.R. 26(e).

SO ORDERED, this the 19th of December, 2017

    /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

---

with legislative immunity of state legislators); *United States v. Gillock*, 445 U.S. 360, 361 (1980) (finding that Fed. R. Evid. 501 does not bar introduction of legislative acts as evidence in a criminal prosecution of a state legislator); *Reeder v. Madigan*, 780 F.3d 799, 800, 805 (7th Cir. 2015) (cited by the *Hubbard* court for the proposition that the case "affirm[s] the legislative privilege of state representative and senators." However, *Reeder* does not actually discuss legislative privilege at all, and instead concerns legislative immunity. *See id.*at 802-03.); *Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) (discussing standing and legislative immunity); *Baraka v. McGreevey*, 481 F.3d 187, 196-97 (3d Cir. 2007) (discussing legislative immunity); *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (finding that legislative privilege did not apply to the facts of that case); and *MINPECO, S.A. v. Conticommodity Servs.*, Inc., 844 F.2d 856, 859 (D.C. Cir. 1988) (pertaining to the Speech and Debate Clause and members of Congress, not state legislators).