IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JEFFERY A. STALLWORTH                                                PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:16cv246-CWR-FKB

GOVERNOR DEWEY PHILLIP
"PHIL" BRYANT, ET AL.                                                DEFENDANTS

and

TONY T. YARBER, Mayor of the City of
Jackson, Mississippi, on behalf of the
Citizens of the City of Jackson, ET AL.              INTERVENOR-PLAINTIFFS

VS.

PHIL BRYANT, in his Official Capacity as
Governor of the State of Mississippi, ET AL.                         DEFENDANTS
_____

**GOVERNOR BRYANT'S MEMORANDUM OF AUTHORITIES
SUPPORTING HIS RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
TO DENY OR DEFER RULING ON MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO THE COMPLAINT'S COUNTS V AND VI**
_____

This two year-old, multi-party, multi-claim lawsuit has already generated over 300 docket entries. Slowly, as the plaintiffs would have it, but surely nevertheless, the case is moving along. Nine months ago, the Court eliminated half the plaintiffs' claims via judgment on the pleadings. Governor Bryant's pending motion for partial summary judgment seeks to take the next appropriate step: carve two more illegitimate legal claims out of the complaint.

The plaintiffs have responded with their best legal arguments. They also blame Counts V and VI's many legal flaws on longstanding discovery fights they instigated with several Mississippi legislators and the Governor. The discovery disputes are a

convenient smokescreen. The discovery is irrelevant to whether, as a matter of law, 2016 Senate Bill 2162 violates Section 87 of the Mississippi Constitution. The plaintiffs' Rule 56(d) delay request should be denied, and the complaint's Counts V and VI should be dismissed.

## FACTS

Nearly two years ago, ex-Jackson Municipal Airport Authority Commissioner and former plaintiff Jeffery Stallworth initiated this lawsuit challenging 2016 Senate Bill 2162. [Dkt. 1]. The bill established the Jackson Metropolitan Area Airport Authority to run the Jackson-Evers International Airport, and, upon FAA approval, abolishes the Jackson Municipal Airport Authority. *See* Miss. Code Ann. § 61-3-6.

In late June 2016, JMAA, its Board of Commissioners, and then-current JMAA and City of Jackson officials, in their "official" and "individual" capacities,[1] moved to intervene and sought an injunction. [Dkt. 9, 16, 17]. In mid-July, after the Court allowed intervention, JMAA filed its conglomerated eight "count" complaint. [Complaint, Dkt. 42]. Pertinent here, Count V asserts S.B. 2162 is a "special law" and violates the Mississippi Constitution Section 87's provision that "in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted." [*Id.* at pp. 35-36]. Count VI demands injunctive relief, on the JMAA and Jackson plaintiffs' behalf, premised on Count V's legal claim and their other (now dismissed) counts.

---

[1] This brief refers to the intervenor-plaintiffs collectively as "JMAA," and the three various distinct groups of current "official" and "individual" capacity plaintiffs as "JMAA plaintiffs," "Jackson plaintiffs," and "individual plaintiffs" where necessary. [*See* Chart in Gov. Mem. at pp. 10-11, Dkt. 269].

Even before JMAA intervened, it admitted Count V asserts a pure legal claim. In June 2016, JMAA contended Count V presents a question of law and demanded an injunction because S.B. 2162 "on its face, violates the prohibition on special legislation provided in Article 4, § 87 of State of Mississippi's Constitution." [Pl. Mem. at p. 8, Dkt. 17]. As it turns out, the Court never addressed Count V's legal question at the time. The parties agreed to maintain the status quo. [*See* Dkt. 36, 64]. That obviated JMAA's desired preliminary injunction proceedings.

