UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JACKSON MUNICIPAL AIRPORT
AUTHORITY, ET AL.                                                                                  PLAINTIFFS

VS.                                                           CIVIL ACTION NO. 3:16-cv-246-CWR-FKB

GOVERNOR PHIL BRYANT, ET AL.                                                               DEFENDANTS

**ORDER**

Before the Court are two motions, both concerning potential deposition witnesses Joey Songy, Bobby Morgan, and Alice Perry. Plaintiffs have filed a motion to compel [255] their depositions, while Governor Bryant seeks to prevent them *via* a motion for protective order [261]. As an initial matter, the Court denies Plaintiffs' motion to compel [255] as premature, because the Court cannot compel depositions for which a proper notice of deposition has not been served. *See Byrd v. Castlepoint Fla. Ins. Co.*, No. CV 15-634-BAJ-RLB, 2016 WL 1559584, at *2 (M.D. La. Apr. 18, 2016). However, because the two motions involve the same witnesses, factual circumstances, and questions of law, the Court also considers the briefing and exhibits submitted with regard to Plaintiffs' motion to compel [255] in deciding Governor Bryant's motion for protective order [261]. For the reasons described below, the Court finds that Governor Bryant's motion for protective order [261] should be granted in part, and denied in part.

**Facts and Procedural History**

This case concerns governance of the Jackson-Medgar Wiley Evers International Airport ("Jackson-Evers Airport"). The Jackson Municipal Airport Authority ("JMAA") currently oversees the airport.[1] Plaintiffs, including the JMAA and its Board of Commissioners, challenge

---

* Plaintiff Jeffery A. Stallworth's claims were dismissed by the Court on August 18, 2016. For the purposes of consistency, the style of this case will list the Jackson Municipal Airport Authority as the first plaintiff, and Governor Phil Bryant as the first defendant. *See, e.g.,* [47], [230], [251], [278].

1

the legality of Mississippi Senate Bill 2162 ("SB 2162"), which would abolish the JMAA and replace it with a new entity, the Jackson Metropolitan Area Airport Authority.[2] The Complaint alleges, *inter alia*, that Defendants, through passage of SB 2162, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *See* [42] at 39-49. More specifically, the Complaint states, "Plaintiffs, in their individual capacities and as citizens and taxpayers of the City of Jackson and the State of Mississippi, . . . allege that Senate Bill 2162 was based, either in whole or in part, on discriminatory purposes." *Id.* at 41.

In his Fed. R. Civ. P. 26 initial disclosures, Governor Bryant did not specifically identify individuals with personal knowledge of Plaintiffs' claims. [255-4] at 1-2. Instead, he listed several categories of individuals, including "[a]ny individuals identified in documents produced, or otherwise identified in discovery in this action." *Id.* at 2. In his interrogatory responses, Governor Bryant identified "persons . . . identified in the documents produced by the parties . . . and in the documents Bates labeled DEF 000151-003001" as having "discoverable knowledge that would tend to support or refute any claim, defense, or element of damages in this action." [255-7] at 2. Governor Bryant produced documents Bates Numbered 002940 and 002949-52 that identify Joey Songy, Bobby Morgan, and Alice Perry as employees in the Governor's Office who either wrote or received emails or memoranda related to SB 2162 prior to its passage. *See* [255-6] at 2-6.

Plaintiffs took the Fed. R. Civ. P. 30(b)(6) deposition of Governor Bryant's Office. [255-1] at 2. The Governor's Office designated Drew Snyder, Governor Bryant's then-Deputy Chief of Staff, Policy Director, and Counsel, to testify on its behalf. *Id.*, [260] at 2-3. Snyder testified that

---

[1] In addition to the international airport, the JMAA also oversees the Hawkins Field Airport, a smaller general aviation facility. The primary focus of this litigation, however, has been the larger Jackson-Evers Airport.
[2] SB 2162 was signed into law by Governor Bryant on May 4, 2016, and was expected to go into effect July 1, 2016. *Mississippi Legislature 2016 Regular Session Senate Bill 2162 Status*
http://billstatus.ls.state.ms.us/2016/pdf/history/SB/SB2162.xml. However, the Federal Aviation Administration has announced that it will not consider the new governance structure of the Jackson-Evers Airport until the instant dispute is resolved. *See* [146].

in preparation for the deposition, he met with Governor Bryant, Chief of Staff Joey Songy, Policy Adviser Bobby Morgan, and Senior Policy Advisor Alice Perry. [255-1] at 3-4. Songy, Morgan, and Perry confirm *via* affidavits that they met with Snyder prior to the 30(b)(6) deposition to review produced documents with him. [259-1] at 2-3; [259-2] at 2; [259-3] at 2. They each testify that they provided Snyder with "all the information [they] could recall which could conceivably be encompassed by the examination topics to ensure Mr. Snyder was fully prepared to testify as the Governor's Office's 30(b)(6) designee." *Id.*

