#### IN THE UNITED STATES COURT OF APPEALS
#### FOR THE FIFTH CIRCUIT

No. 18-60703

In Re: GOVERNOR DEWEY PHILLIP "PHIL" BRYANT,

Petitioner

United States Court of Appeals
Fifth Circuit
**FILED**
November 29, 2018
Lyle W. Cayce
Clerk

Petition for a Writ of Mandamus to the United States District Court
for the Southern District of Mississippi

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:

**I.**

This case comes before us on a Petition for Writ of Mandamus. Having reviewed the briefs and the record, after full oral argument, we deny the petition without prejudice, for the reasons to be explained.

The underlying case is a dispute over control of the governance of the Jackson-Medgar Wiley Evers International Airport. The Jackson Municipal Airport Authority (JMAA) currently manages and operates the airport, but control would be transferred to a new board by virtue of Senate Bill 2162, which was recently passed by the Mississippi Legislature. The new board would be structured differently with a total of nine commissioners, rather than the current five.

Although Governor Bryant signed S.B. 2162 into law on May 4, 2016, it has only nominally taken effect. Federal Aviation Administration policy does not allow it to consider disputed airport transfers if there is any pending

Case: 18-60703      Document: 00514741362      Page: 2      Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB   Document 339   Filed 11/29/18   Page 2 of 11

No. 18-60703

litigation. JMAA, its Board, the Commissioners, the Jackson Mayor, and the Jackson City Council sued challenging the legality and constitutionality of S.B. 2162. Among other claims, the plaintiffs allege that Governor Bryant, the Lieutenant Governor, Madison County, and Rankin County violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment by passing S.B. 2162 for discriminatory purposes.

The case proceeded to discovery. In both his required disclosures under Rule 26(b) of the Federal Rules of Civil Procedure and his responses to JMAA's interrogatories, Governor Bryant identified Chief of Staff Songy as a person having discoverable knowledge[1] that would tend to support or refute any claim, defense, or element of damages in the case. In response to a deposition notice issued to the Governor's Office under Fed. R. Civ. P. 30(b)(6), the Governor's Office designated Drew Snyder, Governor Bryant's then-Deputy Chief of Staff, Policy Director, and Counsel, to testify on its behalf. *Id.* JMAA took the Fed. R. Civ. P. 30(b)(6) deposition of Governor Bryant's Office. Petition Ex. 1 at 2.

Snyder's deposition lasted nearly seven hours. JMAA was dissatisfied with the level of detail it received from Snyder in response to several questions, and determined that "Songy's deposition [was] necessary to obtain relevant information that cannot be obtained from any other source." Response at 5. Specifically, JMAA asserts that Snyder's testimony was deficient in four respects:

(1) details regarding the nature and timing of communications between Chief of Staff Songy and Mississippi State Senator Josh Harkins about S.B. 2162,

---

[1] At this juncture, Songy was not otherwise listed or designated as a *witness* to be called at trial.

2

Case: 18-60703      Document: 00514741362     Page: 3     Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB   Document 339   Filed 11/29/18   Page 3 of 11

No. 18-60703

(2) whether Songy had conversations with any of the other legislators (in the state House or Senate) who sponsored or were involved with S.B. 2162,

(3) whether Governor Bryant had shared with Chief of Staff Songy sentiments allegedly expressed to the Governor regarding the need for change in management at the Airport, and

(4) the existence and nature of communications between Chief of Staff Songy and Madison County Board of Supervisors' attorney Katie Snell.

The Governor's Office and JMAA could not reach a compromise, and in January 2018, JMAA moved to compel the deposition of Chief of Staff Songy. Governor Bryant opposed the motion and sought a protective order prohibiting JMAA from deposing Songy. The Governor maintained that JMAA could not demonstrate the exceptional circumstances necessary to overcome the Chief of Staff's high-ranking government official privilege, which limits depositions.

The magistrate judge denied JMAA's motion to compel, and granted in part and denied in part Governor Bryant's motion for a protective order. First, the court determined that Chief of Staff Songy is a high-ranking government official. Second, the court found that JMAA met its burden of "demonstrating the requisite exceptional circumstances for taking the deposition of [Chief of Staff] Songy."

The court framed its examination with principles lifted primarily from two cases: *Freedom From Religion Found., Inc. v. Abbott* (*FFRF*) No. A-16-CA-00233, 2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) and *In re Fed. Deposit Ins. Corp.*, 58 F.3d 1055 (5th Cir. 1995). Citing *FFRF*, the magistrate judge explained that "[c]ourts will generally only consider subjecting a high ranking official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary

Case: 18-60703 Document: 00514741362 Page: 4 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 4 of 11

No. 18-60703

information."[2] For the first prong, the court determined that Snyder's 30(b)(6) deposition demonstrated that Chief of Staff Songy had first-hand knowledge of considerations in the Governor's Office to change the governance structure of the Airport and certain communications between the Chief of Staff and several legislators, as well as Katie Snell. And for the second prong, the court found that "persons [other than Chief of Staff Songy could not] provide the necessary information."

Turning to the "exceptional circumstances" step, the court considered the potential burden the deposition would impose upon Chief of Staff Songy and the Governor's Office and the substantive reasons for taking the deposition. The magistrate judge found that JMAA's "substantive reason for taking Songy's deposition is obvious: the 30(b)(6) deposition revealed that Songy is the only Governor's Office employee with first-hand knowledge of certain discoverable information."[3] Furthermore, any burden on the Chief of Staff or the Governor's Office would be minimized by the limitations the court placed on the Chief of Staff's deposition, namely, (1) that the deposition topics would be limited to two broad areas,[4] (2) that the deposition would be limited to no

---

[2] *FFRF* recognized a two-step test that a proponent must satisfy to depose a high-ranking government official. First, the proponent must demonstrate that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources. Second, the proponent must show that exceptional circumstances exist meriting the deposition. The exceptional circumstances factor itself has three prongs established by *In re FDIC*: "the high-ranking status of the deponents, the potential burden that the depositions would impose upon them, [and] the substantive reasons for taking the depositions." 58 F.3d at 1060.

[3] Ostensibly, that "certain discoverable information" concerns the existence and nature of communications between Chief of Staff Songy and Senator Harkins, Representative Monsour, other legislators, and Katie Snell.

[4] Those broad areas were "(a) Songy's concept for changing the governing structure of the Jackson-Evers Airport, and his actions and nonprivileged communications with individuals regarding his concept; and (b) Songy's actions and nonprivileged communications with individuals regarding the management or operation of the Jackson-Evers Airport or S.B. 2162, from January 1, 2014, through May 4, 2016." The first area (regarding "Songy's

Case: 18-60703 Document: 00514741362 Page: 5 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 5 of 11

No. 18-60703

more than two hours, (3) that the Chief of Staff could choose the location of the deposition, and (4) that both sides would be required to work together in good faith to find a mutually convenient date and time for the deposition. Governor Bryant objected to the discovery order in the district court.

The district court affirmed the magistrate judge's discovery order. First, the district court rejected Governor Bryant's contention that the magistrate judge applied a "lightweight relevance inquiry" rather than a "heightened relevance standard that case law prescribes." The district court determined that the magistrate judge had applied "the exact legal standard from the exact case the Governor advances." Second, the district court disagreed that the magistrate judge "overlooked" whether there were less burdensome means of obtaining the information JMAA sought from the Chief of Staff. The court explained that the magistrate judge had detailed how the less burdensome method the parties first utilized, the 30(b)(6) deposition, was ineffective. Third, without any analysis, the district court found that Governor Bryant's assertions that the magistrate judge had made "clearly erroneous" factual findings were "not borne out by the record."[5]

---

concept") is not only extraordinarily broad, it does not appear to arise from the Rule 30(b)(6) notice. The second area (regarding Songy's actions and . . . communications") arises from the Rule 30(b)(6) notice, but fails to recognize that Songy's deposition, if allowed, would be limited to only those questions Snyder could not answer.

[5] In this section, the district court quotes from Governor Bryant's brief to characterize the Governor's "clearly erroneous factual findings" contentions at a high level—that the Governor was asserting that the magistrate judge ignored relevant record evidence, casually brushed aside other evidence, and that deposing Chief of Staff Songy would impose an undue burden. Governor Bryant devoted a substantial portion of his brief to these claims and details the specific inferences and conclusions that he considered incorrect. The district court does not specifically address the Governor's claims and concludes generally that "they are not borne out by the record." The district court does cite the relevant standard of review, namely, that "[a] finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed," (quoting *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012)).

5

Case: 18-60703 Document: 00514741362 Page: 6 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 6 of 11

No. 18-60703

Governor Bryant now requests that this court issue a writ of mandamus ordering the district court to vacate its July 20, 2018 order to the extent necessary to grant Governor Bryant's motion for a protective order prohibiting Songy's deposition.

## II.

Governor Bryant must satisfy three requirements for this court to issue the "extraordinary remedy of mandamus." *In re Lloyd's Register North Am., Inc.*, 780 F.3d 282, 288 (5th Cir. 2015). First, Governor Bryant must have "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 542 U.S. 367, 380 (2004) ((quoting *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). Governor Bryant must show both that he has no other means to review the district court's order when it is entered and that the ordinary appeals process would be inadequate. *See id.* Second, Governor Bryant has to demonstrate a "clear and indisputable" right to the writ. *Cheney*, 542 U.S. at 381 (quoting *Kerr*, 426 U.S. at 403). If the district court clearly abused its discretion, then Governor Bryant's "right to issuance of the writ is necessarily clear and indisputable." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). Third, this court "must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. In making this determination, the court keeps in mind that "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen*, 545 F.3d at 319.

This court "limit[s] mandamus to only 'clear abuses of discretion that produce patently erroneous results.'" *In re Lloyd's Register*, 780 F.3d at 290 (quoting *In re Volkswagen*, 545 F.3d at 310). A mandamus petitioner "must show not only that the district court erred, but that it *clearly and indisputably erred.*" *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 & n.7 (5th Cir.

6

Case: 18-60703 Document: 00514741362 Page: 7 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 7 of 11

No. 18-60703

2000) (Smith, J.). "An abuse of discretion exists only when there is [a] definite and firm conviction that the court below committed clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Conkling v. Turner,* 18 F.3d 1285, 1293 (5th Cir.1994) (quoting *Hoffman v. Merrell Dow Pharms., Inc. (In re Bendectin Litig.),* 857 F.2d 290, 307 (6th Cir. 1988)) (internal quotations omitted). *In re F.D.I.C.,* 58 F.3d 1055, 1060 (5th Cir. 1995).

Involuntary depositions of highly-ranked government officials are only allowed when "exceptional circumstances . . . exist." *Id.* In determining whether exceptional circumstances exist, a court must consider (1) "the high-ranking status of the deponents," (2) the potential burden that the depositions would impose upon them," and (3) "the substantive reasons for taking the depositions." *Id.* As an overarching consideration, the court must also consider that "it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness." *Id.* at 1062.

### III.

There are several important aspects of this analysis that the magistrate judge failed to fully consider. We therefore deny the petition for writ of mandamus, but we do so without prejudice to the renewal of the petition, if needed, after the magistrate judge adequately addresses:

a) whether the information desired can be sought from alternative witnesses or must exclusively come from the Chief of Staff;

b) whether the legislators involved in the communications can be deposed;

c) whether the information desired can be obtained in another form; and

d) if it cannot be obtained in another form, whether the scope of the inquiry can be more closely tailored to target only the specific questions raised at the Rule 30(b)(6) deposition.

Case: 18-60703  Document: 00514741362  Page: 8  Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB  Document 339  Filed 11/29/18  Page 8 of 11

No. 18-60703

(A) Possibility of other witnesses

It appears the magistrate judge and district court did not fully consider the underlying policy reasons for limiting depositions of high-ranking government officials. *In re Holder*, 197 F.3d at 313–14. High-ranking government officials are the subject of or involved in unusually high numbers of lawsuits and therefore should be protected from undue burdens regarding the frequent litigation, which is why the "exceptional circumstances" analysis exists in the first place.

A key aspect of the "exceptional circumstances" analysis is whether the information desired can be obtained from other witnesses. The magistrate judge did not consider whether alternate witnesses could be available because he incorrectly concluded that the testimony must come from a witness in the Governor's office: "Governor Bryant contends that Plaintiffs could depose the individuals Songy met with rather than Songy himself. This argument, however, misses the point. Governor Bryant is a party to this lawsuit, and Plaintiffs are entitled to discover the factual position of a party opponent. Regardless what other people may claim was said in communications with Songy, Plaintiffs are entitled to discover this information from Governor Bryant's staff member who has personal knowledge on the subject." (internal citations and quotes omitted). We disagree with the plaintiff's "entitlement" to discover answers from a high-ranking witness in the Governor's office. As long as an alternative witness can provide the relevant information, there is no reason he or she cannot be called. In this case, the particular requested information is largely regarding Songy's specific communications with legislators and others whose identities are readily known to counsel. The magistrate judge does not provide any individual analysis as to whether each

Case: 18-60703 Document: 00514741362 Page: 9 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 9 of 11

No. 18-60703

of these people can be deposed instead, thus avoiding the deposition of a high-ranking government official.

Additionally, the district court affirmed the magistrate judge's decision without further consideration of alternate witnesses. The district court seems to suggest that because the plaintiffs attempted to get the information from one witness already, they are excused from their burden of proving exceptional circumstances regarding Songy's potential deposition: "The Governor then contends that the Magistrate 'overlooked' whether there were less burdensome means of obtaining the information the plaintiffs seek from Mr. Songy. But the Magistrate explained in detail how the less burdensome method the parties first utilized – a Rule 30(b)(6) deposition – proved ineffective when the Governor's designee answered the plaintiffs' question about Mr. Songy's actions with 'I don't know' . . . The Magistrate fairly concluded that 'the designee simply lacked knowledge sufficient to provide the information.'" While we do not now question whether that further information may be required beyond what Snyder was able to provide, we do not agree that one single attempt relieves the parties of the need to show that there are no alternate witnesses available to answer these questions, in order to prove that exceptional circumstances exist.

 (B) Possible availability of legislators

The magistrate judge should also consider the implications of the parallel litigation springing from the same underlying matter, *Jeffrey Stallworth v. Dewey Bryant*, et al,[6] as it affects the availability of the legislators to be deposed. The most obvious alternative witnesses are the legislators with whom Songy communicated regarding the legislation.

---

[6] No. 18-60487.

Case: 18-60703     Document: 00514741362     Page: 10     Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB   Document 339   Filed 11/29/18   Page 10 of 11

No. 18-60703

In this parallel litigation, the plaintiffs have already served eight document subpoenas on the legislators but have not attempted deposition subpoenas. The legislators objected, invoking legislative privilege, but the magistrate judge[7] already overruled that objection multiple times. It is quite possible that an assertion of privilege for a deposition subpoena would also be overruled. Although the legislators appear to be resisting discovery, the magistrate judge should explicitly consider their availability as alternative sources.

(C) Possibility of other ways to gather information

Moreover, the magistrate judge did not adequately consider alternative means of gathering the desired information. Particularly when, as in this case, the desired information is limited, it is likely that written answers to questions, given under oath, would be sufficient. *See, e.g., In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 1883062 (E.D. La. June 24, 2009).

D) Scope of the inquiry

The scope of any further questioning, written or otherwise, should expressly remain within the ambit of the previously noticed Rule 30(b)(6) parameters, because the stated need for Songy's testimony is solely the inadequacy of Snyder's answers as a 30(b)(6) designee. To verify their pertinence to the 30(b)(6) inquiry, the list of written inquiries may be pre-approved by the magistrate judge before submission to Songy, all based on the existing Snyder transcript. The questions posed likewise should specifically track those propounded to Snyder, for which his responses are deemed inadequate by the court. Under the current Order, Songy would improperly be

---

[7] The same magistrate judge presides over both cases.

Case: 18-60703 Document: 00514741362 Page: 11 Date Filed: 11/29/2018
Case 3:16-cv-00246-CWR-FKB Document 339 Filed 11/29/18 Page 11 of 11

No. 18-60703

subject to interrogation far afield from the specific questions asked of Snyder. *See supra* at 5, n.4.

## IV.

At this time, on the showing made, a writ of mandamus would be premature. We DENY THE PETITION WITHOUT PREJUDICE, giving the magistrate judge the opportunity for further consideration. If either party seeks review following reconsideration, the appeal will be assigned to this same administrative panel in accordance with this court's usual procedures.



**Certified as a true copy and issued
as the mandate on Nov 29, 2018**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**