# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| JACKSON MUNICIPAL AIRPORT AUTHORITY, ET AL. | PLAINTIFFS |
| VS. | CIVIL ACTION NO. 3:16-cv-246-CWR-FKB |
| GOVERNOR PHIL BRYANT, ET AL. | DEFENDANTS |

## ORDER

This case comes before the undersigned to follow the directives set forth in the Opinion [339] issued by the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit issued the Opinion in response to a Petition for a Writ of Mandamus (Petition) filed by Governor Phil Bryant, a defendant in this case. In his Petition, Governor Bryant requested that the Fifth Circuit issue a writ of mandamus ordering this Court to vacate, in part, a previously-issued Order [333] and grant his Motion for Protective Order [261] seeking to prohibit the deposition of Joey Songy, the Governor's Chief of Staff. The Fifth Circuit denied the Petition without prejudice, but made findings and ordered further consideration by the undersigned.

In its Opinion, the Fifth Circuit instructed the undersigned to address the following in relation to whether Plaintiffs should be allowed to depose Songy:

   a)  whether the information desired can be sought from alternative witnesses or must exclusively come from the Chief of Staff;
   b)  whether the legislators involved in the communications can be deposed;
   c)  whether the information desired can be obtained in another form; and
   d)  if it cannot be obtained in another form, whether the scope of the inquiry can be more closely tailored to target only the specific questions raised at the Rule 30(b)(6) deposition.

[339] at 7.

### a) whether the information desired can be sought from alternative witnesses or must exclusively come from the Chief of Staff.

As the Fifth Circuit stated, this case involves "a dispute over control of the governance of the Jackson-Medgar Wiley Evers International Airport." [339] at 1. From the initial filing of their Motion to Compel, Plaintiffs have made clear that they wish to depose Songy because he was "the first person in the Governor's office to conceive the idea of the state taking control of Jackson Medgar Evers International." [256] at 7. And the 30(b)(6) designee for Governor Bryant's Office testified that Songy was the person in the Governor's Office who came up with the concept. [259-4] at 21-25. Plaintiffs explain that they want to "ask Mr. Songy about his concept for changing the governing structure of the Airport and any communications he may have had related to that concept, as well as Mr. Songy's actions and non-privileged communications with others regarding the management or operation of the Airport." [342] at 2. Plaintiffs state that "no one other than Mr. Songy himself can fully explain where his idea came from or what considerations informed its development." *Id*. at 6.

In sum, the "information desired" by Plaintiffs includes how, why, and when Songy came up with his concept and what he did to promote it toward legislation. Plaintiffs want to know what role Songy, as the Governor's representative, played, if any, in the conception, formulation, and support of S.B. 2162, the legislation at issue which transfers control of the airport from the Jackson Municipal Airport Authority (JMAA) to a newly-created governing body. Since only Songy can answer these questions about his own concept of transferring control of the airport or what all he did to promote it, the information must exclusively come from Songy and cannot be provided by alternative witnesses.

In this Court's original Order [333], the undersigned addressed Governor Bryant's argument that "Plaintiffs could depose the individuals Songy met with rather than Songy himself." [333] at 7. The undersigned stated, "[t]his argument . . . misses the point," and that as "Governor Bryant is a party to this lawsuit, . . . Plaintiffs are entitled to discover the factual position of a party opponent." *Id*. As this holding was not particularly well-received by the Fifth Circuit, the undersigned would respectfully like to explain the point in more detail. As the Fifth Circuit correctly observed, Governor Bryant "identified Chief of Staff Songy" in his disclosures under Rule 26(a) of the Federal Rules of Civil Procedure. [339] at 2. Rule 26(a) explicitly provides that such initial disclosures are of persons "the disclosing party may *use* to support its claims or defenses[.]" Fed.R.Civ.P. 26(a)(1)(A)(i) (emphasis added). If Plaintiffs were relegated to deposing only the non-party individuals to whom Songy communicated, Governor Bryant would be free to "use" Songy at trial to rebut the testimony of those individuals. The undersigned respectfully submits that a party should not be allowed to identify a person whom they may "use" to support their case, while at the same time prohibiting an opposing party from deposing that person. Allowing such a prohibition would risk the very unfair surprise that discovery is intended to prevent.

**b) whether the legislators involved in the communications can be deposed.**

The answer to this question is - maybe, maybe not. As the Fifth Circuit correctly noted, "[t]he legislators objected, invoking legislative privilege," to document subpoenas served on them by Plaintiffs. [339] at 10. The Fifth Circuit also stated that "the magistrate judge already overruled that objection multiple times." *Id*. In a prior Order [251], the undersigned held that the legislative privilege had been waived (or did not apply), as to subpoenaed documents that had been shared with third parties, but as to all other documents

withheld under a claim of privilege, the undersigned simply ordered the legislators to produce a privilege log. The Federal Rules of Civil Procedure and this Court's local rules require such a privilege log, when a party withholds documents under a claim of privilege. *See* Fed.R.Civ.P. 26(b)(5); L.U.Civ.R. 26(e). These rules require a privilege log in order for the parties and the Court to assess the claim of privilege. The undersigned has not, however, overruled the legislative privilege as to those documents.

Further, in this Court's prior Order [251], the undersigned acknowledged authorities that make a distinction between the applicability of the legislative privilege to deposition subpoenas, as opposed to document subpoenas. *See* [251] at 8. "While a few such cases have held that state and local government legislators are immune from providing testimony in most civil cases, the evidentiary legislative privilege has not been extended to all document production." *Id.* (citing *Small v. Hunt*, 152 F.R.D. 509, 513 (E.D.N.C. 1994); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 302 n. 20 (D. Md. 1992)). "That is, state and local officials may be protected from testifying, but are not necessarily exempted from producing documents." *Id.* Accordingly, even if the legislative privilege does not protect certain documents of a legislator from production, it may protect the legislator from being deposed.

Based on the legislators having raised the legislative privilege in response to prior document subpoenas, the undersigned expects that if served with deposition subpoenas, the legislators will move to quash them based on legislative privilege. The undersigned would then be faced with ruling on the legislators' motions. But, at this time, the undersigned is not in a position to rule on whether the legislators can or cannot be deposed, since the legislators are not before the Court on the instant motion and have not been afforded an

opportunity to be heard on this issue. Regardless, even if the legislators could be deposed about their communications with Songy, they could not provide all of the information Plaintiffs are seeking about Songy's concept for transferring control from JMAA.

> **c) whether the information desired can be obtained in another form; and**
> **d) if it cannot be obtained in another form, whether the scope of the inquiry can be more closely tailored to target only the specific questions raised at the Rule 30(b)(6) deposition.**

Whereas questions (a) and (b) deal with whether the "information desired" by Plaintiffs can be obtained from sources other than Songy, questions (c) and (d) appear to deal with the form of obtaining discovery from Songy. The undersigned will address questions (c) and (d) jointly.

In discussing question (c), the Fifth Circuit found that "it is likely that written answers to questions, given under oath, would be sufficient." *Id*. When addressing question (d), the Fifth Circuit ruled as follows:

> The scope of any further questioning, written or otherwise, should expressly remain within the ambit of the previously noticed Rule 30(b)(6) parameters, . . . . To verify their pertinence to the 30(b)(6) inquiry, the list of written inquiries may be pre-approved by the magistrate judge before submission to Songy, all based on the existing [30(b)(6) deposition] transcript. The questions posed likewise should specifically track those propounded to [the 30(b)(6) designee], for which his responses are deemed inadequate by the court.

[339] at 10.

The undersigned has considered the discovery tools afforded by the Federal Rules of Civil Procedure. With the Fifth Circuit's mention of "written answers to questions," the undersigned considered interrogatories being propounded to Songy. But Rule 33 of the Federal Rules of Civil Procedure provides that interrogatories are to be propounded to parties, and Songy is not a party. *See* Fed.R.Civ.P. 33(a)(1) ("a party may serve on any

other party . . . interrogatories."). Next, given the Fifth Circuit's reference to "written inquiries" and suggestion that they be submitted to the undersigned for approval, the undersigned considered a deposition by written questions under Rule 31 of the Federal Rules of Civil Procedure, which appears to best comply with the Fifth Circuit's directives.

Accordingly, following the specific directives from the Fifth Circuit, the undersigned orders as follows:

1. Within ten days from entry of this Order, Plaintiffs may file a list of written questions that they wish to pose to Joey Songy. The questions must specifically track those propounded at the 30(b)(6) deposition of the Governor's Office, the answers to which Plaintiffs contend were inadequate.

2. Within five days from Plaintiffs' filing of proposed written questions, Governor Bryant may file a response stating any objections to Plaintiffs' proffered questions.

3. Within three days from Governor Bryant filing his objections, Plaintiffs may file a rebuttal stating any response to Governor Bryant's objections to their proffered questions.

After receiving Plaintiff's proffered questions, Governor Bryant's response, and Plaintiffs' rebuttal, the undersigned will determine the questions which may be posed to Joey Songy. The questions will be posed to Joey Songy *via* a deposition by written questions in accordance with Rule 31 of the Federal Rules of Civil Procedure, and the undersigned will set a deadline by which the deposition must be concluded.

SO ORDERED on the 10th day of October, 2019.

                                          /s/ F. Keith Ball
                                          UNITED STATES MAGISTRATE JUDGE