**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **JACKSON MUNICIPAL AIRPORT AUTHORITY, ET AL.** | **PLAINTIFFS** |
| **V.** | **CAUSE NO. 3:16-CV-246-CWR-FKB** |
| **GOVERNOR TATE REEVES, ET AL.** | **DEFENDANTS** |

**ORDER**

Today, the Court returns to the long-running controversy of whether the plaintiffs may take an oral deposition of Joey Songy, the former Governor's former Policy Director and former Chief of Staff, or instead must send him pre-approved, written questions.

**I.    Relevant Background and Arguments**

In July 2018, the Magistrate Judge applied controlling Fifth Circuit authority in this area of law, *In re F.D.I.C.*, 58 F.3d 1055 (5th Cir. 1995), to consider whether then-Chief of Staff Songy could be deposed about S.B. 2162, the airport takeover bill. The Magistrate Judge determined that Songy's testimony was essential and should be secured. Owing to Songy's responsibilities in the Governor's office, however, the Magistrate Judge found that Songy should only be required to sit for a two-hour deposition limited to two topics.

The Governor's attorneys appealed. The Fifth Circuit vacated the order with instructions to consider four new factors. *In re Bryant*, 745 F. App'x 215 (5th Cir. 2018). The Magistrate Judge then asked the parties to submit additional briefing.

In an Order dated October 10, 2019, the Magistrate Judge again concluded that Songy had essential information that justified taking his deposition. Applying the Fifth Circuit's new standard, *see id.*, the Magistrate Judge found that the plaintiffs should depose Songy via pre-approved, written questions. *See* Fed. R. Civ. P. 31.

The plaintiffs say "two critical developments" warrant reconsideration of the paper deposition. Docket No. 395 at 2. They first contend that in the years to have elapsed since the Fifth Circuit considered this issue, further discovery confirmed that facts within Songy's personal knowledge cannot be secured through other witnesses. As the Magistrate Judge put it, "since only Songy can answer . . . questions about his own concept of transferring control of the airport or what all he did to promote it, the information must exclusively come from Songy and cannot be provided by alternative witnesses." Docket No. 392 at 2.

The new evidence submitted to the Court bears this out. In depositions conducted after the Fifth Circuit's ruling, aide after aide testified that then-Policy Director Songy was *the* person with information about the airport takeover bill.

One such witness was Drew Snyder, Deputy Counsel to the Governor before and during S.B. 2162. The plaintiffs thought Snyder had personal knowledge about the legislation, since he had written a May 18, 2015 document titled, "Taking control of Jackson-Medgar Wiley Evers International Airport." In a four-hour fact witness deposition, however, Snyder struggled to recall anything about the bill's development. Nearly every page of the deposition excerpts provided to the Court show him answering with some variation of *I don't remember*, *I can't recall*, *I don't know*, or *I'm not sure*. Snyder instead "first heard something about the airport from Joey," said Songy was the "policy person . . . attached to the idea," and wholly deferred to Songy's recollection of the bill.

Other depositions were even more useless. Alice Perry, a former policy staffer to the Governor, said "I don't remember knowing anything about the airport bill until it was dropped . . . [I] don't remember any conversations or meetings with Joey." Meanwhile, Bobby Morgan, the

Governor's policy liaison to the Mississippi Senate, testified that he could not recall a single conversation he ever had about the bill, despite it being within his portfolio.[1]

Read as a whole, then, the depositions conducted in 2019 confirm that the plaintiffs cannot learn the true origins of the airport bill without Songy's testimony.

The plaintiffs' second argument is more simple. After the Fifth Circuit's ruling, Songy left the Governor's office. That means state government would no longer be impaired by his absence to attend a deposition. Accordingly, the plaintiffs seek to conduct a real deposition of Songy with "spontaneous, necessary follow-up questions," rather than give him an open-book, take-home exam. Docket No. 395 at 5.

The Governor's counsel urges that neither the 2019 depositions nor Songy's departure from public service are new or important enough to warrant reconsideration of the Magistrate Judge's ruling. And that brings us to the first skirmish: whether movants must have new or important evidence to secure reconsideration of an order issued before Final Judgment.

## II.     The Legal Standard

The Governor's counsel says the correct standard is found in a 2012 district court case called *Solis v. Bruister*. There, the district court recited that "to prevail on their motion for reconsideration, Defendants must show at least one of the following grounds: '(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, . . . or (3) the need to correct a clear error of law or prevent manifest injustice.'" No. 4:10-CV-77-DPJ-FKB, 2012 WL 12829683, at *1 (S.D. Miss. Dec. 26, 2012) (quoting *Atkins v. Marathon*

---

[1] According to an official biography, Morgan's portfolio included "issues related to economic development and federal affairs," as he worked "closely with the Mississippi Development Authority and its Executive Team on public policy matters at the local, state, national, and international level" and served "as Governor Bryant's Liaison to the Mississippi Senate and . . . designee to the Appalachian Regional Commission." Mississippi Dep't of Finance & Admin., Bobby Morgan, https://www.dfa.ms.gov/dfa-offices/capitol-complex-improvement-district/bobby-morgan/ (last accessed Sept. 15, 2020). In his deposition, Morgan testified that the Jackson airport is a vital part of economic development efforts.

*LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)). These are "the same factors employed in deciding a Rule 59(e) motion to alter or amend judgment." *Id.* (citations omitted).

Every Judge in this District has at some point relied upon Judge Barbour's *Atkins* decision to adjudicate motions for reconsideration. *See, e.g.*, *Bell-Wilson v. Skinner*, No. 3:09-CV-147-CWR-FKB, 2011 WL 1626536, at *1 (S.D. Miss. Apr. 28, 2011). It is a useful and well-reasoned holding. That said, the decision has since been overruled by *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017).

In *Austin*, the Fifth Circuit concluded that it was an abuse of discretion to apply the Rule 59(e) standard to motions for reconsideration filed before entry of Final Judgment. *Id.* at 336. The correct standard was found in Rule 54(b), a "less stringent" rule which "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Id.* (quotation marks, citation, brackets, and ellipses omitted). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (quotation marks and citation omitted).

This Court must apply *Austin*. As a result, the Rule 54(b) standard governs today's motion.[2]

---

[2] The Governor's attorneys have not made any argument under Rule 72(a) and have therefore waived its application. Even viewed through the prism of Rule 72(a), however, under *Austin*, a decision contrary to law should not remain unaddressed. As the Fifth Circuit has explained, when the trial court has erred and applied the more stringent Rule 59(e) standard, the appellate court must vacate and remand for the trial court to reconsider under the more flexible Rule 54(b) standard. *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *Six Dimensions, Inc. v Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020).

4

**III.     High-Ranking Government Officials**

The next dispute concerns whether Songy, now a private citizen, may once again invoke the privilege afforded high-ranking government officials.

Everyone agrees that *current* high-ranking government officials may assert a qualified privilege against compelled testimony. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). In the leading Fifth Circuit case on this subject, for example, the appellate court halted planned depositions of the Acting Chairman of the F.D.I.C., the Comptroller of the Currency, and the Acting Director of the Office of Thrift Supervision, whose testimony had been sought to support a civil conspiracy claim. *F.D.I.C.*, 58 F.3d at 1059; *accord Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("subjecting a cabinet officer to oral deposition is not normally countenanced").

The "dispute" today is whether *former* high-ranking government officials may assert the privilege.

The Court says "dispute" because the parties are speaking past each other on this issue. Counsel for the Governor has helpfully cited a dozen cases indicating that *yes*, former high-ranking government officials may continue to assert the privilege. The Governor's attorneys are correct. The plaintiffs don't really disagree. They merely observe that "with [Songy's] departure also goes the primary reason for exempting him from having to sit for an oral deposition as opposed to some other form of discovery." Docket No. 395 at 5. This too is correct.

Courts are supposed to insulate high-ranking government officials "from the constant distraction of testifying in lawsuits" in part because we need the government to function. *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993). But that element of the analysis is entitled to

less weight when the official has left public service. The government is functioning without them. As one of the cases the Governor relies upon explained,

> The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials, although in the case of former high-ranking government officials, one important rationale for the rule is absent. *United States v. Sensient Colors, Inc.,* 649 F. Supp. 2d at 320 (noting that rationale based on interference with official duties is absent).

*Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049–50 (E.D. Cal. 2010). Another one of the Governor's proffered cases reasoned similarly, noting "a marked difference between current and former government officials in terms of the likely frequency and onerousness of discovery requests." *Arnold Agency v. W. Va. Lottery Comm'n*, 206 W. Va. 583, 599 (1999).

In any event, between the authorities and the arguments, it is enough to say that Songy may continue to assert the qualified privilege against compelled testimony the law affords high-ranking government officials, despite his present employment in the private sector.

## IV. Depositions by Written Questions

We finally get to the central question: whether the plaintiffs may depose Songy orally or in writing. That requires some discussion of the differences between oral and written testimony. The below analysis will begin with cases about the importance of oral trial testimony before turning to those discussing the value of oral depositions.

The Fifth Circuit holds oral trial testimony in high regard. The law of the circuit was summarized nicely in this 2019 opinion:

> "Credibility determinations are sensitive matters." *Latiolais v. Whitley*, 93 F.3d 205, 209 (5th Cir. 1996). Witness credibility "is not readily discernable by one who merely reads a cold record." *Pigrenet v. Boland Marine & Mfg. Co.*, 631 F.2d 1190, 1191 (5th Cir. 1980), *rev'd on other grounds on reh'g*, 656 F.2d 1091 (5th Cir. 1981). "Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness's testimony, by closely observing the witness's demeanor, expressions, and intonations." *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

*Swearingen v. Gillar Home Health Care, L.P.*, 759 F. App'x 322, 325–26 (5th Cir. 2019) (brackets omitted). The Advisory Committee Notes to Rule 43 concur, stating in relevant part, "[t]he importance of presenting live testimony in court cannot be forgotten. . . . The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." *United States v. Navarro*, 169 F.3d 228, 238 (5th Cir. 1999) (citation omitted).[3]

Written statements, in contrast, are thought to be less useful, less likely to lead to truth. When a witness has an opportunity to write down his answers, he has the opportunity to "plan artful responses." *Innovative Mktg. & Tech., L.L.C. v. Norm Thompson Outfitters, Inc.*, 171 F.R.D. 203, 204 (W.D. Tex. 1997) (citation omitted). This Court agrees with the lawyer who wrote, "[t]he usefulness of interrogatories as a discovery device is limited. . . . [I]n the unlikely event that you do get a response, it will most probably be useless." Richard A. Rosen, *Drafting and Responding to Written Discovery Under the New Federal Rules: Document Requests, Interrogatories, and Requests to Admit*, C947 ALI-ABA 147, 171 (1994).

One suspects the majority of trial lawyers and trial-court judges prefer oral depositions over written interrogatories, even for extremely sensitive matters. *See, e.g.*, *Jordan v. Taylor*, No. 3:15-CV-295-HTW-LRA, 2020 WL 1908488, at *1 (S.D. Miss. Apr. 17, 2020) (finding telephonic depositions preferred over written interrogatories, for "depositions of employees of the Mississippi Department of Corrections [and] the Office of the Attorney General, who have been identified as having participated in the State's efforts to obtain lethal injection drugs") (collecting cases). The reasons for this echo why we value oral trial testimony. As one of those judges explained three decades ago,

---

[3] In the criminal context, the Fifth Circuit has written that "[t]rial by deposition steps hard on the right of criminal defendants to confront their accusers." *Aguilar-Ayala*, 973 F.2d at 419.

> there are several reasons why oral depositions should not be routinely replaced by written questions. First, the interrogatory format does not permit the probing follow-up questions necessary in all but the simplest litigation. Second, without oral deposition, counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of trial. Finally, written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes.

*Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) (citations omitted).

This matter is a good candidate for an oral deposition. The Magistrate Judge twice found Songy's testimony essential. Other attempts to secure the information Songy possesses have been futile: the involved legislators refuse to submit even a privilege log, while the depositions of the former Governor's staff were fruitless.[4] Meanwhile, Songy is no longer in public service, so a deposition will not distract him from official duties.

There is simply a chasm between our situation and leading cases like *In re United States*, where the Eleventh Circuit found that the FDA Commissioner's time was too valuable to be taken up by a deposition. Songy is not "responsible for the regulation of all drugs, foods, cosmetics and medical devices as well as overseeing the enforcement of statutes and regulations governing the distribution and sales of these items." 985 F.2d at 512. He is not responsible for any public business. He is a private citizen. He no longer has "greater duties and time constraints than other witnesses." *F.D.I.C.*, 58 F.3d at 1060.

The Governor's attorneys press that a supervised, written deposition is "correct." Docket No. 403 at 8. For support they advance a string cite of cases where former high-ranking officials invoked the qualified privilege against compelled testimony. *Id.* at 8-9 (collecting cases). But the Governor has already prevailed on the 'current-versus-former-officials' point. The issue now is in how many of those cases a high-ranking official with essential information was allowed to

---

[4] The Fifth Circuit suggested that we might be able to cut through the thicket by considering the legislative immunity and high-ranking government official issues together. This Court agrees.

8

evade a real conversation, with actual follow-up questions, by submitting written answers to pre-approved questions.

The answer is one. In *Thomas v. Cate*, the district court refused to let a state prisoner depose former California Governor Gray Davis. The prisoner had "failed to carry his burden of establishing that the information he seeks to obtain from the Governor's deposition is not available from other sources." 715 F. Supp. 2d at 1049, 1050. The court then went on to say, "[i]n the event Petitioner has a specific need for information solely in the possession of former Governor Davis, Petitioner may submit a limited number of interrogatory requests to the Court for approval."[5] *Id.* at 1050.

In 10 of the Governor's string-cited cases, however, the court did not weigh in on the form of the deposition at all, as the movants had not met the standard necessary to get any evidence from the former high-ranking government official.[6] Sometimes the movants failed to

---

[5] This Court credits as "close enough" the difference between the written interrogatories conditionally permitted in *Thomas* and the deposition by written questions at issue in our case.

[6] In *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199 (2d Cir. 2013), the plaintiffs were not permitted to depose the former Deputy Mayor of New York City. They didn't even "*contend* that . . . Skyler had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere." *Id.* at 203 (emphasis added).

In *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-752 (CRC), 2015 WL 5602342 (D.D.C. Sept. 4, 2015), the defendants weren't permitted to depose the former Chair of the FDIC. They couldn't show that she had "unique knowledge relevant to the underlying litigation or that the Defendants could not obtain the information sought from another source." *Id.* at *1.

In *Buckler v. Israel*, No. 13-62074-CLV, 2014 WL 7777678, *2 (S.D. Fla. Nov. 13, 2014), the plaintiffs were prohibited from taking the deposition of the former Broward County Sheriff because they failed to establish that the information "cannot be obtained from any other source" or that the former Sheriff had "any firsthand knowledge about the matters at issue in this case."

In *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743 (S.D. Fla. Mar. 7, 2012), the movants could not meet the high standard necessary to depose the former City Manager of Fort Lauderdale. The court found that the movants "have not made a sufficient showing that they have attempted to ascertain that the information sought is not available from other lower-level employees." *Id.* at *4.

In *Dobson v. Vail*, No. C10-5233/KLS, 2011 WL 4404146, *3 (W.D. Wash. Sept. 21, 2011), the court refused to let a *pro se* plaintiff depose the former Secretary of the Washington Department of Corrections, since depositions of

show that the official had any knowledge of the subject; other times they failed to show that subordinates couldn't provide the information. Those 10 cases are not relevant to our situation, where the Magistrate Judge has repeatedly found the official to have critical personal knowledge and discovery has established that no one else knows what happened.

As for the twelfth case advanced by the Governor, well, it supports the plaintiffs' position. In *Arnold Agency*, the Supreme Court of Appeals of West Virginia created a two-step process for securing testimony from a former high-ranking government official. 206 W. Va. at 597. The plaintiff was first ordered to send the former Governor written questions. If the ensuing answers showed that the former Governor had "personal knowledge relevant to this matter, [the plaintiff] may then conduct an oral deposition." *Id.* at 599 n.19. If that process applied here, the plaintiffs would have already taken their oral deposition of Songy.

---

other state officials established that the plaintiff was "able to obtain information relevant to [the issue] from sources other than [the Secretary] who are more knowledgeable on the issue than [the Secretary]."

In *Jarbo v. Cty. of Orange*, No. SACV 05-202-JVS, 2010 WL 3584440 (C.D. Cal. Aug. 30, 2010), the plaintiff was not permitted to take a deposition of the former Sheriff of Orange County. The court found that "Plaintiff has not presented any argument as to why there are extraordinary circumstances in this case," adding, "it is not obvious that Sheriff Carona has direct personal factual information pertaining to the material issues in this case that is not available through other sources." *Id.* at *2.

In *Bey v. City of New York*, No. 99-CIV-3873, 2007 WL 3010023, at *2 (S.D.N.Y. Oct. 15, 2007), the court did not permit the plaintiffs to depose the former Commissioner of the New York City Department of Corrections, because "Plaintiffs have access to other officials with more unique and personal knowledge of proceedings against plaintiffs, thus making a deposition of [the former Commissioner] unnecessary."

In *Croddy v. Fed. Bureau of Investigation*, No. CV 00-0651 (EGS), 2005 WL 8168910, at *1 (D.D.C. Mar. 30, 2005), the court declined to order the deposition of former FBI Director Louis Freeh, since the plaintiffs "have not shown that [Freeh] possesses unique personal knowledge of the circumstances that led to the [rescission] of plaintiffs' employment offers. Further, plaintiffs have not established that the information they seek from the former director is relevant to the disposition of this case or that this information is unavailable from other sources."

In *United States v. Wal-Mart Stores, Inc.*, No. CIV.A. PJM-01-1521, 2002 WL 562301 (D. Md. Mar. 29, 2002), the court declined to permit a deposition of the former Chair of the Consumer Product Safety Commission. The plaintiff had not made "a preliminary showing of extraordinary circumstances or the personal involvement of [the former Chair] in a material way." *Id.* at *4.

In *Horne v. Sch. Bd. of Miami-Dade Cty.*, 901 So. 2d 238, 239 (Fla. Dist. Ct. App. 2005), a Florida appellate court declined to let the plaintiff depose the former Florida Commissioner of Education, as the plaintiff had not "established that the testimony to be elicited is necessary, relevant, and unavailable from another source."

String cite aside, the best case advanced in the Governor's brief is the one the Fifth Circuit cited, *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 1883062 (E.D. La. June 24, 2009). There, Judge Engelhardt initially deferred the deposition of a former FEMA Deputy Administrator until the plaintiffs had first completed depositions of three other individuals. *Id.* at *1. Two months later, with those depositions completed, the Judge concluded that the plaintiffs were entitled to information from the former official about only one question: "What were [his] concerns and his reasoning behind delaying the testing from October 2007 until December 2007[?]" *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2602615, at *1 (E.D. La. Aug. 20, 2009). Judge Engelhardt ordered that the question be answered in writing, under oath. *Id.*

Judge Engelhardt's ruling is a fair one, no doubt within the standard of review. But it cited no cases or other authorities to support its conclusion. And a review of the run of cases indicates that it is an outlier.

There's *Bey v. City of New York*—a dispute the Governor cited for a different proposition—where the court permitted the oral deposition of a high-ranking government official who had essential information about the plaintiffs' claims:

> Based on plaintiffs' assertions, it appears that [Edward Kuriansky, former Commissioner of the New York City Department of Investigations] does possess unique personal knowledge, that is both relevant and cannot be obtained from another source. Kuriansky was Caruso's supervisor and, based on Caruso's testimony, was aware of, if not involved in, the investigation of plaintiffs. Caruso's testimony that he had conversations with Kuriansky, but does not recollect the substance, means that the information is not available through any other means. Because Kuriansky is no longer a governmental official, there is no reason to believe that a deposition would "significantly interfere with [his] ability ... to perform his governmental duties." Therefore, plaintiffs' motion for a protective order to preclude the deposition of Kuriansky is **DENIED.**

No. 99-CIV-3873, 2007 WL 1893723, at *2 (S.D.N.Y. June 28, 2007) (citations omitted).

There's *Energy Capital Corp. v. United States*, in which the court found that "because [former HUD Secretary Andrew] Cuomo and [former HUD General Counsel Howard] Glaser had first-hand personal knowledge that no one else has that is relevant to this case, their live testimony [by videotaped deposition] was appropriate." 60 Fed. Cl. 315, 318 (2004). This was a reasonable, "less intrusive" compromise, since "depositions can be performed and videotaped at a time and place that is convenient to both parties" *Id.* at 319.

There's *Gibson v. Carmody*, where the court permitted the plaintiffs to depose "former Police Commissioner Benjamin Ward" for two hours, overruling the defendant's request for written questions. No. 89 CIV. 5358 (LMM), 1991 WL 161087, at *1 (S.D.N.Y. Aug. 14, 1991). The court reasoned,

> While the taking of depositions of present or former government officials at the level of Police Commissioner should not lightly be granted, it is clear that Commissioner Ward personally participated in proceedings relating to or stemming from the investigation of the facts underlying this case . . . , and fairness to the parties requires that, under the conditions described above, they be permitted to depose him. The submission of written questions, as suggested by the City, is an inadequate, and perhaps ultimately wasteful, substitute for an oral deposition.

*Id.*

Then there's *American Broadcasting Companies v. U.S. Information Agency*, in which the court rejected the government's request for written questions directed to the agency head, finding the suggestion "without merit" and "serv[ing] only to frustrate any meaningful discovery on the plaintiffs' behalf." 599 F. Supp. 765, 769 (D.D.C. 1984). "Depositions are the most efficient means of discovery for the plaintiffs in the context of the instant case. . . . Depositions are also more reliable, as they are taken under oath, and the deponents' responses are relatively spontaneous." *Id.*

The list goes on and on. The Governor of the Virgin Islands was required to sit for an oral deposition in *Virgo Corp. v. Paiewonsky*, 39 F.R.D. 9, 10 (D.V.I. 1966). The commanding officer of the New Jersey State Troopers had to sit for a two-hour deposition in *Summerville v. Gregory*, No. 14-CV-7653 (KM)(MAH), 2017 WL 3208346, at *4 (D.N.J. July 27, 2017). The Mayor and Police Chief of Hammond, Indiana had to sit for two-hour depositions in *Mayes v. City of Hammond*, No. 2:03-CV-379-PRC, 2005 WL 8170415, at *4 (N.D. Ind. Sept. 19, 2005). There's even another Cuomo case. *See Sanstrom v. Rosa*, No. 93 CIV. 7146 (RLC), 1996 WL 469589, at *5 (S.D.N.Y. Aug. 16, 1996) (ordering the deposition of former Governor Mario Cuomo).

"Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated," and then "only where it is shown that other persons cannot provide the necessary information." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007) (citations omitted). If those exceptional circumstances exist, however, the great weight of authority says the official should sit for an oral deposition limited in time and subject matter.

It has never been clear why this witness should be treated differently from the many other current and former high-ranking government officials described in the above cases. Accordingly, the plaintiffs' motion is granted to the extent that Songy shall sit for an oral deposition limited to two hours and two topics.

## V.     The Inconsistency of the Governor's Position

A word is owed about gamesmanship. Patient readers will recall that in a four-hour deposition, former Deputy Counsel Drew Snyder listed all the ways he did not remember Songy's work on the airport takeover bill. The Court returns to that deposition for a moment.

The transcript suggests that the deposition started to go sideways fairly quickly. As early as pages 11 and 12, the plaintiffs' attorney protested that Snyder was taking 10 minutes to answer every question—playing a game of slowing it down.[7] In the ensuing pages Snyder then answered some form of "I don't remember" dozens of times. Frustrated, Snyder eventually said he had better things to do with his time.

> Look, that 30(b)(6) deposition was two years ago. I've moved on to running Medicaid in January of 2018. And since then, it's been – well, you've got 720,000 beneficiaries and 6.2 billion in annual expenses and about 3,500 acronyms. It's all Medicaid. So, what I saw or didn't see in that 2017 30(b)(6), I think is probably – it's best reflected in that 30(b)(6). I don't remember a whole lot about what was in there at this point.

The Court understands that everyone's patience was wearing thin, and wishes to focus on the substance of Snyder's comments rather than how they may have come across.

Snyder was right. The Division of Medicaid might be the most important agency in Mississippi. It touches a huge proportion of our citizens in the most personal of ways: from the physical and mental health of hundreds of thousands of families, to the pocketbooks of tens of thousands of doctors, nurses, and other health care providers, to the public in general.

Snyder is essential to that enterprise. It's a difficult job that requires sustained attention and expertise.

Given this, the Court cannot figure out why, even after the Fifth Circuit's ruling reiterating the importance of protecting high-ranking officials' time and attention, the Governor's office would continue to invoke the privilege for Songy to block a two-hour deposition but hang its Medicaid director out to dry for a four-hour deposition. If anyone needs to be conducting

---

[7] Counsel for the Governor participated in the delay by repeating the same evidentiary objection to each question. The Court does not ascribe any impropriety to him, though, because we do not know if plaintiffs' counsel refused to stipulate to a continuing objection. Moving forward, the Court encourages all counsel to stipulate to those objections that the defending attorney wants preserved throughout the deposition.

important public business it is Snyder, not Songy. The illogical distinction being drawn between them suggests that Songy knows something about the airport bill that cannot be provided to the plaintiffs and the public.

Judge Fallon was presented with an analogous problem during the *Vioxx* MDL. The plaintiffs wished to call at trial Merck's President of Human Health for Canada, Latin America, Japan, Australia, and New Zealand, who had previously been the President of Human Health for the United States.[8] *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 641 (E.D. La. 2006). This executive had already sat for depositions—unlike Songy—but Merck did not want the person "responsible for the marketing activities and commercial operations of Merck during the time Vioxx was being developed and marketed" to provide live testimony at a bellwether trial. *Id.*

Judge Fallon wasn't persuaded. He wrote,

> Merck's refusal to voluntarily produce Mr. Anstice is for a purely tactical advantage. The Court is quite conscious that Mr. Anstice possesses information highly-relevant to the plaintiff's claims. This information may be damaging to Merck's position. As such, the Court assumes that Merck would like to eliminate any unpredictability and limit Mr. Anstice's trial testimony to his "canned" deposition testimony—a purely tactical reason. The Court cannot surmise any other legitimate reason why Merck would protest to Mr. Anstice's personal appearance.

*Id.* at 643. Judge Fallon found that "live, in-person testimony is optimal for trial testimony," while "on the other hand, the deposition is a substitute, a second-best, not to be used when the original is at hand." *Id.* at 644 (quotation marks and citations omitted). He compelled the executive's testimony.

Our situation obviously involves a former high-ranking government official rather than an executive of a multi-national pharmaceutical company. But the plaintiffs in this case have so far been denied even the "second-best" option: a deposition. And they seek what most other

---

[8] The circumstances suggest that Merck's executives are, like high-ranking government officials, "the subject of or involved in unusually high numbers of lawsuits." *Bryant*, 745 F. App'x at 220.

courts have required of high-ranking government officials with essential information: a deposition. It should be conducted without further delay.

## VI.     Conclusion

For these reasons, the Court requires that Joey Songy sit for an oral deposition limited to two hours' duration and two topics. The deposition shall be videotaped to discourage future motion practice on whether any participant in the deposition is trying to run out the clock.

This Order is stayed pending the Governor's anticipated interlocutory appeal.

**SO ORDERED**, this the 22nd day of September, 2020.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE