## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

CHOKWE ANTAR LUMUMBA, Mayor of the                    **PLAINTIFFS**
City of Jackson, Mississippi, on behalf of the
Citizens of the City of Jackson, Mississippi;
CHOKWE ANTAR LUMUMBA, individually as a
taxpayer and citizen of the City of Jackson, on
behalf of himself and all others similarly
situated; ASHBY FOOTE, KENNETH I.
STOKES, ANGELIQUE LEE, BRIAN C.
GRIZZELL, VERNON W. HARTLEY SR.,
AARON BANKS, VIRGI LINDSAY, all in their
official capacities as elected members of the
City Council of the City of Jackson,
Mississippi, from their respective wards and in
their individual capacities as taxpayers and
citizens of the City of Jackson on behalf of
themselves and all others similarly situated;
JACKSON MUNICIPAL AIRPORT
AUTHORITY; BOARD OF COMMISSIONERS
OF THE JACKSON MUNICIPAL AIRPORT
AUTHORITY; LUCIUS WRIGHT, RICKEY D.
JONES, and RICA LEWIS-PAYTON, all in their
official capacities as Commissioners on the
Board of Commissioners of the Jackson
Municipal Airport Authority and in their
individual capacities as citizens of the City of
Jackson on behalf of themselves and all others
similarly situated

vs.                                                   **NO.: 3:16-CV-246-CWR-FKB**

TATE REEVES, in his Official Capacity as               **DEFENDANTS**
Governor of the State of Mississippi; DELBERT
HOSEMANN, in his Official Capacity as
Lieutenant Governor of the State of
Mississippi; MADISON COUNTY, Mississippi;
and RANKIN COUNTY, Mississippi

## SECOND AMENDED CLASS ACTION COMPLAINT

## I. INTRODUCTION

1.     On April 14, 2016, the Mississippi Legislature passed Senate Bill 2162, commonly referred to as the "Airport Takeover Bill." On May 4, 2016, Phil Bryant, Governor of the State of Mississippi, signed Senate Bill 2162 into law. This new law, codified as Mississippi Code § 61-3-6, amends the Airport Authorities Law, Mississippi Code §§ 61-3-1 through 61-3-85.[1]

2.     Senate Bill 2162 amends certain portions of the definitions codified as Miss. Code Ann. Section 61-3-3 of Mississippi's Airport Authorities Law by:

>   (a) deleting certain wording contained in subsection (b), specifically "regional airport authority or municipal";
>
>   (b) deleting subsection (f) in its entirety;
>
>   (c) adding the reference to Section 61-3-6 in subsection (h); and
>
>   (d) under the current Section 61-3-5, adding an ending sentence which states "[t]his section shall not apply to the airport authority created in Section 61-3-6.

3.     The newly added Section 61-3-6 is titled as

AN ACT TO CREATE SECTION 61-3-6, MISSISSIPPI CODE OF 1972, TO CREATE THE *JACKSON* METROPOLITAN AREA AIRPORT AUTHORITY, TO ESTABLISH ITS POWERS AND DUTIES; TO PROVIDE THAT THE *JACKSON* METROPOLITAN AREA AIRPORT AUTHORITY SHALL EXERCISE ALL POWERS AND DUTIES DELEGATED TO MUNICIPAL AIRPORT AUTHORITIES BY LAW; TO PROVIDE FOR THE APPOINTMENT OF THE COMMISSIONERS OF THE *JACKSON* METROPOLITAN AREA AIRPORT AUTHORITY;

---

[1] A copy of Mississippi Code § 61-3-6 is attached as Ex. "A."

TO ABOLISH THE *JACKSON* MUNICIPAL AIRPORT AUTHORITY AND TRANSFER ALL POWERS, DUTIES, FACILITIES, AND RESOURCES TO THE *JACKSON* METROPOLITAN AREA AIRPORT AUTHORITY UPON APPROVAL OF THE *JACKSON* METROPOLITAN AREA AIRPORT AUTHORITY BY THE FEDERAL AVIATION ADMINISTRATION AS AN ELIGIBLE AIRPORT SPONSOR AND ISSUANCE OF AN AIRPORT OPERATING CERTIFICATE; TO AMEND SECTIONS 61-3-3 AND 61-3-5, MISSISSIPPI CODE OF 1972, IN CONFORMITY THERETO; AND FOR RELATED PURPOSES.

Miss. Code § 61-3-6 (emphasis added).

4.     On its face, Senate Bill 2162 singles out the City of Jackson, Mississippi ("the City"), and the City's authority to create the Jackson Municipal Airport Authority ("JMAA"). *See* Miss. Code § 61-3-5 (authorizing every municipality in the State of Mississippi to create an airport authority to manage and operate that municipality's airport).  No other municipality in the State of Mississippi is affected by this law. Rather, Senate Bill 2162 seeks to unilaterally transfer management and operation of the Jackson-Medgar Wiley Evers International Airport ("Jackson-Medgar Evers International") to a new entity without regard for the City or the will of the City's governing authorities.

5.     Additionally, Senate Bill 2162 ignores the co-sponsor status of the City with JMAA on the Federal Aviation Administration's Airport Operating Certificate issued for Jackson-Medgar Evers International and the contractual relationship the City and JMAA share with the United States of America. Such action contradicts and subverts the authority granted by Congress to the Federal Aviation Administration to certify and license airports in the United States.  *See, e.g.*, 49 U.S.C. §§ 40101 and

3

47106. Senate Bill 2162 thus violates the Supremacy Clause of the United States Constitution.

6. In the same vein, Senate Bill 2162, which has aptly been nicknamed the "Airport Takeover Bill," contravenes federal law, and thus violates Article 3 Sections 6 and 7 of the State of Mississippi's Constitution in that the law was passed in derogation of the paramount allegiance of the State of Mississippi's citizens to the Federal Government. More specifically, only the Federal Aviation Administration has authority to issue an Airport Operating Certificate and to approve the transfer of the Federal obligations to another eligible sponsor.[2] The City is a co-sponsor with JMAA, and the City possesses good title to the airport lands. Because Senate Bill 2162 purports to abolish JMAA and replace JMAA with a new authority, Senate Bill 2162 creates from its inception an inherent conflict between the new authority and the City, and implementation of Senate Bill 2162 is wholly inconsistent with applicable federal law.

7. Senate Bill 2162 violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The effect of Senate Bill 2162 is an illegal dilution of voting and other rights of the citizens of Jackson, Mississippi, whose elected officials, including the Mayor and the City Council, currently select the JMAA Board because Senate Bill 2162 strips those officials of control. The new authority would be governed by a board of nine

---

[2] *See* 49 U.S.C. § 44706, and the implementing regulations set forth in 14 C.F.R. 139.

PD.45176771.1

individuals, and the City's Mayor and Council are left with a single appointee each to the new, nine-person board.[3]

8.    Senate Bill 2162 also violates Mississippi's Constitution because the State Legislature must enact legislation that is general in nature, not "local" or "special." *See* Miss. Const. Art. 4, § 87. Senate Bill 2162 neither reads nor operates as a law general in nature. Rather, Senate Bill 2162 unambiguously is limited to the City of Jackson and makes unreasonable, arbitrary classifications.

9.    This Complaint is being filed to redress the deprivation of rights and privileges secured by the Constitution of the United States of America and the Constitution of the State of Mississippi. Plaintiffs respectfully request a declaration that Senate Bill 2162 violates the Constitution of the United States, violates the State of Mississippi's Constitution, and is preliminarily and permanently enjoined.

## II. PARTIES, JURISDICTION, AND VENUE

### CITY OF JACKSON PLAINTIFFS

10.    Plaintiff, Chokwe Antar Lumumba is an adult resident citizen of Jackson, Mississippi. He brings this action in his official capacity. Mayor Lumumba is the duly elected Mayor of the City of Jackson (occasionally, "the City"). The City is a governmental entity of the State of Mississippi, and a municipal corporation

---

[3] Moreover, the selection process outlined in Senate Bill 2162 creates an encroachment between the City's executive and legislative branches. The City operates under a mayor-council form of government. Neither branch can appoint without advice or input from the other branch. The appointment process set out in Senate Bill 2162 violates the principle of separation of powers as embodied in the Constitution of the State of Mississippi and to which the City's governing authorities must adhere.

5

existing under the laws of the State. Mayor Lumumba, in his official capacity as the Mayor of the City of Jackson and on behalf of the City of Jackson, is without adequate remedy at law and seeks all relief available under Rules 57 and 65 of the Federal Rules of Civil Procedure. Mayor Lumumba has taken his Oath of Office, to faithfully support the Constitution of the United States of America and the Constitution of the State of Mississippi. Senate Bill 2162 violates both. Mayor Lumumba also brings this action individually as a citizen and taxpayer of the City of Jackson on behalf of himself and all members of the City of Jackson Class as defined below.

11. Plaintiffs Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, and Virgi Lindsay are adult resident citizens of the City of Jackson, Mississippi, and bring this action in their official capacities as the duly elected Councilpersons from each of the seven Wards of the City of Jackson (collectively, the "City Council"). Each member of the City Council has taken an Oath of Office to faithfully support the Constitution of the United States of America and the Constitution of the State of Mississippi. The City Councilpersons, in their official capacities as members of the City Council, are without an adequate remedy at law and seek all relief available under Rules 57 and 65 of the Federal Rules of Civil Procedure. Plaintiffs Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, and Virgi Lindsay also bring this action individually as citizens and taxpayers of the City of Jackson on behalf of themselves and all members of the City of Jackson Class as defined below.

6

## JACKSON MUNICIPAL AIRPORT AUTHORITY PLAINTIFFS

12.     JMAA is the public body, corporate and politic, duly created pursuant to Mississippi Code § 61-3-5 by resolution of the City of Jackson, Mississippi, in 1960, to manage Jackson-Medgar Evers International as contemplated by Mississippi's Airport Authorities Law, Mississippi Code §§ 61-3-1 through 61-3-85. Pursuant to federal law, JMAA is the sole entity authorized to operate Jackson-Medgar Evers International and to oversee operation of Hawkins Field a smaller facility in the City of Jackson.

13.     JMAA's Board of Commissioners ("the JMAA Board") is the five-person board responsible for exercising the powers, duties, and responsibilities given to JMAA by state and federal law and the City to operate and manage Jackson-Medgar Evers International.

14.     Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton, each in their official capacities as Commissioners on the JMAA Board, are without an adequate remedy at law and thus seek all relief available under Rules 57 and 65 of the Federal Rules of Civil Procedure. Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton also bring this action individually, and as citizens and taxpayers of the City of Jackson on behalf of themselves and all members of the City of Jackson Class as defined below.

## DEFENDANTS

15.     Defendant, Governor Tate Reeves ("the Governor"), is an adult resident citizen of the State of Mississippi who is the duly elected Governor of the State of Mississippi. The Governor is sued in his official capacity only, and the process of this

Court may be served on the Governor within this District and Division at the Sillers Building, 550 High Street, Suite 1900, Jackson, Mississippi 39201.

16. Defendant, Lieutenant Governor Delbert Hoseman (the "Lieutenant Governor") is an adult resident citizen of the State of Mississippi who is the duly elected Lieutenant Governor of the State of Mississippi. The Lieutenant Governor is sued in his official capacity only, and the process of this Court may be served on the Lieutenant Governor within this District and Division at the Sillers Building, 550 High Street, Suite 1900, Jackson, Mississippi 39201.

17. Defendant Madison County, Mississippi ("Madison County"), is a political subdivision of the State of Mississippi. Madison County may be served within this District and Division with process through its Chancery Clerk, Ronny Lott, 146 West Center Street, Canton, Mississippi, 39046.

18. Defendant Rankin County, Mississippi ("Rankin County"), is a political subdivision of the State of Mississippi. Rankin County may be served within this District and Division through its Chancery Clerk, Larry Swales, 211 East Government Street, Brandon, Mississippi, 39042.

JURISDICTION

19. This action arises under the Supremacy Clause and the Fourteenth Amendment to the United States Constitution, under 49 U.S.C. §§ 44706 and 47107, and under implementing regulations and grant assurances, as more fully set forth in this Complaint. Thus, the Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (a)(4), and 1367(a).

8

## VENUE

20.     Venue is proper in this Court because Hinds County, the seat of the Government of the State of Mississippi, is within this District and Division; both Madison County and Rankin County are situated within this District and Division; and  a substantial part of the events or omissions giving rise to the claims against Defendants occurred within this District and Division.  *See* 28 U.S.C. § 1391(b).

## CLASS ALLEGATIONS

21.     Pursuant to Rules 23(a) and 23(b), Plaintiffs Chokwe Antar, Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, Virgi Lindsay Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton (collectively, the "City of Jackson Class Plaintiffs") bring this action on behalf of themselves and a class of all persons who are currently, or will be, citizens and taxpayers of the City of Jackson (the "City of Jackson Class").

22.     As of the 2010 Census, the City of Jackson's population consisted of approximately 173,514 citizens.[4] The proposed City of Jackson Class also includes persons who will become citizens and taxpayers of the City of Jackson in the future. Consequently, the City of Jackson Class is so numerous that joinder of all class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).

23.     There are multiple questions of law and fact common to the entire City of Jackson Class, including:

---

[4]     2010 Census of Population and Housing – Mississippi, available at https://www2.census.gov/library/publications/decennial/2010/cph-2/cph-2-26.pdf (last visited June 17, 2024).

PD.45176771.1

a. Whether Senate Bill 2162 violates various provisions of the Constitution of the United States of America; and

b. Whether Senate Bill 2162 violates various provisions of the State of Mississippi's Constitution.

*See* Fed. R. Civ. P. 23(a)(2).

24. The City of Jackson Class Plaintiffs, like all City of Jackson Class members, is subject to Senate Bill 2162 and its provisions abolishing the JMAA, through which the City of Jackson managed and controlled Jackson-Medgar Evers International, and replacing it with a regional airport authority. The City of Jackson Class Plaintiffs' claims thus are typical of the City of Jackson Class. *See* Fed. R. Civ. P. 23(a)(3).

25. Each of the City of Jackson Class Plaintiffs will fairly and adequately represent the interests of the City of Jackson Class and will diligently serve as class representatives. Their interests are co-extensive with those of the City of Jackson Class, and they have retained a team of counsel experienced with class actions alleging constitutional violations and litigating issues of federal law and the law of the State of Mississippi. Putative City of Jackson Class Counsel possess the experience and resources necessary to fairly and adequately represent the Class. *See* Fed. R. Civ. P. 23(a)(4).

26. Prosecuting separate actions against Defendants by individuals who fall within the City of Jackson Class would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

10

interests of the other members not parties to the individual adjudications. Namely, a ruling on the constitutionality of Senate Bill 2162 in an adjudication respecting an individual class member would be dispositive of the interest of the remaining members of the City of Jackson Class, both as a practical matter and as a matter of constitutional law. *See* Fed. R. Civ. P. 23(b)(1)(B).

27. Defendants have acted, or failed to act, on grounds generally applicable to the entire City of Jackson Class. Specifically, Defendants have signed into law and are now attempting to execute the provisions of Senate Bill 2162, which provisions are unconstitutional under both the Constitution of the United States of America, and the State of Mississippi's Constitution. Defendants' acts and omissions make final injunctive relief and declaratory relief appropriate to the City of Jackson Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

28. The factual circumstances surrounding Jackson-Medgar Evers International and its management and operation are common to all City of Jackson Class members, as are the legal questions arising under both the Constitution of the United States of America and the State of Mississippi's Constitution. The interests of the City of Jackson Class members carrying on litigation related to Senate Bill 2162 is slight given the fact that Senate Bill 2162 is applicable to the City of Jackson as a whole, the litigation which has already begun related to the constitutionality of Senate Bill 2162 is only in its infancy, it is most desirable to concentrate the litigation surrounding Senate Bill 2162 in this forum given the venue is proper here, and there will not be any meaningful difficulty in managing a class action given the nature of

11

the City of Jackson Class and the claims being advanced. Accordingly, there are questions of law and fact common to the members of the City of Jackson Class, these common questions of law and fact predominate over any questions which may affect only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy presented. *See* Fed. R. Civ. P. 23(b)(3).

## II. BACKGROUND

A.    The Airport Authorities Law, Mississippi Code §§ 61-3-1 through 61-3-85

29.    In 1958, the Legislature of the State of Mississippi enacted the Airport Authorities Law, which is now codified as Mississippi Code §§ 61-3-1 through 61-3-85. The Airport Authorities Law, a general law of statewide application, authorizes municipalities, such as the City of Jackson, to create a corporate entity known as a municipal airport authority to construct, operate, regulate, and maintain a municipal airport.

30.    In pertinent part, Mississippi Code § 61-3-5 provides:

> Any municipality . . . , by resolution, may create a public body, corporate and politic, to be known as a municipal airport authority, which shall be authorized to exercise its functions upon the appointment and qualification of the first commissioners thereof. Upon the adoption of a resolution creating a municipal airport authority, **the governing body of the municipality** . . . , **pursuant to the resolution**, **shall appoint five (5) persons as commissioners of the authority**. . . . [E]ach commissioner shall be appointed for a term of five (5) years . . . .

Miss. Code § 61-3-5 (emphasis added).

12

31.    The Mississippi Code further provides for the establishment of regional airport authorities:

> **Two (2) or more municipalities . . . , by resolution of each**, **may create a public body**, **corporate and politic**, **to be known as a regional airport authority** which shall be authorized to exercise its functions upon the issuance by the Secretary of State of a certificate of incorporation. **The governing body of each municipality . . . , pursuant to its resolution, shall appoint one (1) person as a commissioner of the authority. However, if the regional airport authority consists of an even number of participants, which include two (2) or more municipalities . . . , an additional commissioner shall be appointed by the Governor.** Such additional commissioner shall be a resident of a county other than the counties of the participating municipalities but contiguous to at least one (1) of such counties.

Miss. Code. § 61-3-7(1) (emphasis added).[5]

B.    <u>The City of Jackson and  Jackson-Medgar Evers International</u>

32.    On or about February 17, 1960, the City of Jackson exercised the authority given to all municipalities in the State of Mississippi and passed a resolution creating the JMAA.[6]  JMAA was created to operate, regulate, and maintain what would at the time be known as "Allen C. Thompson Field, Jackson Municipal Airport" ("Jackson Municipal Airport") located on land situated in Rankin County but annexed to and made a part of the City of Jackson, and "Hawkins Field", a separate facility located in the City of Jackson and situated in Hinds County.

---

[5] Mississippi Code § 61-3-3 defines "municipality" to include "any county . . . ."

[6] *See* Resolution of the City of Jackson, Mississippi, attached as Ex. "B" (hereinafter, "the 1960 Resolution"); This Exhibit is fully incorporated herein by reference.  At times, both Jackson Municipal Airport and Hawkins Field will be referred to collectively as the "Jackson Municipal Airport" or "Jackson-Medgar Evers International" with respect to ownership and authority to operate.

13

33.     In the 1960 Resolution, the City's minutes noted that "the people of the City of Jackson, at an election held the 26th day of August, 1958, authorized the issuance of $3,000,000.00 full faith and credit bonds of the City to raise money for the purpose of establishing, developing, constructing and equipping the new airport, of which the sum of $1,000,000.00 has now been sold and delivered . . . ."

34.     By Ordinance dated June 2, 1964,[7] the City incorporated the area and the land upon which the Jackson Municipal Airport was constructed into the corporate limits and boundaries of the City of Jackson.  The City continues to be the legal owner of and record titleholder to the land upon which the Jackson Municipal Airport is situated.

35.     In 1989, the United States Customs Service designated Jackson Municipal Airport an International Port of Entry, and the airport's name was officially changed to Jackson International Airport. Later, to honor slain civil rights advocate Medgar Wiley Evers, the name was changed again to the Jackson-Medgar Wiley Evers International Airport.

36.     The City will suffer a distinct and palpable injury if Senate Bill 2162 is allowed to stand.  The City has entered into multiple federally mandated grant assurances with the United States Government, with the JMAA as a party to such contracts. The City's ability to comply with its federal obligations under these

---

[7] A copy of the June 2, 1964, Ordinance is attached as Exhibit "C" and is fully incorporated herein by reference.

14

agreements for grant awards totaling over $7,000,000.00 in funds for airport projects is severely jeopardized by the provisions of Senate Bill 2162.

37.     The City of Jackson Plaintiffs, in their official and individual capacities, have an interest in maintaining the effectiveness of their votes, and enactment of Senate Bill 2162 jeopardizes the vote of each of the elected officials who comprise the City's governing body.  Senate Bill 2162 deprives them of this lawful prerogative.  Each member of the City Council and Mayor Lumumba swore a solemn oath to support the United States Constitution, and their adherence to this solemn oath will be called into question if the provisions of Senate Bill 2162 are followed.

38.     The City, its elected officials, and their constituents will suffer irreparable injury and are without redress unless this Court exercises its remedial powers.  Therefore, a genuine case and controversy exists under Article III of the United States Constitution.

C.     The Jackson Municipal Airport Authority

39.     Under federal law, no person or entity may operate Jackson-Medgar Evers International without obtaining from the Federal Aviation Administration ("FAA") an Airport Operating Certificate.

40.     On May 21, 1973, the FAA approved the JMAA as the sole entity authorized to operate and manage Jackson Municipal Airport pursuant to a full

15

Airport Operating Certificate, as provided under the Code of Federal Regulations.[8] From that time to the present, the JMAA has functioned as the municipal airport authority for the City. The JMAA is co-sponsor with the City on various obligations and assurances to the FAA.

41. On September 4, 1975, the 1960 Resolution was amended in pertinent part to reflect the following regarding the powers and duties of the JMAA:[9]

    a. [The JMAA] shall adopt a fiscal year which shall begin on October 1 of each calendar year.

    b. . . . [The JMAA] shall not spend any moneys or contract to expend any sum, for operations, not covered by and included in the said annual budget or approved revision thereof, except with the approval of the City Council.

    c. [The JMAA] shall not borrow any money or issue any revenue bonds, as provided by statute, except with the approval of the City Council.

42. Since the formation of the JMAA, the City has entered into several federally funded grants with respect to which the City serves as co-sponsor with the JMAA.[10] In each grant award, the parties were required to make certain federally mandated representations and assurances. The City has entered in these grant

---

[8] A copy of the Airport Operating Certificate is attached as Exhibit "D" and is fully incorporated herein by reference. The Airport Operating Certificate indicates it is not transferable. *See* Ex. D.

[9] A copy of the September 4, 1975, Resolution is attached as Exhibit "E" and is fully incorporated herein by reference.

[10] A copy of the Federal Grant Awards are attached as Exhibit "F" and are fully incorporated herein by reference.

16

agreements in reliance upon the relationship established with the JMAA, its control over JMAA through appointments, and especially in the City's role as title holder to the lands upon which the airport is situated.

D.  The Lands Surrounding Jackson-Medgar Evers International

43.     It has long been apparent that the land on which Jackson-Medgar Evers International sits and the land surrounding the airport—much of which is owned by the City of Jackson—is primed for development and the development of that land has the potential to provide an additional, valuable source of revenue growth for the airport.[11]

44.     In a continued effort to promote development of the lands surrounding Jackson-Medgar Evers International, and to facilitate access thereto, JMAA teamed with three municipalities surrounding Jackson-Medgar Evers International to form the East Metro Corridor Commission ("EMCC") on or about June 20, 2002. The purpose of the EMCC was the planning and construction of the East Corridor Project, a project that was part of larger development plan with which the JMAA had been involved since February 1990.

---

[11] *See MBJ Exclusive: Jackson's New Airport CEO Fulfills Desire to Taking on the Top Job*, Mississippi Business Journal, Dec. 18, 2014, *available at* http://msbusiness.com/2014/12/mbj-exclusive-jacksons-new-airport-ceo-fulfills-desire-taking-top-job/; *see also Special Report: Land May Hold Key to Jackson Airport's Success*, Mississippi Business Journal, Aug. 1, 2014 ("The executive who replaces [former CEO Dirk] Vanderleest will inherit 900 undeveloped acres the Authority [*sic*] owns east of the airport — an asset known as the East Corridor Project. It offers the prospect of a greatly enhanced revenue picture."), *available at* http://msbusiness.com/2014/08/special-report-land-may-hold-key-jackson-airports-success/.  The City of Jackson, not JMAA, owns nearly all of the land referenced here.

17

45.     The East Corridor Project involves a two-phased plan which, once both phases are complete, will provide access to more of the lands surrounding Jackson-Medgar Evers International.   Phase I of the East Corridor Project resulted in construction of a parkway connecting Lakeland Drive, in Rankin County, to Eldorado Road, which affords access to approximately 200 acres of land surrounding Jackson-Medgar Evers International.   Ground was recently broken on Phase II, and this phase will provide access to and open for development an additional 785 acres of land owned by the JMAA.   Once completed, the East Metro Parkway will provide access to the lands surrounding the airport which are ripe for development.

E.     The Current JMAA Board's Leadership and Success

46.     The JMAA consists of a Board of five Commissioners duly appointed by the City's governing authorities.   Pursuant to Mississippi Code Section 21-8-23(5) and Section 2-372 of the City's Code of Ordinances, this power of appointment is deemed to vest in the Mayor with the confirmation of an affirmative vote of a majority of the council present and voting at any meeting.   The Ordinance further states that any commission, board, or authority consisting of less than seven members shall include not more than one appointee from any ward, requiring that each member must reside in one of the City's wards at the time of appointment.   The JMAA's current Board of Commissioners were appointed consistent with the provisions of Section 2-372 of the City's Code of Ordinances.

47.     The primary responsibility for the JMAA Board is to exercise the powers, duties, and responsibilities given to the Board and JMAA by the City of

18

Jackson and state and federal law for the purpose of operating and managing Jackson-Medgar Evers International. The JMAA Board develops strategic goals in furtherance of the JMAA's purpose and provides leadership in achieving those goals.

48. The JMAA Board is also charged with hiring a Chief Executive Officer of the JMAA. The CEO reports directly to the Board and is the primary contact on the JMAA staff for the JMAA Board and the individual Commissioners. The CEO, together with the JMAA senior management team, is responsible for achievement of strategic goals and the day-to-day operation and management of both JMAA and Jackson-Medgar Evers International.

49. The CEO is responsible for planning, directing, managing and administering all activities and operations of JMAA. The CEO also hires other members of the JMAA senior management team. Other JMAA employees are hired by their immediate supervisors with the advice of the human resources department as may be appropriate.

50. Reporting directly to the CEO are a Chief Operating Officer and a Chief Administrative Officer. The JMAA is broken down into several departments each charged with responsibility for a different aspect of the management and operation of Jackson-Medgar Evers International.

51. These departments include Airport Operations, which is headed by an Aviation Operations Manager and oversees compliance with federal aviation and airport regulations; Airport Security, which is led by the Airport Security Manager and is responsible for terminal public safety activities and federal security rules and

regulations; and Capital Programming, which is headed by the Senior Director of Capital Programming and is charged with directing and supporting development and implementation of the JMAA's master plans.[12]

52.     In January 2015, the JMAA Board appointed Carl Newman as Chief Executive Officer of the JMAA.[13]   According to Mississippi State Senator Josh Harkins, the principal author of Senate Bill 2162, Carl Newman "is gonna [*sic*] do a great job; . . . he's got the experience . . . 30 plus years . . . he's run two huge airports Phoenix and Houston; I think he is quite capable of . . . maintaining the responsibilities and duties as CEO of the airport."[14]

53.     Under Newman's leadership, the JMAA announced its Strategic Plan 2021, which sets forth the JMAA's plan to attain significant, meaningful growth accomplished, in part, by tapping into the resource that is the land surrounding Jackson-Medgar Evers International. The plan arises from Newman's selection as CEO of the JMAA and provides for development of the lands surrounding Jackson-Medgar Evers International in light of the onset of Phase II of the East Corridor Project.  The plan also includes improvements to the rental car facility, the terminal concourse, and Hawkins Field.

---

[12] The JMAA also includes departments for Disadvantaged Business Enterprise and Community Development, Finance, Human Resources, Maintenance, and Public Safety, each of which are led by a separate director.

[13] Newman took over for Dirk Venderleest, the JMAA's Chief Executive Officer for the previous twenty-four years, who retired in September 2014.

[14] Interview of Senator Harkins by Paul Gallo, Gallo Radio Show Archives, March 1, 2016, *available at* http://www.supertalk.fm/archives/audio-archives/gallo-archives/?recording_id=16293, (beginning at 42:15 mark).

PD.45176771.1

54. Under its Board, the JMAA remained on solid ground financially. At the end of the 2015 fiscal year, JMAA's revenues rose from $3,700,000 to $4,200,000.[15]

55. Consistent with federal regulations, the JMAA also has established a Disadvantaged Business Enterprise program, which affords a direct benefit to minority-owned businesses in the City of Jackson and surrounding municipalities and counties. In March 2016, the JMAA was awarded the Champion of Diversity Award at the 2016 Our-Mississippi Magazine Honors Gala in recognition for the JMAA's success in achieving diversity among the airport industry workforce.[16]

56. In April 2016, the Airports Council International-North America ("ACI-NA"), citing the JMAA's Disadvantaged Business Enterprise program, recognized the JMAA as a leader in encouraging, supporting, and mentoring small and disadvantage businesses throughout the airport industry's workforce and awarded the JMAA its Inclusion Champion Award.[17]

57. Subsequent to the JMAA Board's decision to select Newman as the JMAA's Chief Executive Officer, the American Association of Airport Executives ("AAAE") elected Newman to serve as the AAAE's Chair for the 2016-2017 year.[18]

---

[15] *See* JMAA Press Release, *Jackson Municipal Airport Authority Receives Clean Audit for FY 2015*, March 29, 2016, *available at* http://jmaa.com/jackson-municipal-airport-authority-receives-clean-audit-for-fy-2015/.

[16] *See Jackson Airport Honored for Diversity Efforts*, Aviation News Today, Apr. 8, 2016, *available at* http://www.aviationnews.net/index.html?do=headline&news_id=253713.

[17] *See* ACI-NA Press Release, *ACI-NA Honors Business Diversity with the 2016 Inclusion Champion Awards*, April 5, 2016, *available at* http://www.aci-na.org/newsroom/press-releases/aci-na-honors-business-diversity-2016-inclusion-champion-awards.

[18] *See* American Association of Airport Executives website, "About AAAE" section, *available at* http://www.aaae.org/aaae/AAAEMBR/About_AAAE/AAAEMemberResponsive/About_AAAE/About_AAAE.aspx?hkey=17fa23bc-bfe6-4589-9c8b-c362c1e7c303.

The AAAE consists of nearly 5,000 individual members, including some 3,000 airport professionals representing nearly 850 different airports, from large hubs to general aviation facilities.[19] The AAAE represents the aviation industry in Washington D.C., delivers a wide range of industry services and professional development opportunities, and provides a highly respected accreditation program.[20] Newman was elected to Chair this organization at the AAAE's Annual Conference in May 2016.[21]

58.     The JMAA, through its own revenue from landing fees and the like, supplemented by federal grants available to all airports throughout the United States, has sustained Jackson-Medgar Evers International.

59.     The JMAA remains a financially sound entity which has served the citizens of the State of Mississippi. The JMMA is poised for further development of the lands surrounding Jackson-Medgar Evers International, to the benefit of all.

---

[19] *See* American Association of Airport Executives website, "History" section, *available at* http://www.aaae.org/aaae/AAAEMBR/About_AAAE/History/AAAEMemberResponsive/About_AAAE/ History.aspx?hkey=9d0f3525-8a20-417e-b0be-66c7f68a5fab.

[20] *See* American Association of Airport Executives website, "About AAAE" section, *available at* http://www.aaae.org/aaae/AAAEMBR/About_AAAE/AAAEMemberResponsive/About_AAAE/About _AAAE.aspx?hkey=17fa23bc-bfe6-4589-9c8b-c362c1e7c303.

[21] *See id.*

F. <u>Senate Bill 2162</u>[22]

60.     Against this backdrop and under the guise of taking a "regionalized" approach to Jackson-Medgar Evers International, Senate Bill 2162 was introduced, principally authored by Rankin County Senator Josh Harkins.[23]

61.     As its Title indicated, Senate Bill 2162 amends the Airport Authorities Law in three ways. First, the Bill adds § 61-3-6, which purports to abolish the JMAA and create a special, new airport authority to replace the JMAA. The new authority is to consist of members largely appointed by the Governor, including nominees from the City of Jackson and from Madison and Rankin Counties. Senate Bill 2162 amends § 61-3-3, which relates to definitions of terms used in the Airport Authorities Law. Senate Bill 2162 also amends § 61-3-5, the section which authorizes any municipality in the State of Mississippi to create an airport authority, to single out and specifically prevent the City of Jackson from creating an airport authority to manage and operate Jackson-Medgar Evers International.[24]

62.     As introduced, Senate Bill 2162 established a staggered Board with one Commissioner appointed by the City's Mayor having an initial term of a mere one (1) year, and one Commissioner nominated by the City Council of the City of Jackson but appointed by the Governor and having an initial term of only two (2) years.[25]

---

[22] In addition to Senate Bill 2162, the Mississippi State House of Representatives proposed House Bill 721, which sought to achieve the same result as Senate Bill 2162, but House Bill 721 did not survive the initial committee review stage.

[23] Senate Bill 2162, *available at* http://billstatus.ls.state.ms.us/documents/2016/pdf/SB/2100-2199/SB2162IN.pdf by selecting the "As Introduced" link.

[24] *See id.*

[25] *See id.*, "As Introduced" link.

Meanwhile, the Commissioner nominated by Madison County and selected by the Governor had a three (3) year initial term, the Commissioner nominated by Rankin County and selected by the Governor had a four (4) year initial term, the two Commissioners appointed by the Governor had initial terms of five (5) years, and the Commissioner appointed by the Lieutenant Governor had an initial five (5) year term.

63.     The Mississippi State Senate ("the Senate") passed Senate Bill 2162 on March 3, 2016.[26]  The vote was along party and racial lines.[27]

64.     On March 7, 2016, Senate Bill 2162 was sent to the Mississippi House of Representatives ("the House").[28]

65.     The House amended Senate Bill 2126 to modify the requirements for appointing the nine commissioners of the new board created by Senate Bill 2162.[29] Specifically, the House amendment requires that one commissioner be appointed by each of the following: the Mayor of the City of Jackson, the City of Jackson City Council, the Board of Supervisors of Madison County, the Board of Supervisors of Rankin County, and the Lieutenant Governor of the State of Mississippi.  The House amendment also entitles the Governor of the State of Mississippi to appoint two

---

[26] *See id.*, "History of Actions" section, line 5 (select the "Vote" link).

[27] *See id.*  Senate Bill 2162 passed the Senate on a vote of 29 to 18, with four Senators absent and not voting.  At the time Senate Bill 2162 was brought to vote, the Mississippi State Senate consisted of 52 Senators.  Of the 52 Senators, only 13 were African American.  Party lines in the Senate were drawn at 32 Republicans and 20 Democrats.  All 29 votes were cast by Republican Senators while all 18 votes were cast by Democrats, including all 13 African American Senators currently sitting in the Mississippi State Senate.

[28] *See id.*, "History of Actions" section, line 8.

[29] *See id.*, "Amendments" section, "Committee Amendment No. 1 ***Adopted***," *available at* http://billstatus.ls.state.ms.us/documents/2016/pdf/ham/SB2162_H_Cmte_Amend_01.pdf.

24

commissioners from the City of Jackson, and requires that two gubernatorial appointees, the Adjutant General of the Mississippi National Guard[30] and the Executive Director of the Mississippi Development Authority,[31] serve as commissioners on the new board. In other words, seven of the nine Commissioners are appointed by persons who were not elected by the voters of the City of Jackson, and a five-person majority of Commissioners are appointed by the State of Mississippi through the Governor and Lieutenant Governor.

66.     The House passed its amended version of Senate Bill 2162 on March 24, 2016.[32] Once again, the vote was along party and racial lines.[33]

67.     Senate Bill 2162 was returned to the Senate for concurrence on March 30, 2016.[34] The Senate concurred, and the Governor signed Senate Bill 2162 into law on May 4, 2016.[35]

---

[30] Appointed by the Governor of the State of Mississippi. *See* Mississippi National Guard website, *available at* http://ms.ng.mil/leadership/Pages/The-Adjutant-General-of-Mississippi.aspx.

[31] Appointed by the Governor of the State of Mississippi. *See* Mississippi Development Authority website, *available at* https://www.mississippi.org/home-page/about-mda/executive-team/glenn-mccullough/.

[32] *See* Senate Bill 2162, "History of Actions" section, line 16 (select the "Vote" link), *available at* http://billstatus.ls.state.ms.us/2016/pdf/history/SB/SB2162.xml.

[33] *See id.* Senate Bill 2162 passed the House on a vote of 74 to 46, with one Representative absent and not voting. At the time Senate Bill 2162 was brought to vote, the Mississippi State House of Representatives consisted of 121 members and one vacancy. Of the 121 members, 37 are African American. Party lines in the House were drawn at 47 Democrats and 74 Republicans. A total of 73 of the 74 votes in favor of Senate Bill 2162 were cast by Republican Representatives while all 46 votes opposing Senate Bill 2162 were cast by Democrats, including all 37 African American Representatives currently sitting in the House.

[34] *See id.*, "History of Actions" section, line 19.

[35] *Bryant Signs "Jackson Airport Takeover" Bill*, Clarion Ledger, May 5, 2016, *available at* http://www.clarionledger.com/story/news/local/2016/05/04/governor-signs-airport-takeoverbill/839455 96/.

PD.45176771.1

## III. CAUSES OF ACTION

### A.  CLAIMS OF THE CITY OF JACKSON PLAINTIFFS

### COUNT I
### SENATE BILL 2162 VIOLATES THE SUPREMACY
### CLAUSE OF THE UNITED STATES CONSTITUTION

68.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

69.    The Supremacy Clause to the United States Constitution reads as follows: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."  U.S. Const. Art. VI.

70.    Pursuant to Title 49 of the United States Code and Title 14 of the Code of Federal Regulations, the FAA is constituted as an agency of the United States empowered to certify and license airports in the United States.  In pertinent part, the FAA has the exclusive power to grant airport operating certificates authorizing persons and entities to own and operate civilian commercial airports.  *See* 14 C.F.R. 139.101.

71.    Without a valid airport operating certificate, no entity may operate a commercial airport in the United States.  *See id.*

72.    As co-sponsor with the JMAA, the City is the holder of a valid Airport Operating Certificate issued by the FAA.  This Airport Operating Certificate is not transferrable.

PD.45176771.1

73. The FAA also has the power, pursuant to 49 U.S.C. §§ 47101 through 47142, to make financial airport grants to an airport "sponsor," as that term is defined by applicable federal law.

74. These grants may be used for various FAA-approved airport improvement projects, including those for runway construction and other expansions under the Airport Improvement Program. *See* 49 U.S.C. § 47107. An airport's owners and sponsors must first provide the FAA certain undertakings, commitments, and assurances as may be deemed necessary and appropriate in the judgment of the FAA ("Sponsor's Assurances").

75. Sponsor's Assurances are not transferrable without prior FAA approval. Since the JMAA's inception and the FAA's issuance of an Airport Operating Certificate to JMAA, the City has functioned as the co-sponsor on all grants, bonds, and other financial undertakings relative to Jackson-Medgar Evers International.

76. The City of Jackson has provided Sponsor's Assurances as required by the FAA in connection with the acceptance and expenditure of numerous FAA grants for airport improvements.

77. Under federal law, the City and the JMAA are the only entities that have the authority to manage and operate Jackson-Medgar Evers International.

78. No provision of Title 49 of the United States Code or Title 14 of the Code of Federal Regulations delegates to the States the powers granted to and duties imposed upon the FAA. Further, the FAA has not delegated to the State of Mississippi the authority to issue, revoke, renew, amend, transfer, or otherwise

27

modify in any way the FAA-issued Airport Operating Certificate for Jackson-Medgar Evers International and similarly has not established, approved, or modified the terms and conditions of any Sponsor's Assurances relative to Jackson-Medgar Evers International.

79. The authority to govern airport safety and operations and to issue an airport operating certificate rests exclusively with the FAA, and while Senate Bill 2162 purports to acknowledge the authority of the FAA, there is a total disregard of the fact that the City is the owner of all airport properties and the co-sponsor with the JMAA relative to the Airport Operating Certificate. Such an attempt to divest the City of its legal rights assured under federal law is in direct conflict with the FAA's authority to issue the Airport Operating Certificate for Jackson-Medgar Evers International.

80. Senate Bill 2162 further contravenes federal law by improperly transferring the Sponsor's Assurances to the new authority supposedly created by Senate Bill 2162. This transfer would force the City to breach the obligations imposed upon the City by its Sponsor's Assurances, which obligations are imposed through the force of federal law.

81. Moreover, Article 3, Section 7 of Mississippi's Constitution provides that no "law [shall] be passed in derogation of the paramount allegiance of the citizens of [the State of Mississippi] to the government of the United States." Miss. Const. Art. 3, § 7. As alleged above, Senate Bill 2162 contradicts and subverts the authority granted to the FAA by the Congress of the United States and therefore violates not

28

only the Supremacy Clause of the Constitution of the United States but also Article 3, Sections 7 of Mississippi's Constitution.

82.     Senate Bill 2162 has no "binding force" on the City and does not provide for available remedies to the City as a co-sponsor and owner of the land upon which the airport was built.

COUNT II

### SENATE BILL 2162 VIOLATES ARTICLE 3 SECTIONS 6 AND 7 OF MISSISSIPPI'S CONSTITUTION (PARAMOUNT ALLEGIANCE)

83.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

84.     Article 3, Section 6 of the Mississippi Constitution contains the caveat that no change in government or the regulation of internal government may be "repugnant to the constitution of the United States." Article 3, Section 7 continues and provides, "[n]or shall any law be passed in derogation of the paramount allegiance of the citizens of this state to the government of the United States." Miss. Const. Art. 3, §§ 6, 7.

85.     As previously outlined, the City, as record owner of the land upon which Jackson-Medgar Evers International sits and as co-sponsor and partner with the JMAA, pursuant to various federal laws and statutes, is subject to breach or violation as a result of the enactment of Senate Bill 2162.  The bill contravenes federal law and, as such, violates the Supremacy Clause of the United States Constitution and

PD.45176771.1

the related provisions of Mississippi's Constitution. For these reasons, Senate Bill 2162 should be enjoined and declared unconstitutional.

<u>COUNT III</u>

### SENATE BILL 2162 VIOLATES ARTICLE 3 SECTION 14 OF MISSISSIPPI'S CONSTITUTION (DUE PROCESS)

86. Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

87. Section 61-3-7 of the Mississippi Code provides that a municipality such as the City of Jackson may voluntarily create, in conjunction with other municipalities, a regional airport. This entity may be incorporated by the Secretary of State of the State of Mississippi and authorized to exercise it functions as an approved authority. Under this scenario, the only participation by the Governor would be in the event there was an even number of Commissioners. Only in that instance, does the Governor have the authority to appoint a Commissioner.

88. Section 61-3-7 prohibits creation of a regional airport authority unless a public hearing has been provided to communities affected by the proposed agreement. Section 61-3-7(f) provides that notice shall be given at least ten days before the hearing in a newspaper published in the municipality or other affected entity that anticipates participation in the regional authority.

89. This procedure was not followed prior the passage of Senate Bill 2162 and no opportunity to be heard was afforded to the City of Jackson Plaintiffs or the citizens of the City as a whole. The City neither agrees nor consents to the hostile

30

takeover of the management and operation of Jackson-Medgar Evers International by the State of Mississippi and has been denied its constitutional right to be heard on the issues.

90.     Likewise, the actions anticipated by the implementation of Senate Bill 2162 are arbitrary and capricious and single out the City of Jackson for no legitimate purpose.  The JMAA has been authorized by law for over 60 years to manage and operate Jackson-Medgar Evers International.  The City of Jackson Plaintiffs have an expectation that its municipal purposes at Jackson-Medgar Evers International will be carried out consistent with the property interests of the City in the land owned by Jackson.  To deprive the City of its right to be heard regarding its interest is a violation of not only the United States Constitution but also the Mississippi's Constitution.  As such, implementation of Senate Bill 2162 should be permanently enjoined and declared an unconstitutional statute.

<u>COUNT IV</u>

SENATE BILL 2162 VIOLATES ARTICLE I, § 10 OF THE CONSTITUTION OF THE UNITED STATES, AND ARTICLE III, § 16 OF MISSISSIPPI'S CONSTITUTION (IMPAIRMENT OF CONTRACT OBLIGATIONS)

91.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

92.     Together, the City and the JMAA hold an Airport Operating Certificate issued by the FAA for the operation of Jackson-Medgar Evers International. The City is the owner of the airport, and the JMAA is the operator. In its role as operator, the JMAA has secured a vast amount of federal aid to undertake eligible airport

development on airport lands owned by the City. However, because the City is the title deed holder, the City is an integral and necessary party to the JMAA. The City's voluntary agreement to serve as co-sponsor with the JMAA on eligible airport development projects funded, in whole or in part, with federal aid, was critical to the JMAA's application for such federal aid.

93.    To apply for and accept federal aid, the City and the JMAA, as co-sponsors, had to agree to certain obligations or grant assurances. Such assurances included, but were not limited to, the requirement for either the City or the JMAA to be compliant with 14 C.F.R §152.103(a)(4)(ii).

94.    Specifically, 14 C.F.R §152.103(a)(4) sets forth the following requirements:

> The sponsor, in the case of a single sponsor, or one or more of the cosponsors must have, or be able to obtain---
>
> (i) Funds to pay all estimated costs of the project that are not to be born by the United States; and
>
> (ii) Satisfactory property interests in the lands to be developed or used as part of, or in connection with, the airport as it will be after the project is completed.

14 C.F.R. § 152.103(a)(4)(i) and (ii).

95.    Relating to 14 C.F.R §152.103(a)(4)(ii), the City as co-sponsor to the aforementioned federal aid agreements, provided the property interests required by 14 C.F.R §151.25(c)(1).

32

96.     Specifically, 14 C.F.R §151.25(c)(1) sets forth, in pertinent part, the following requirement related to property interests a sponsor must have when applying for federal airport aid for an eligible project.

> Title free and clear of any reversionary interest, lien, easement, lease, or other encumbrance that, in the opinion of the [FAA], would create an undue risk that it might deprive the sponsor of possession or control, interfere with its use for public airport purposes, or make it impossible for the sponsor to carry out the agreements and covenants in the application [for Federal aid].

14 C.F.R §151.25(c)(1).

97.     Because the City of Jackson owns the land upon which the airport sits, and the several properties that are subject to current federal airport aid grant agreements, the City possesses the necessary property interests in these lands and, consequently, is a co-sponsor to such agreements.

98.     Senate Bill 2162 attempts to create an authority that will unilaterally assume all obligations previously covenanted under the JMAA's current federal aid agreements without due regard for the City of Jackson as property owner and co-sponsor to these agreements.

99.     The City executed these agreements with the JMAA as its duly adopted airport authority in furtherance of the City's discretion to create a municipal airport authority and appoint the commissioners thereof, commissioners that are required to be qualified electors and residents of the City of Jackson, Mississippi. The City is not so postured to exercise the same or even similar discretion, with the new authority created by Senate Bill 2162. This bill, as adopted, substantially impairs Jackson's

33

obligations, as co-sponsor, to the current aforementioned federal aid agreements between the FAA, the JMAA, and the City. This bill unlawfully attempts to unilaterally force the City to serve as co-sponsor with the new authority on current federal aid agreements.

B.     CLAIMS OF THE JMAA PLAINTIFFS AND THE CITY OF JACKSON

COUNT V

SENATE BILL 2162 IS SPECIAL LEGISLATION IN VIOLATION OF ARTICLE 4, SECTION 87 OF MISSISSIPPI'S CONSTITUTION

100.     Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

101.     Article 4, § 87 of Mississippi's Constitution provides:

No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this State; nor shall the operation of any general law be suspended by the Legislature for the benefit of any individual or private corporation or association, **and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted**.

Miss. Const. Art. 4, § 87 (emphasis added).

102.     Senate Bill 2162 has the legal and practical effect of forcing upon the City of Jackson, the JMAA, the JMAA Board, and the citizens of the City of Jackson, a transfer of control over Jackson-Medgar Evers International from the City of Jackson to a new authority controlled by the Governor. No other municipal airport or airport authority is treated similarly. No other municipality is prevented from

34

creating its own airport authority to manage and operate an airport sitting within its territory.

103. A general law already exists which not only "can be made applicable" but is applicable to accomplish the ostensible goal of "taking a regionalized approach," through agreement of the interested local governments in which those local entities would remain in control. *See* Miss. Code § 61-3-7. A forced transfer of a specific airport to state control, enabled only by a temporal, passing legislative supermajority—which just happens to be in place today—is not one of the means authorized.

104. Senate Bill 2162 thus constitutes an impermissible special law, which is unconstitutional under Article 4, § 87.

105. Consequently, Plaintiffs respectfully request a Declaration that Senate Bill 2162 amounts to unconstitutional special legislation under the Mississippi State Constitution.

<u>COUNT VI</u>

THE JMAA AND THE CITY OF JACKSON ARE ENTITLED
TO INJUNCTIVE RELIEF TO PREVENT IRREPARABLE INJURY

106. Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

107. A preliminary injunction is proper under federal law where a plaintiff demonstrates a substantial likelihood of success on the merits, a substantial threat of irreparable harm if the injunction is not granted, that the threatened injury

35

outweighs any harm that the injunction might cause to the defendant, and that the injunction will not disserve the public interest.

108.    Because Mississippi Code § 61-3-6 is rendered unconstitutional by operation of both Article 4, § 87 of Mississippi's Constitution and the equal protection clauses of both the Constitution of the United States and Mississippi's Constitution, there is a substantial likelihood the JMAA will prevail on the merits.

109.    Because Mississippi Code § 61-3-6 recognizes the need for FAA approval, any steps toward the implementation of a new board purporting to have authority to manage Jackson-Medgar Evers International should be enjoined through final resolution of this case, or at a minimum, until the FAA determines whether and under what circumstances it would accept the new commission as the sponsor for Jackson-Medgar Evers International in the face of the constitutional challenges to the statute purporting to create that new board.  Indeed, there exist grave doubts that the FAA could, as a matter of federal aviation law, properly approve a new airport authority as the airport operator or co-sponsor, with the City of Jackson, because of the federal obligations of Jackson-Medgar Evers International.

110.    Injunctive relief is necessary to prevent irreparable harm to the JMAA because allowing the Governor, the Lieutenant Governor, Madison County, and Rankin County to appoint members to a new airport authority prior to any approval by the FAA would cast a pale of uncertainly over and irreparably harm the current business opportunities and good will of the JMAA and would undermine its efforts to continue managing and operating Jackson-Medgar Evers International during the

36

pendency of this case. Further, injunctive relief is necessary to prevent the City of Jackson from being compelled to participate in the new authority and board with Defendants and their appointees while this lawsuit—and the fate of that new authority—remain pending.

111. Any potential harm to the Governor, the Lieutenant Governor, Madison County, or Rankin County—of which there is none since § 61-3-6 is unconstitutional—is outweighed by the serious and direct threat of irreparable harm to JMAA's management and operation of Jackson-Medgar Evers International, which harm cannot be remedied through monetary damages.

112. Permitting the JMAA to continue operating and managing Jackson-Medgar Evers International unimpeded by the intended formation of a new, competing airport authority purporting to manage and operate Jackson-Medgar Evers International is consistent with and furthers the public interest, which all concerned have consistently acknowledged as being the unhindered, efficient operation of Jackson-Medgar Evers International.

113. For these reasons, the JMAA respectfully requests that this Court enter a preliminary injunction against the Defendants, and that this injunction be made permanent upon this Court finding that Mississippi Code § 61-3-6 is unconstitutional under either the Constitution of the United States or Mississippi's Constitution.

PD.45176771.1

C.    INDIVIDUAL PLAINTIFFS' CLAIMS

## COUNT VII

**SENATE BILL 2162 DENIES THE CITY OF JACKSON, THE CITIZENS OF THE CITY OF JACKSON AND THE PLAINTIFFS HEREIN THE EQUAL PROTECTION OF LAW AS MANDATED BY § 14 OF MISSISSIPPI'S CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**

114.    Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

115.    Senate Bill 2162 abridges the privileges and immunities of the citizens of the City of Jackson by depriving the City's duly elected governing officials of equal protection of the laws.

116.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution directs the States to treat "all persons similarly situated" alike.[36]

117.    While the State of Mississippi has the authority—and has exercised that authority—to permit municipalities to create airport authorities to manage and operate airports within those municipalities, the State of Mississippi cannot exercise that authority in a way that is inconsistent with the Equal Protection Clause.

---

[36] This claim is being brought by individual plaintiffs named herein, on behalf of themselves and all others similarly situated, to vindicate the right to equal protection of the citizens and taxpayers of the City of Jackson pursuant to both the Fourteenth Amendment to the United States Constitution and the Constitution of the State of Mississippi, Article III, § 14. *See, e.g.*, Jeffrey Jackson et al., 3 Encyclopedia Miss. Law § 19:49 (2d ed. 2016) ("Mississippi finds an equal protection component in its Due Process Clause, Miss. Const. Art. III, § 14 . . . .").

38

118.   The 2010 Census counted 173,514 people within the City, of which approximately 79% were African American and 18% were Caucasian.[37] However, the City, which owns Jackson-Medgar Evers International, can appoint only two of the nine commissioners on the board purportedly created by Senate Bill 2162.[38]

119.   Conversely, the 2010 Census tallied 2,967,297 people in the State of Mississippi, of which approximately 59% were Caucasian while 37% were African American.[39] Senate Bill 2162 allows the Governor, elected by the state at large, to appoint four of the nine commissioners. The initial term for two of these appointments is five years; the other two appointees, the Adjutant General of the Mississippi National Guard and the Executive Director of the Mississippi Development Authority, both of whom are appointed by the Governor, are standing appointments which do not expire.  Senate Bill 2162 also provides that the Lieutenant Governor of the State of Mississippi, also elected by the state at large, appoints one commissioner with an initial term of five years.

120.   While 79% of the population of the City of Jackson is African American, the populations of each of the two surrounding areas which stand to gain majority control of Jackson-Medgar Evers International are majority white according to the

---

[37] *See* 2010 Census of Population and Housing – Mississippi, available at https://www2.census.gov/library/publications/decennial/2010/cph-2/cph-2-26.pdf.

[38] Of course, this assumes that the City will violate City Ordinance No. 2-372 and embrace the illegal appointment scheme of Senate Bill 2162.

[39] *See* 2010 Census of Population and Housing – Mississippi, *available at* https://www.census.gov/prod/cen2010/cph-1-26.pdf.

PD.45176771.1

2010 census: Madison County (57% white) and Rankin County (77% white).[40] Through its Board of Supervisors, Madison County appoints one commissioner with an initial term of three years. Through its Board of Supervisors, Rankin County appoints one commissioner with an initial term of four years.

121. The selection scheme that is mandated by Senate Bill 2162 thus deprives the Individual Plaintiffs and the citizens of the City of Jackson of effective and meaningful participation in the affairs of Jackson-Medgar Evers International.

122. Although the City owns Jackson-Medgar Evers International and the property upon which it is situated, the City's governing officials have less opportunity and ability as compared to the other appointing officials to exercise discretion in matters of appointing an airport authority to operate Jackson-Medgar Evers International and appointing Commissioners of their choice.

123. Plaintiffs, in their individual capacities and as citizens and taxpayers of the City of Jackson and the State of Mississippi, further allege that Senate Bill 2162 was based, either in whole or in part, on discriminatory purposes.

124. In 2013, the City's late Mayor Chokwe Lumumba recommended, and the City Council approved, the filling of several positions on the JMAA Board. The resulting composition of the JMAA Board was 100% African American.

125. Consistent with Mississippi Code Section 21-8-23(5) and the City's Code of Ordinance 2-372, the nominees were selected from different Wards within the City,

---

[40] *See* 2010 Census of Population and Housing – Mississippi, *available at* https://www. census.gov/prod/cen2010/cph-1-26.pdf.

PD.45176771.1

all with a goal of fair representation from the citizenry of the City that owns Jackson-Medgar Evers International. Those appointments were as follows:

a. Reverend Jeffery Stallworth, Ward 3 (African American);

b. Plaintiff Reverend James Henley, Jr., Ward 2 (African American);

c. Plaintiff LaWanda D. Harris, Ward 4 (African American);

d. Plaintiff Dr. Vernon Hartly, Sr., Ward 5 (African American)

e. Plaintiff Evelyn Reed, Ward 1 (African American).

Subsequently, in September 2014, Dr. Rosie L.T. Pridgen, Chair, Ward 7 (African American) was appointed by Mayor Tony Yarber to replace Reverend Stallworth, whose term had expired. Current Mayor Chokwe Antar Lumumba has continued to appoint a majority African-American membership to the JMAA Board, including Plaintiffs Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton. Thus, the JMAA Board is managed by representatives appointed by the City's governing officials in a manner which maximizes the representation from the entire City electorate. Senate Bill 2162 simply abolishes this manner and method of selection without any rational justification or basis.

126. At the time Senate Bill 2162 was enacted, Jackson-Medgar Evers International was the only airport in the State of Mississippi managed and operated by a Board comprised solely of African Americans, and is owned by the City of Jackson, a municipality consisting of an overwhelming majority of African Americans.

PD.45176771.1

127.   The Individual Plaintiffs, as citizens and taxpayers of the City of Jackson and the State of Mississippi, are being subjected to state power that is circumventing their rights as citizens of the City and of the State of Mississippi and invidiously hindering the City's ability to exercise discretion through their elected officials in matters related to the management and operations of Jackson-Medgar Evers International.

128.   Up to and throughout the legislative debate underlying Senate Bill 2162, Jackson-Medgar Evers International has been carefully guided along a pattern of financial sustainability and prosperity by the JMAA Board, which has been created in accordance with Mississippi Code § 61-3-5 and its commissioners selected solely by the City of Jackson and its duly elected governing officials.

129.   The enactment of Senate Bill 2162 exploits the power of a passing legislative supermajority in an isolated context which results in the imposition of an unconstitutional condition.   The end result of Senate Bill 2162 is unlawful and violates even the most basic sense of equal protection.

130.   Under the Airport Authorities Law, municipalities have discretion to create a municipal airport authority to manage, control, and operate any airports owned by those municipalities. Prior to the enactment of Senate Bill 2162, the City's citizens and taxpayers possessed this discretion through their elected officials, just as the citizens and taxpayers of any other municipality in the State of Mississippi. Senate Bill 2162, however, completely strips the City of this discretion while leaving intact the discretion of every other municipality in the State of Mississippi.

PD.45176771.1

131.   Municipalities exercise this discretion through their governing officials. The City's governing officials are the Mayor and City Council.  The Mayor is elected at large by the qualified electors residing in the City while the Councilpersons are elected by qualified electors that reside within each Councilperson's respective ward.

132.   The qualified electors residing in the City elect the City's governing officials so that those officials can exercise the powers available under Mississippi law.  Prior to the enactment of Senate Bill 2162, such powers included the discretion to create a municipal airport authority to manage, control, and operate its airports.

133.   Senate Bill 2162 does not require that the creation of the new airport authority be approved by the City's citizens and taxpayers through their governing officials.  Senate Bill 2162 does not require the board members of the new airport authority to be appointed by the City's citizens and taxpayers through their governing officials. Senate Bill 2162 does not require any of the new airport authority's board members to be selected from among the City's seven wards. Senate Bill 2162 does not impose upon the new airport authority's board members the qualifications imposed on other board members appointed to municipal airport authorities operating throughout the State of Mississippi. The City simply has been singled out by Senate Bill 2162.

134.   To date, over thirty Mississippi municipalities own airports. With the passage of Senate Bill 2162, each of these municipalities—except the City of Jackson—can exercise discretion over their respective airports' governance, including the discretion to create a municipal airport authority and to appoint the members of

43

the board of that authority. A majority of these municipalities are governed by officials that are majority Caucasian, if not totally. A majority of these municipalities have a populace that is not comprised of a majority of minorities, but are Caucasian majority. Conversely, the City's governing officials, and the qualified electors residing in the City, are majority African American and other minorities. Furthermore, the City created the JMAA, which currently is directed by a Board that is comprised of a majority of African Americans.

135. Senate Bill 2162 unlawfully limits the City's governing officials' discretion to own a municipal airport, create a municipal airport authority, and to appoint the board of commissioners of that authority in a manner similar to all other Mississippi municipalities.

136. Currently, in every practical sense, the City's municipal airport authority is operating successfully. Such success severely undermines any need for the Mississippi State Legislature and the Governor to deny the City the right to own an airport, create a municipal authority, and appoint the board of commissioners of that authority, and to deny the City the right to exercise any other powers conferred by Mississippi's Airport Authorities Law.

137. The City of Jackson, a majority-minority municipality, owns Jackson-Medgar Evers International, and the City's elected officials have selected majority African Americans to serve on the Board which guides the JMAA in its management and operation of Jackson-Medgar Evers International. Yet, it is the very management and operation of Jackson-Medgar Evers International which Senate Bill

44

2162 seeks to hijack. By failing to afford the City's governing officials discretion to create and choose a new airport authority to operate Jackson-Medgar Evers International, Senate Bill 2162 has the practical effect of foreclosing the City's electorate from exercising their right to elect governing officials with unencumbered discretion to create a municipal airport authority and appoint commissioners to manage, control and operate the City's airport.

138. The totality of circumstances demonstrates the City and its citizens and taxpayers have been invidiously excluded because of race, in whole or in part, from any control of its Airport by Senate Bill 2162.

139. At bottom, the "Airport Takeover Bill" singles out and excludes the City and its governing officials from exercising the right—which remains available to every other municipality in the State of Mississippi—to determine how the City's airport will be managed and operated. As a consequence, Senate Bill 2162 violates the Equal Protection Clause of the Fourteenth Amendment and is unconstitutional.

140. The Plaintiff Commissioners of the Board of the JMAA will each inevitably suffer concrete, particularized actual injury if Senate Bill 2162 is allowed to take effect because Senate Bill 2162 abolishes the JMAA and thereby terminates their employment as Commissioners on the basis of race.

141. The Commissioners wield substantial power over the Airport, which serves the State's capital, and as a result gain both stature in their community and valuable experience in public administration. Commissioners of the Board of the JMAA oversee the finances and operations of Jackson-Medgar Evers International

45

Airport, one of the State's principal airports. They define the Airport's strategic goals and appoint the Airport's Chief Executive Officer, who is responsible for implementing the Board's plans.

142.    Each of the Commissioners of the Board of the JMAA receives a per diem for the service to the JMAA. Each of the Commissioners of the JMAA is also reimbursed for reasonable travel expenses related to the business of the Airport. This has allowed the Commissioners to attend professional conferences sponsored by Airports Council International–North America and the American Association of Airport Executives, the two leading airport trade associations, where they have been able to gain specialized training and education in the airport administration.

143.    The Commissioners of the Board of the JMAA are treated as public employees for many purposes under Mississippi state law, including immunity (Mississippi Code § 11-461(f) ("whether with or without compensation")); lobbying (Mississippi Code § 5-8-3(p) (whether compensated or not")); and ethics (Mississippi Code § 25-4-3(i) (applicable if per diems paid or expenses reimbursed)).

144.    All of these benefits of serving as a Commissioner of the Board of the JMAA will be lost by each of the Plaintiff Commissioners unless this Court enjoins the Defendants from putting Senate Bill 2162 into effect.

## COUNT VIII

### SENATE BILL 2162 VIOLATES THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE (PROCEDURAL AND SUBSTANTIVE)

145. Plaintiffs incorporate by reference and reallege each and every allegation contained in the preceding paragraphs of the Complaint.

146. On its face, Senate Bill 2162 deprives the City of Jackson of its legally owned property upon which Jackson-Medgar Evers International is situated.

147. When government action is arbitrary, does not have a legitimate purpose, and is not rationally related to the general welfare of its citizens, the government action violates substantive due process.

148. The City purchased the property upon which Jackson-Medgar Evers International is situated over 60 years ago. Consistent with Mississippi law, an airport authority was created. For nearly 60 years, the affairs of Jackson-Medgar Evers International have been effectively administered by the City and the JMAA. The airport remains self-sustaining and profitable.

149. Together with the JMAA, the City has been an integral part of the management and operation of Jackson-Medgar Evers International. To date, the City also serves as co-sponsor with the JMAA on nearly $7,000,000.00 of grant funds awarded by the United States government.

150. Mississippi Code § 21-17-1 provides, in pertinent part, the following:

(1) Every municipality of this state shall be a municipal corporation and shall have power to sue and be sued; to purchase and hold real estate, either within or without the corporate limits, for all proper municipal purposes . . . ; to sell or dispose of . . . real property owned by it consistent

47

with Section 17-25-25; . . . and to sell and convey any real property owned by it, and make such order respecting the same as may be deemed conducive to the best interest of the municipality, and exercise jurisdiction over the same.

(2)(a) In case any of the real property belonging to a municipality shall cease to be used for municipal purposes, the governing authority of the municipality may sell, convey or lease the same on such terms as the municipal authority may elect. . . . However, whenever the governing authority of the municipality shall find and determine, by resolution duly and lawfully adopted and spread upon its minutes (i) that any municipally owned real property is no longer needed for municipal or related purposes and is not to be used in the operation of the municipality, (ii) that the sale of such property in the manner otherwise provided by law is not necessary or desirable for the financial welfare of the municipality, and (iii) that the use of such property for the purpose for which it is to be sold, conveyed or leased will promote and foster the development and improvement of the community in which it is located and the civic, social, educational, cultural, moral, economic or industrial welfare thereof, the governing authority of the municipality shall be authorized and empowered, in its discretion, to sell, convey or lease same for any of the purposes set forth herein without having to advertise for and accept competitive bids.

Miss. Code § 21-17-1.

151.  The City acquired the property upon which Jackson-Medgar Evers International is situated. In doing so, the citizens of the City authorized the issuance of a $3,000,000.00 bond issue backed by the full faith and credit of those citizens.  The governing officials, by resolution, noted upon the City's minutes that an election was held approving the purchase of the property.  During the same meeting, the JMAA was established pursuant to state law and has functioned as a partner, co-sponsor, and tenant of the City to carry out municipal purposes benefitting the City.

152.  Plaintiffs the City of Jackson, and Mayor Lumumba and the City of Jackson's City Council, in their official capacities, hold a property interest in the

48

property on which Jackson-Medgar Evers International sits, and the enactment of Senate Bill 2162 purposely discriminates against the City and its governing officials to deprive them of this property interest and their ability to carry out the purposes enumerated in Mississippi Code § 21-17-3. There is no rational basis for the actions of the State of Mississippi in passing or enacting Senate Bill 2162. Their acts are arbitrary and capricious.

153. In addition, the real property that is titled to the City of Jackson has been held for over 60 years for municipal purposes consistent with the will of the governing officials of the City and for the benefit of the citizens of the City. Senate Bill 2162 seeks to "take," "convert," or otherwise "strip" the City of its property rights and the municipal purposes that are served under Mississippi Code §§ 21-17-3 and 21-17-5. Such arbitrary and capricious actions by the State of Mississippi deprive the City of its property rights without due process or an opportunity to be heard.

## IV. PRAYER FOR RELIEF

Plaintiffs Mayor Chokwe Antar Lumumba, on behalf of the Citizens of the City of Jackson, Mississippi, Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, Virgi Lindsay, the Jackson Municipal Airport Authority, the Board of Commissioners of the Jackson Municipal Airport Authority, Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton, each in his or her official and individual capacity, and the City of Jackson Class Plaintiffs, on behalf of themselves and all members of the City of Jackson Class as defined above, respectfully request:

(a)  a declaration that this action is maintainable as a class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure;

(b)  a declaratory judgment in favor of Plaintiffs against Defendant Governor Tate Reeves, in his official capacity as Governor of the State of Mississippi, that Mississippi Code § 61-3-6 is void as being unconstitutional under Mississippi's Constitution, or alternatively, a declaratory judgment in favor of Plaintiffs against Defendant Governor Tate Reeves, in his official capacity as Governor of the State of Mississippi, that Mississippi Code § 61-3-6 is void as amounting to an unconstitutional violation of the Fourteenth Amendment Equal Protection Clause of the United States Constitution and the equal protection clause of Mississippi's Constitution;

(c)  an Order temporarily enjoining during the pendency of this action the Governor or the State and its officials from taking any steps to enforce Mississippi Code § 61-3-6 or any other provision of Senate Bill 2162, and that this Order be made permanent upon finding that Mississippi Code § 61-3-6 is unconstitutional under either the Constitution of the United States or Mississippi's Constitution; and

(d)  all other relief as the Court deems just and proper.

And, Plaintiffs Mayor Chokwe Antar Lumumba, on behalf of the Citizens of the City of Jackson, Mississippi, Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, Virgi Lindsay, the Jackson Municipal Airport Authority, the Board of Commissioners of the Jackson Municipal Airport Authority, Lucius Wright, Rickey D. Jones, and Rica Lewis-Payton, each in

50

their official and individual capacity, and City of Jackson Class Plaintiffs, on behalf of themselves and all members of the City of Jackson Class as defined above, respectfully request an Order enjoining, during the pendency of this action, all Defendants, including the Governor, the Lieutenant Governor, Madison County, and Rankin County from appointing commissioners to the purported Jackson Metropolitan Area Airport Authority, or in the case of any individual already appointed as a representative to the purported Jackson Metropolitan Area Airport Authority or any other individual purporting to act as an appointee to the purported Jackson Metropolitan Area Airport Authority, an Order enjoining, during the pendency of this action, those appointees from taking office or conducting business or other operations in furtherance of the so-called Jackson Metropolitan Area Airport Authority or its interests, and that this Order be made permanent upon finding that Mississippi Code § 61-3-6 is unconstitutional under either the Constitution of the United States or Mississippi's Constitution, or otherwise unenforceable,

*(the remainder of this page left blank intentionally)*

51

Dated: June 17, 2024.

Respectfully submitted,

**Mayor Chokwe Antar Lumumba, Mayor of the City of Jackson, Mississippi, on behalf of the Citizens of the City of Jackson, Mississippi; Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley Sr., Aaron Banks, and Virgi Lindsay, all in their official capacities as elected members of the City Council of the City of Jackson, Mississippi, from their respective wards**

By:     s/ *Sheridan A. Carr*
        Sheridan A. Carr, MSB #106276
        Drew Martin, MSB #101045
        THE OFFICE OF THE CITY ATTORNEY
        455 East Capitol Street
        Post Office Box 2779
        Jackson, Mississippi 39207-2779
        Office: 601.960.1799
        Facsimile: 601.960.1756
        Email: scarr@jacksonms.gov
        Email: dmartin@city.jackson.ms.us

**Mayor Chokwe Antar Lumumba, individually as a taxpayer and citizen of the City of Jackson, Mississippi, on behalf of himself and all others similarly situated**

By:     s/ *Sheridan A. Carr*
        Sheridan A. Carr, MSB #106276
        Drew Martin, MSB #101045
        THE OFFICE OF THE CITY ATTORNEY
        455 East Capitol Street
        Post Office Box 2779
        Jackson, Mississippi 39207-2779
        Office: 601.960.1799
        Facsimile: 601.960.1756
        Email: scarr@jacksonms.gov
        Email: dmartin@city.jackson.ms.us

52

**Ashby Foote, Kenneth I. Stokes, Angelique C. Lee, Brian C. Grizzell, Vernon W. Hartley, Aaron Banks, and Virgi Lindsay, individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated**

By:     s/ *Sheridan A. Carr*
           Sheridan A. Carr, MSB #106276
           Drew Martin, MSB #101045
           THE OFFICE OF THE CITY ATTORNEY
           455 East Capitol Street
           Post Office Box 2779
           Jackson, Mississippi 39207-2779
           Office: 601.960.1799
           Facsimile: 601.960.1756
           Email: scarr@jacksonms.gov
           Email: dmartin@city.jackson.ms.us

**Jackson Municipal Airport Authority, Board of Commissioners of the Jackson Municipal Airport Authority, Lucius Wright, Rickey Jones, and Rica Lewis-Payton each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority**

By:     s/ *LaToya C. Merritt*
           Fred Banks, Jr., Bar No. 1733
           LaToya C. Merritt, Bar No. 100054
           Nicholas F. Morisani, Bar No. 104970
           Marcellus D. Chamberlain, Bar No. 105672
           Phelps Dunbar, LLP
           4270 I-55 North
           Jackson, Mississippi 39211-6391
           Post Office Box 16114
           Jackson, Mississippi  39236-6114
           Telephone: (601) 352-2300
           Facsimile: (601) 360-9777
           Fred.Banks@phelps.com
           LaToya.Merritt@phelps.com
           Nick.Morisani@phelps.com
           Marcellus.Chamberlain@phelps.com

By:     s/ John L. Walker
        John L. Walker, Bar No. 6883
        Walker Group, PC
        1410 Livingston Lane, Suite A
        Post Office Box 22849
        Jackson MS 39225-2849
        Telephone: 601.948.4589
        Facsimile: 601.354.2507
        jwaker@walkergrouppc.com


**Lucius Wright, Rickey Jones, and Rica Lewis-Payton, each individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated**

By:     s/ Carlos Tanner
        E. Carlos Tanner, Bar No. 102713
        Tanner & Associates, LLP
        263 E. Pearl Street
        Jackson, Mississippi 39201
        Telephone: 662.796.3509
        Facsimile: 662.796.3509
        carlos.tanner@thetannerlawfirm.com

By:     s/ Austin P. Anderson
        Scott P. Lewis, *pro hac vice*
        Austin P. Anderson, *pro hac vice*
        Anderson & Kreiger LLP
        50 Milk Street, 21st Floor
        Boston, Massachusetts  02109
        Telephone:  (617) 621-6500
        Facsimile:  (617) 621-6660
        aanderson@andersonkreiger.com

PD.45176771.1

## CERTIFICATE OF SERVICE

I, *LaToya C. Merritt*, certify that the foregoing document has been filed with the Clerk of Court using the Court's ECF system, which provides service of the foregoing to all counsel of record who have entered an appearance in this case as of the date below.

Date: June 17, 2024.

/s/ *LaToya C. Merritt*
LaToya C. Merritt

PD.45176771.1