Once JMAA intervened, almost four months elapsed before it served all four defendants with process. After that delay, the case proceeded to discovery and the Court entered a case management order. [Dkt. 64]. The December 13, 2016 CMO, to which the parties agreed, roughly allowed a six-month discovery period. [*Id.*]. During that time, the parties exchanged initial disclosures and written discovery, served expert disclosures, and, at JMAA's behest, the discovery deadline was extended until June 30, 2017. [*See, e.g.*, Dkt. 114, 115, 118, 119, 166, 172, 174, 186].

June 30, 2017 was an illusory deadline. Nine months later, as of this writing, the case is still sitting on the docket. No discovery deadline currently exists due to a series of ongoing discovery disputes JMAA started over a year ago.[2]

### JMAA's Discovery Dispute with Non-party Legislators

In March-April 2017, JMAA served eight legislators with subpoenas. [Dkt. 130-138, 205-208]. The subpoenas, among other things, sought each legislators' documents

---

[2] Although JMAA's disputes have stymied the case's overall progress, it has not successfully prevented the Court from adjudicating some of JMAA's legal claims. As mentioned, on July 25, 2017, the Court dismissed the Jackson plaintiffs' Counts I, II, III, and VI. [Order, Dkt. 230]. As of now, only the JMAA and Jackson plaintiffs' Counts V and VI, and the individual plaintiffs' legal theories in Counts VII and VIII, remain. [*Id.*].

regarding "Senate Bill 2162 and/or the Jackson-Medgar Evers International Airport from January 1, 2014 to present." [*See* Dkt. 130 at p. 2]. The legislators timely objected on legislative privilege grounds. [*See* Dkt. 214-1, 214-2]. Two months later, and with the then-current June 2017 discovery deadline just a few weeks away, JMAA sought to enforce the subpoenas. [Dkt. 187, 214].

The legislators argued legislative privilege under state and federal law protected their subpoenaed documents. [Legislators' Mem. at pp. 6-8, Dkt. 225]. JMAA skirted the state law privilege issue. It told the Court the legislators' subpoenaed documents only related to their federal discriminatory intent "claim that Senate Bill 2162 violates the rights to equal protection under the law of all individual citizens in the City of Jackson." [Pl. Mem. at p. 15, Dkt. 229].

The Magistrate Judge relied on JMAA's representation. On January 2, 2018, in ordering the legislators to comply with the subpoenas in part, the Magistrate found the requested documents may be relevant to the individual plaintiffs' claims in Counts VII (equal protection) and Count VIII (due process). [Order at pp. 4-5, Dkt. 251]. That finding was significant, as the Magistrate recognized, because if the subpoenas related to the complaint's state law claims and thereby implicated state privilege issues, the legislators' privilege argument would likely prevail. [*Id.* at pp. 6-7].

The legislators objected to the Magistrate's January 2 order. [Dkt. 252]. In response, JMAA repeatedly solidified its position that the subpoenaed documents relate to the individual plaintiffs' discriminatory intent claims under the Equal Protection Clause, and are thus allegedly non-privileged under federal law. [Pl. Response at pp. 3, 5-6, 13, Dkt. 257]. The legislators' objection is currently pending before the District

Judge.

## JMAA's Discovery Dispute with Governor Bryant

Meanwhile, immediately before the original extended June 30, 2017 discovery deadline expired, JMAA demanded to take Governor Bryant's personal deposition. After a conference with the Magistrate, JMAA abandoned its untenable position and settled for a 30(b)(6) deposition of the Governor's Office. JMAA noticed the deposition to cover eighteen separate and wide-ranging topics of inquiry. [Dkt. 240-1]. On August 18, 2017, JMAA deposed Drew Snyder, Governor Bryant's then-Deputy Chief of Staff. Mr. Snyder was fully prepared. He answered every question on JMAA's chosen wide-ranging topics over nearly seven hours.

JMAA cannot credibly accuse the Governor of obstructing its discovery. In March 2017, five months before Mr. Snyder's deposition, Governor Bryant responded to JMAA's interrogatories and produced thousands of pages of documents, including all documents in the Governor's Office's possession reflecting non-privileged communications with respect to S.B. 2162. Also before the deposition, the Governor's Office handed over copies of all the Governor's legislative privileged documents. Then, at the day-long deposition, Mr. Snyder answered every inquiry, including, and subject to an agreed protective order, all questions regarding the privileged documents and matters subject to legislative privilege. [*See* Dkt. 239].

After Mr. Snyder's deposition, JMAA sat on its hands for over three months. Then, right before Thanksgiving, it claimed a need to follow-up on Mr. Snyder's testimony with deposing the Governor's Chief of Staff, Joey Songy, and two policy advisors, Bobby Morgan and Alice Perry. On January 11, 2018, JMAA moved to compel

the depositions. [Dkt. 255, 256]. Governor Bryant opposed the motion and filed his own motion for protective order on several grounds, including, among other things, the well-established high-ranking government official testimonial privilege, undue burden, and JMAA's deficient relevance and proportionality showings. [Dkt. 259-261, 273].

Even though relevance is important to JMAA's dispute pending before the Magistrate, over the course of two briefs, JMAA dodged that issue. Nobody, apparently including JMAA, knows how its sought after testimony connects with any remaining claims in its lawsuit. But from what JMAA would admit, its putative depositions would explore the deponents' "respective roles related to 2016 S.B. 2162" and a handful of possible communications they may have had with "third parties" while the bill wound its way through the Legislature. [Pl. Mem. at pp. 6-7, Dkt. 256; Pl. Mem. at p. 7, Dkt. 267]. As of now, JMAA's and Governor Bryant's competing discovery motions are fully briefed and awaiting the Magistrate's ruling.

**Governor Bryant's Pending Motion for Partial Summary Judgment and JMAA's Rule 56(d) Counter-motion**

Like the Complaint's now-dismissed first four "counts," Counts V and VI boil down to pure legal questions. On February 2, 2018, Governor Bryant took the next step toward further whittling down this lawsuit and moved for summary judgment on those counts. [Dkt. 268]. The Governor's supporting memoranda of authorities establish that Count V's legal claim under the Section 87 of the Mississippi Constitution's "special law" prohibitions fails as a matter of law, and Count VI's request for injunctive relief fails to state an independent legal claim. [Gov. Mem. at pp. 11-21, Dkt. 269; Gov. Rebut. Mem. at pp. 2-11, Dkt. 305].

JMAA's response did not quarrel with any of the Governor's undisputed material facts. [Dkt. 281, 282]. Instead, it laid out all its legal arguments, and separately attempted to invoke Rule 56(d).

The Rule 56(d) delay request concentrates on JMAA's discovery disputes with the non-party legislators and Governor Bryant. [Dkt. 279, 280]. JMAA allegedly needs the legislators' subpoenaed documents because they "had key roles in the passage of Senate Bill 2162," and "there is a strong likelihood that the requested documents concerning their thought process regarding the legislation will reveal information about the intended beneficiaries, goals and purpose of the law." [Pl. Mem. at pp. 5-6, Dkt. 280]. With respect to the staff members' depositions, JMAA tersely asserts the "same is true" because they "were either involved in the conception, presentation, debate, or passage of Senate Bill 2162" and conclusorily alleges their depositions will reveal information "relevant to determining whether Senate Bill 2162 violates section 87 of the Mississippi Constitution." [*Id.* at p. 6]. Premised on those thin statements, JMAA seeks to indefinitely defer a ruling on Governor Bryant's motion, or deny it altogether. [*Id.* at pp. 6-7].

## ARGUMENT

A "casual reference to the existence of ongoing discovery" cannot forestall summary judgment. ***Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit***, 28 F.3d 1388, 1396 (5th Cir. 1994) (quotations omitted). Instead, to obtain Rule 56(d) relief, the proponent of delay must satisfy a two-prong test. The movant must first "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist." ***American***

***Family Life Assur. Co. of Columbus v. Biles***, 714 F.3d 887, 894 (5th Cir. 2013) (quotations omitted). Then it must prove "how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." ***Id.*** (quotations omitted). JMAA's submission satisfies neither prong.

I.  **JMAA Failed the Task of Identifying "Specified Facts" its Allegedly Needed Discovery Targets.**

The Fifth Circuit has cautioned that summary judgment delay is not a tool "to open the discovery net to allow a fishing expedition." ***Paul Kadair, Inc. v. Sony Corp. of America***, 694 F.2d 1017, 1029 (5th Cir. 1983) (quotations omitted). Thus, a Rule 56(d) movant cannot "rely on vague assertions that discovery will produce needed, but unspecified facts." ***Washington v. Allstate Ins. Co.***, 901 F.2d 1281, 1285 (5th Cir. 1990); *see also* ***Handy v. Madison County, Mississippi***, 2017 WL 3188420, at *3 (S.D. Miss. July 25, 2017) (a "general statement of need" is not enough to satisfy Rule 56(d)). Rather, to satisfy Rule 56(d)'s first prong, JMAA was obligated to identify specific facts it believes more discovery will produce. ***Raby v. Livingston***, 600 F.3d 552, 561 (5th Cir. 2010).

JMAA's pro forma motion papers and attorney declaration say nothing about any particular facts it will gain from legislators' documents or the Governor's staff members' testimony. JMAA instead relies on the notion its disputed discovery targets legislators' "thought process" regarding S.B. 2162 with a hope it will "reveal information about the intended beneficiaries, goals and purpose of the law." [Pl. Mem. at p. 5, Dkt. 280]. An alleged need to explore for legislators' "thoughts" is not an identification of "specified facts." That merely outlines a broad topic of inquiry which JMAA believes it is entitled

to probe. JMAA failed to identify any "specified facts" it seeks and, in turn, failed the first prong of Rule 56(d)'s test.

## II. JMAA's So-called Needed Discovery Lacks any Bearing on Counts V and VI's Legal Claims.

Worse than its empty "specified facts" showing, JMAA leaves everyone guessing how any additional discovery relates to its legal theory under Section 87 of the Mississippi Constitution. Rule 56(d) required JMAA to establish its discovery will produce "specified facts" that, if proven, "will influence the outcome of the pending summary judgment motion." *American Family Life*, 714 F.3d at 894 (quotations omitted). Nothing JMAA's additional discovery could ever uncover would improve Counts V and VI's deficient legal claims. It failed to meet Rule 56(d)'s second prong.

### A. Governor Bryant's Dispositive Motion Exposes the Legal Fallacies in JMAA's Section 87 Theory.

The Governor's pending summary judgment motion only targets the complaint's Counts V and VI. Count V, and by extension Count VI, each are pure legal questions. Count V specifically contends S.B. 2162 is a "special law" which violates Section 87 of the Mississippi Constitution's proviso that "in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted."[3] Section 87 allegedly applies to S.B. 2162, according to Count V, because Mississippi Code Section

---

[3] Section 87 provides in full:

No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief can be given by any court of this State; nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.

-9-

61-3-7's "regional airport authority" scheme existed before S.B. 2162 was passed. [Complaint at p. 36, Dkt. 42]. Thus, Count V reasons S.B. 2162 conflicts with Section 61-3-7, and thereby Section 87, given the pre-existing code section could have been "made applicable" to accomplish its goals. [*Id.*].

Count VI, for its part, states no independent cause of action. It merely requests injunctive relief on behalf of the JMAA and Jackson plaintiffs tied to their first five counts in the complaint.[4]

Additional fact discovery will not "influence the outcome" of a dispositive motion, as Rule 56(d) contemplates, if the motion only concerns questions of law. For that reason, as the Fifth Circuit and other courts have recognized, a requested delay for additional discovery can, and should, be denied when a summary judgment motion turns on legal issues. ***Brazos Valley Coalition for Life, Inc. v. City of Bryan, Texas***, 421 F.3d 314, 327 (5th Cir. 2005); *see also* ***DeGrassi v. City of Glendora***, 207 F.3d 636, 643 (9th Cir. 2000) (affirming denial of discovery delay where issues on summary judgment only questioned matters of law); ***American General Life Ins. Co. v. Hannah***, 2012 WL 6132507, at *3 (N.D. Miss. Dec. 10, 2012) (denying Rule 56(d) motion where the plaintiff "failed to show how discovery—the search for *facts*—would assist her in opposing the questions of *law* raised by the [defendants'] motion for summary judgment") (emphasis in original); ***Myers v. Mississippi Office of Capital Post-Conviction Counsel***, 720 F.Supp.2d 773, 776 n. 1 (S.D. Miss. 2010)

---

[4] Count VI's viability does not depend on any additional discovery. As explained in Governor Bryant's motion papers, Count VI fails because it is only asserted by the JMAA and Jackson plaintiffs. If Count V is dismissed, that leaves the JMAA and Jackson plaintiffs with no remaining claims. Count VI should then be dismissed since it does not state an independent cause of action. [*See* Gov. Mem. at p. 21, Dkt. 269].

(Rule 56(d) relief inappropriate where the summary judgment issues "are legal, and it is not apparent how additional discovery would advance [the Rule 56(d) movant's] case"); ***Fullerton v. Merlin C. Reiser & Merco, L.L.C.***, 2008 WL 5246128, at *2 n. 2 (S.D. Miss. Dec. 12, 2008) (Rule 56(d) relief unwarranted where its proponent fails to prove how discovery will enable it to respond to legal issues). Such is the case here.

### 1. No Additional Discovery is Needed or Relevant to Adjudicate S.B. 2162's "General Law" Status.

Section 87 only regulates "special laws," not "general laws," enacted by the Mississippi Legislature. S.B. 2162 is a "general law." Section 87 therefore lacks any application to it whatsoever, and Count V should be dismissed.

S.B. 2162 is first a "general law" because an enactment affecting the public interest at-large is a "general law." *See, e.g.*, ***Wiesenberg v. Secretary of State***, 633 So. 2d 983, 995 (Miss. 1994). It is widely-known, and irrefutable, that Jackson-Evers stands alone as the State's largest commercial airport, serves over a million citizens and annually more passengers than all others combined, serves an area of over a million citizens, and has more than a $1.8 billion annual economic impact on the State as a whole. As a matter of Mississippi law, S.B. 2162 is a "general law" under ***Wiesenberg*** and its predecessors.

Nobody's alleged intent or motivation for passing S.B. 2162 has anything to do with these points. No additional discovery from legislators, or anyone else, is necessary for JMAA to respond to them. The Court should deny JMAA's requested discovery delay on that ground alone.

But even if the Governor's ***Wiesenberg***-based argument does not carry the day,

S.B. 2162 is also a "general law"—and Count V fails as a matter of law—given the bill's focus on Jackson-Evers is neither arbitrary nor unreasonable. S.B. 2162 is a "general law," and beyond Section 87's purview, if any rational basis exists for its limited focus. *See*, *e.g.*, ***Jackson Redevelopment Authority v. King, Inc.***, 364 So. 2d 1104, 1107-08 (Miss. 1978); ***Loden v. Mississippi Public Service Comm'n***, 279 So. 2d 636, 640 (Miss. 1973); ***Clark v. State***, 152 So. 820, 823 (Miss. 1934). Important here, that issue of whether S.B. 2162 is conceivably rationally related to any legitimate government interest is always a legal question, not a fact question. ***Cripps v. Louisiana Dept. of Agriculture and Forestry***, 819 F.3d 221, 232 (5th Cir. 2016); ***Johnson v. City of Canton***, 194 So. 3d 161, 170 (¶ 37) (Miss. Ct. App. 2015).

For good measure, the Governor's summary judgment submissions highlight numerous reasons S.B. 2162 is rationally related to multiple legitimate governmental interests and therefore a "general law." The Governor's pages-upon-pages of proof show an argument that S.B. 2162 lacks a rational basis is outlandish. And that is obviously why JMAA has not countered that proof with any of its own. But none of that really matters. S.B. 2162's "general law" status, and Count V's ultimate invalidity, do not turn on discovery, or the Governor's proof, or any tangible proof at all. The question is merely whether any <u>conceivable</u> state of facts could sustain the Legislature's decision to focus on Jackson-Evers. *See*, *e.g.*, ***Jackson Redevelopment Authority***, 364 So. 2d at 1107-08. That legal question depends upon no court room fact-finding or evidence.

No matter how many documents JMAA may ever collect from legislators, or what anybody from the Governor's Office could say at a deposition, that discovery will never improve Count V's Section 87 claim. On a rational basis inquiry, if the Court can

imagine S.B. 2162 is rationally related to any governmental interest, it is a "general law" and Count V fails. The 2016 Legislature's actual motivation for S.B. 2162 is entirely irrelevant to the analysis. *Id.*; *see also, e.g.*, ***F.C.C. v. Beach Communications***, 508 U.S. 307, 315 (1993).[5] That defeats JMAA's requested delay to explore for legislators' "thought processes" behind the bill.

> **2. No Discovery Will Improve Count V's Faulty Legal Theory that Section 61-3-7 is a "General Law" that "Can Be Made Applicable" and "Would Be Advantageous" to Create the Metropolitan Authority.**

Even pretending S.B. 2162 is not a "general law," Count V's legal theory fails on JMAA's own allegations. Count V solely alleges S.B. 2162 violates Section 87 because Mississippi Code Section 61-3-7 is a "general law" that "can be made applicable" and "would be advantageous" to create the new Metropolitan Authority. [Complaint at p. 36, Dkt. 42].[6]

---

[5] The only two legal authorities cited and quoted at page six of JMAA's brief only make this point all the more plain. In ***Hall v. Louisiana***, 2014 WL 1652791 (M.D. La. Apr. 23, 2014) and ***Veasey v. Perry***, 2014 WL 1340077 (S.D. Tex. Apr. 3, 2014), the issue was whether discovery from state lawmakers was relevant to federal discriminatory intent claims under the Equal Protection Clause. ***Hall*** and ***Veasey*** had nothing to do with discovery targeting legislative intent where rational basis review was the order of the day—as it is in determining whether S.B. 2162 is a "general law" under Mississippi law. When a motion for summary judgment tees up the legal question of whether a law passes rational basis review, as here, a delay for additional discovery is inappropriate. *See, e.g.*, ***Monumental Task Committee, Inc. v. Fox***, 259 F.Supp.3d 494, 505 (E.D. La. 2017) (city ordinances facilitating removal of confederate statutes had rational basis and allowing a delay for additional discovery would be futile).

[6] To the extent JMAA's motion papers trumpet an imaginary claim that Count V's Section 87 claim relates to so-called "intended beneficiaries" of S.B. 2162, for many reasons, that new legal claim does not improve its lawsuit or claim to more delay. For example, a "claim that is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." ***City of Canton v. Nissan North America, Inc.***, 870 F.Supp.2d 430, 437 (S.D. Miss. 2012) (quotation marks omitted). Likewise, Rule 56(d) relief with respect to discovery on unpled claims is improper because parties "cannot raise new claims in response to a motion for summary judgment." ***Clark v. General Motors***, 2016 WL 3574408, at *4 n. 2 (S.D. Miss. Jun. 23, 2016). Moreover, even if

Section 61-3-7's provisions for a "regional airport authority" cannot "be made applicable" for the Legislature to create the Metropolitan Authority's nine member governing authority and its diverse appointment structure, or to address the other legitimate legislative goals apparent from S.B. 2162's text. [*See* Gov. Mem. at pp. 14-15, Dkt. 269]. Analyzing that legal question does not require examining any facts beyond the bill and the Mississippi Code. No additional discovery is necessary or will influence the Court's legal conclusion. That is another reason JMAA's motion fails Rule 56(d)'s second prong and its requested delay should be denied.

### 3. JMAA's Prior Admissions Belie its Current Argument for Summary Judgment Delay.

On a final note, JMAA knows its Section 87 claim presents a pure legal issue. It also knows its current discovery disputes have nothing to do with Counts V and VI. Before JMAA intervened in the case, it demanded an injunction because Section 87 allegedly invalidates S.B. 2162 "on its face." [Pl. Mem., Dkt. 17 at p. 8]. All the Court allegedly had to do, so JMAA said back then, was look at S.B. 2162, Code Section 61-3-7, and Section 87, and enjoin the bill's enforcement. [*Id.*]. JMAA cannot now complain discovery is necessary to evaluate whether Count V states a legally valid claim.

Also telling, JMAA currently says it needs a delay to probe for evidence of legislators' S.B. 2162 "thought process" to bolster Count V's state law claim. [Pl. Mem. at pp. 5-6, Dkt. 280]. Yet it previously admitted those "thought processes" are irrelevant

---

JMAA could assert an unpled "intended beneficiary" claim, it would fail as a matter of law. S.B. 2162 only affects public entities and Section 87 lacks any application to it. ***Bond v. Marion County Bd. Of Sup'rs***, 807 So. 2d 1208, 1217 (¶30) (Miss. 2001). And, no matter what JMAA could ever make up, and if all else fails, as explained above and in the Governor's summary judgment papers, S.B. 2162 is a "general law" and Section 87 lacks any application to it whatsoever.

to its state law claims. To sidestep the legislators' state law privilege claims on its motion to enforce its legislator subpoenas, JMAA conceded it was only hunting for evidence related to the individual plaintiffs' discriminatory intent claim under the federal Equal Protection Clause. [Pl. Mem. at p. 15, Dkt. 229].

The Court relied on JMAA's concession, and accordingly found that the documents may be relevant to the federal claims in Counts VII and VIII and implicated no state law privilege issues. [Order at pp. 4-7, Dkt. 251]. To keep the state law privilege issues at bay, JMAA has maintained its position on the legislators' pending appeal to the District Judge. [Pl. Response at pp. 3, 5-6, 13, Dkt. 257]. JMAA cannot conveniently change its story now.

JMAA knows full well legislative intent has nothing to do with Count V's Section 87 claim. If nothing else, everybody knows JMAA's requested discovery delay is not a delay to improve its summary judgment response. It is delay for the sake of delay, which suits JMAA just fine, but Rule 56(d) does not countenance.

## CONCLUSION

JMAA cannot identify any "specified facts" it needs, or explain how any facts could affect the Court's disposition of the questions of law raised in its Counts V and VI. The Court should answer those legal questions without further delay. JMAA's Rule 56(d) relief should be denied, and the Governor's pending motion for partial summary judgment should be granted.

THIS the 27th day of March, 2018.

Respectfully submitted,

GOVERNOR PHIL BRYANT

By: JIM HOOD, ATTORNEY GENERAL

By: <u>S/Justin L. Matheny</u>
Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*jmath@ago.state.ms.us*
*knobi@ago.state.ms.us*

Whitney H. Lipscomb (Bar No. 104326)
Office of Governor Phil Bryant
550 High Street
Jackson, MS 39201
Telephone: (601) 359-3150
Facsimile: (601) 359-3741
*whitney.lipscomb@governor.ms.gov*

*Counsel for Governor Phil Bryant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 27th day of March, 2018.

<u>S/Justin L. Matheny</u>
Justin L. Matheny