According to Governor Bryant, "[s]everal questions [during the deposition] involved documents the Governor's Office generated in 2015, and communications involving the office's members during the 2016 Legislative Session – including Chief of Staff Joey Songy, policy adviser Bobby Morgan, and/or policy advisor Alice Perry." [260] at 3. During the deposition, Snyder testified that prior to Governor Bryant signing SB 2162, Songy, Morgan, and Perry each had meetings or conversations concerning the Jackson-Evers Airport with individuals not employed within the Governor's Office. *See* [259-4] at 44-45 (discussing meeting Perry and Morgan had with representative of Southwest Airlines); *id.* at 46-47 (discussing meeting about SB 2162 that included Bobby Morgan and Senator Harkins, who introduced SB 2162); *id.* at 48-49 (discussing conversation between Bobby Morgan and Senator Harkins concerning SB 2162); *id.* at 32-33 (discussing conversation between Joey Songy and Senator Harkins in early January 2016); [266-1] at 4-5 (discussing possible conversations between Joey Songy and counsel for the Madison County Board of Supervisors regarding governance of the airport). Governor Bryant admits that "[i]n 2014, while serving as the Governor's economic development policy advisor," Songy developed a "concept" for "changing Jackson-Evers' governing structure . . . ." [260] at 11; *see* [259-4] at 21-31.

After the 30(b)(6) deposition, Plaintiffs' counsel wrote to Governor Bryant's counsel, attempting to schedule the depositions of Songy, Morgan, and Perry. [260] at 4. Governor Bryant's attorney declined to make the three individuals available for depositions, contending that any allegedly relevant topics had already been addressed in the 30(b)(6) deposition and that the depositions would be unreasonably burdensome. [255-8] at 1. Subsequently, Plaintiffs filed their motion to compel [255], and the Governor filed his motion for protective order [261].

## Joey Songy

"Under normal circumstances, the party seeking the protective order [to prevent a deposition] bears the burden of establishing good cause." *Freedom From Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *10 (W.D. Tex. Oct. 13, 2017), *appeal dismissed*, No. 17-50956, 2018 WL 1989629 (5th Cir. Mar. 14, 2018)(citing *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F. 2d 404, 435 (5th Cir. 1990)). "However, when a party seeks to depose a high-ranking government official, 'exceptional circumstances' must exist before an involuntary deposition will be permitted." *Id.* (citing *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995)). "Once the court has determined the government official qualifies as 'high-ranking,' the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances." *Id.* at *11 (citing *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010)). "Courts will generally only consider subjecting a high ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information." *Id.* (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Hernandez v. Tex. Dept. of Aging & Disability Servs.*, No. A–11–CV–856 LY, 2011 WL 6300852, at *2 (W.D. Tex. Dec. 16, 2011); *Thomas*, 715 F. Supp. 2d at 1049).

As the Governor's Chief of Staff, Joey Songy has a demanding schedule and substantial list of responsibilities. Songy testified that he frequently works eighty hours per week, has to travel in-state and out-of-state, supervises the Governor's staff, oversees the Governor's Office's fiscal management, and serves as the Governor's chief liaison to all of the state's executive and independent agencies. [259-1] at 1-2. He is responsible for Executive Branch crisis management and serves as the Governor's designee to the Mississippi Emergency Management Agency. *Id.* at 2. Given his position and responsibilities, the Court finds that Songy is a "high ranking government official" for purposes of the subject analysis. *See In re F.D.I.C.*, 58 F.3d at 1060; s*ee also Coleman v. Schwarzenegger,* No. CIV S-90-0520LKKJFMP, 2008 WL 4300437, at *4 (E.D. Cal. Sept. 15, 2008)(holding that Chief of Staff to Governor of California is "high ranking government official" for deposition purposes); *New York v. Oneida Indian Nation of New York*, 2001 WL 1708804, at *3 (N.D. N.Y. Nov. 9, 2001)(finding similar position in New York to be high-ranking official).

Synder's 30(b)(6) testimony demonstrates that Songy has first-hand knowledge related to considerations in the Governor's Office to change the governance structure of the Jackson-Evers Airport. In fact, Governor Bryant admits in his memorandum that

> [i]n 2014, while serving as the Governor's economic development policy advisor, Mr. Songy thought changing Jackson-Evers' governing structure could help the struggling airport. By May 2015, members of the Governor's Office internally discussed the concept of improving the airport's governance structure.

[260] at 11 (internal citations omitted).

Snyder testified that in January 2016, Songy discussed his plan with Senator Harkins, who introduced SB 2162. [259-4] at 32-33. Snyder testified that Songy and Harkins met "after it became public that Harkins was planning to propose airport legislation," but did not state whether the meeting took place before or after SB 2162 was actually introduced. *Id.* at 32.

Snyder further testified that Songy may have also spoken with another legislator, Representative Alex Monsour, relating to SB 2162. Representative Monsour was Chairman of the Mississippi House Ports, Harbors, and Airports Committee, to which SB 2162 was referred on March 14, 2016. *See* Mississippi Legislature, *Mississippi Legislature 2016 Regular Session Senate Bill 2162 Status* http://billstatus.ls.state.ms.us/2016/pdf/history/SB/SB2162.xml. On March 16, 2016, Representative Monsour asked to speak to the Governor, telling the Governor's Office that "there is an issue with the Jackson Airport." [255-6] at 1. The Governor was unavailable to speak with Representative Monsour that day. [255-6] at 1. When Snyder was asked whether anyone from the Governor's Office had been able to speak with Representative Monsour, Snyder testified, "I think Joey [Songy] may have talked to him, but . . . I don't know." [259-4] at 39-40.

In the 30(b)(6) deposition, Snyder also showed a lack of knowledge regarding other conversations Songy may have had with other legislators. For example, when asked if Songy had any communications with any sponsors of a companion House bill related to the Jackson-Evers Airport, Snyder testified, "I don't - - don't recall." [259-4] at 36. And when asked whether Songy had talked with Senator Horne about SB 2162, Snyder testified, "I can't say with certainty . . . ." *Id*. at 38.

Similarly, Snyder testified that "Joey Songy *may* have talked to [Madison County Board of Supervisors Attorney] Katie Snell" about SB 2162. [266-1] at 4 (emphasis added). Snyder stated that while he "d[id]n't want to speculate for [Songy]," he thought that Songy and Snell may have talked about the "proposal [under SB 2162] to expand the airport to include regional representation, . . . [which] would include the Madison County Board of Supervisors as one of the appointing authorities." [266-1] at 4-5. Snyder was then asked separate questions about when this communication occurred, whether other people were present, and whether it was on the telephone

or in person. *Id.* at 5-6. In response to each of these questions, Snyder testified, "I don't know." *Id.*

The evidence before the Court sufficiently shows that Songy has "first-hand knowledge related to the claims being litigated" in this case. *Freedom From Religion Found., Inc.*, 2017 WL 4582804, at *11. Further, Snyder's testimony demonstrates that "other persons cannot provide the necessary information" to Plaintiffs. *Id.* Snyder was unable to give many details about Songy's meeting with Senator Harkins and was unable to confirm whether communications with Representative Monsour, other legislators, or Snell even took place. Plaintiffs have, therefore, met their burden on these requisite elements.

Governor Bryant contends that Plaintiffs could depose the individuals Songy met with rather than Songy himself. *See* [260] at 13 (contending "[c]ommon sense dictates that, if JMAA wants to know more about Mr. Songy's brief conversations with other persons about S.B. 2162 in 2016, it can ask those other persons."). This argument, however, misses the point. Governor Bryant is a party to this lawsuit, and Plaintiffs are entitled to discover the factual position of a party opponent. Regardless what other people may claim was said in communications with Songy, Plaintiffs are entitled to discover this information from Governor Bryant's staff member who has personal knowledge on the subject. The Governor offered a 30(b)(6) designee to provide this information, but as shown above, the designee simply lacked knowledge sufficient to provide the information. Plaintiffs are, therefore, entitled to depose Joey Songy, the only staff member who has personal knowledge of the requested information.

The Court has also considered "the potential burden that the deposition would impose upon [Songy and the Governor's Office], [and] the substantive reasons for taking the deposition." *In re FDIC*, 58 F.3d at 1060. Plaintiffs' substantive reason for taking Songy's deposition is obvious: the

30(b)(6) deposition revealed that Songy is the only Governor's Office employee with first-hand knowledge of certain discoverable information. And to the extent a deposition would impose a burden on Songy or the Governor's Office, any such burden will be sufficiently minimized by limitations placed on Songy's deposition by the Court. Specifically, the Court places the following limitations on Songy's deposition: (1) the deposition topics shall be limited to (a) Songy's concept for changing the governing structure of the Jackson-Evers Airport, and his actions and nonprivileged communications with individuals regarding his concept; and (b) Songy's actions and nonprivileged communications with individuals regarding the management or operation of the Jackson-Evers Airport or SB 2162, from January 1, 2014, through May 4, 2016, the date on which Governor Bryant signed the Bill; (2) the deposition must be limited to no more than two hours; and (3) Songy may choose the location of the deposition. Further, the Court instructs counsel to work together in good faith to find a mutually convenient date and time for Songy's deposition.

As addressed above, Plaintiffs have met their burden of demonstrating the requisite exceptional circumstances for taking the deposition of Joey Songy. Accordingly, Governor Bryant's motion for protective order is denied to the extent that it requests that Plaintiffs be prohibited from deposing Songy. Governor Bryant's motion is granted, however, to the extent that Songy's deposition may only be taken subject to the limitations set forth above.

### Bobby Morgan and Alice Perry

Governor Bryant also requests a protective order that would prevent Plaintiffs from taking the depositions of Bobby Morgan and Alice Perry. "Governor Bryant does not contend. . . that policy officials Bobby Morgan and Alice Perry are high-ranking officials in the same sense as Chief of Staff Songy." [273] at 8. "The Governor's position is the circumstances here prove they should not be forced to testify." *Id.* He contends that depositions would be disproportionate to the

needs of the case, as they would be unduly burdensome to Morgan and Perry. *Id.* He further contends that to the extent they may have relevant information, that information has already been made available through other means of discovery, and any deposition testimony would be needlessly cumulative. *Id.* at 8-9.

"It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)(citing 4 J.Moore & J.Lucas, Moore's Federal Practice P 26.69 (3d ed. 1976); 8 C.Wright & A.Miller, Federal Practice & Procedure s 2037 (1970)). "[A] party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection." *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002)(citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990), *cert. denied*, 498 U.S. 895 (1990)). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26. Discovery may be limited if (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source or (2) the party seeking discovery has had ample opportunity to obtain the information sought. *See* Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs did not randomly select Morgan or Perry to be the subject of additional discovery. Governor Bryant identified them as individuals with discoverable knowledge, and his Deputy Chief of Staff specifically testified that the two of them had been involved in the Governor's Office's handling of Jackson-Evers Airport issues. [259-4] at 44-45 (Morgan and Perry had meeting with representative of Southwest Airlines on behalf of Governor's Office); *id.* at 46-47 (Morgan was in meeting with Senator Harkins, Governor Bryant, and others regarding SB 2162 in

January 2016); *id.* at 48-49 (Morgan may have had conversation with Senator Harkins at State Capitol about Morgan monitoring SB 2162); [255-1] at 6 (Morgan was Governor's staff member assigned to monitor SB 2162). The Governor's Office produced emails that identify both Morgan and Perry as being involved in issues related to the Jackson-Evers Airport and SB 2162. [255-6] at 2-3. Additionally, a memorandum to Governor Bryant from Morgan shows that both Morgan and Perry were involved in matters pertaining to the Jackson-Evers Airport and SB 2162. *Id.* at 5-6. This evidence indicates that Morgan and Perry have relevant information for purposes of Fed. R. Civ. P. 26(b)(1), and Governor Bryant has not shown that taking their depositions would be disproportionate to the needs of the case.

Governor Bryant has also not shown that allowing Plaintiffs to depose Morgan and Perry would subject either of them or the Governor's Office to an undue burden. While Governor Bryant's policy staff members may have demanding schedules, there has been no showing that they are so busy as to be unable to appear at a deposition. Moreover, the Governor contends that both Perry and Morgan had limited involvement in issues pertaining to the Jackson-Evers Airport. *See* [260] at 17. Accordingly, preparation for the depositions, and the depositions themselves, should not be unduly burdensome.

Further, permitting their depositions would not result in unreasonably cumulative or duplicative discovery. Much of Snyder's 30(b)(6) deposition testimony about Morgan's and Perry's actions and communications was based on what Morgan and Perry told him, not on his own personal knowledge. And Snyder's testimony identified relevant information of which Morgan and Perry have personal knowledge. The depositions of Morgan and Perry would not be duplicative, but rather, their depositions would provide Plaintiffs the opportunity to conduct

discovery from the Governor's Office employees who actually have personal knowledge of certain relevant information.

The Court finds that Governor Bryant has not shown good cause to prohibit the deposition of Bobby Morgan or Alice Perry. That request is, therefore, denied.

**Conclusion**

Plaintiffs' Motion to Compel [255] is denied without prejudice. Governor Bryant's Motion for Protective Order [261] is granted to the extent that the deposition of Joey Songy shall be subject to the limitations set forth above. All other relief sought in motion [261] is denied. Additionally, Paragraphs 4-6, 12, and 13 of the Protective Order Governing Discovery [239] shall apply to the depositions of Songy, Morgan, and Perry.

SO ORDERED, this the 20th of July, 2018.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE