# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 19, 2024
Lyle W. Cayce
Clerk

No. 24-60371

───────────

RICKEY D. JONES, *all in their official capacities as Commissioners on the Board of Commissioners of the Jackson Municipal Airport Authority and in their individual capacities as citizens of the City of Jackson on behalf of themselves and all others similarly situated*; RICA LEWIS-PAYTON, *all in their official capacities as Commissioners on the Board of Commissioners of the Jackson Municipal Airport Authority and in their individual capacities as citizens of the City of Jackson on behalf of themselves and all others similarly situated*,

*Plaintiffs—Appellees*,

LUCIUS WRIGHT,

*Intervenor—Appellee*,

versus

GOVERNOR TATE REEVES, *Et al.*,

*Defendants*,

JOSH HARKINS; DEAN KIRBY; PHILLIP MORAN; CHRIS CAUGHMAN; NICKEY BROWNING; JOHN A. POLK; MARK BAKER; ALEX MONSOUR,

*Respondents—Appellants*.

───────────

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-246

_____

Before JONES, WILLETT, and ENGELHARDT, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:

For the fourth time, Mississippi state legislators appeal a district court order compelling discovery in an eight-year-old dispute over control of the Jackson-Medgar Evers International Airport. For numerous reasons that have percolated throughout this litigation, we conclude that the current Plaintiffs, members of the Jackson Municipal Airport Authority, lack Article III standing to sue. Groundhog Day has come to an end. Accordingly, we VACATE the order of the district court and REMAND with instructions to dismiss.

## I. BACKGROUND

Pursuant to state law, the City of Jackson created the Jackson Municipal Airport Authority ("JMAA") in 1960 to manage and operate the capital city's airport. The JMAA is led by five commissioners, all selected by the Jackson city government. The commissioners receive a *per diem* for services provided to the JMAA and reimbursement for reasonable travel expenses related to the business of the airport.

In 2016, the Mississippi legislature passed, and the governor signed into law, S.B. 2162. S.B. 2162 abolished the JMAA and created the Jackson Metropolitan Area Airport Authority ("Authority"). The Authority would be governed by nine commissioners, but only two would be selected by the Jackson city government.

Before S.B. 2162 took effect, all five JMAA commissioners (in their official and individual capacities), plus Jackson's Mayor and City Council ("Plaintiffs") intervened in a suit filed by a local resident to enjoin enforcement of the law. They alleged that S.B. 2162 violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Mississippi Constitution. Plaintiffs contended that S.B. 2162

2

amounted to "an illegal dilution of voting and other rights of the citizens of Jackson, Mississippi," causing them a representational injury. *Stallworth v. Bryant*, 936 F.3d 224, 227 (5th Cir. 2019).

They further alleged that S.B. 2162 altered the airport's management structure for race-based reasons. *Id.* at 227–28. All five JMAA commissioners were black, while the racial composition of Jackson at that time was approximately 79% black and 18% Caucasian. *Id.* at 227. Under S.B. 2162, five commissioners would be selected by the Mississippi executive branch, and two more would be selected by county officials in adjacent counties that are majority Caucasian.[1] According to Plaintiffs, this "demonstrates the City and its citizens and taxpayers have been invidiously excluded because of race, in whole or in part, from any control of its Airport by [S.B.] 2162." *Id.* at 228.

During discovery, Plaintiffs served subpoenas on several Mississippi legislators ("Defendants"), who refused to comply based on relevancy and legislative privilege. The magistrate judge granted discovery in part, and held that any applicable privilege was waived for otherwise privileged information that had been "shared with third parties." *Id.* at 229. The district court upheld the order, but stayed it pending appeal. *Id.*

On the first appeal, this court held that Plaintiffs lacked standing. *Id.* at 230–32. In alleging that S.B. 2162 "deprives . . . [them] of effective and meaningful participation in the affairs of [the airport]," they "failed to

---

[1] The entire commission would consist of the Adjutant General of the Mississippi National Guard (or designee); the Executive Director of the Mississippi Development Authority (or designee); one commissioner appointed by the Mayor of the City of Jackson, the City Council, the Board of Supervisors of Madison County, the Board of Supervisors of Rankin County, respectively; two commissioners appointed by the Governor; and one commissioner appointed by the Lieutenant Governor.

Case 3:16-cv-00246-CWR-ASH Document 495 Filed 12/12/24 Page 4 of 10

No. 24-60371

demonstrate injury to a legally protected interest." *Id.* That is, they showed no individual, concrete interest in a right "to elect officials with the exclusive authority to select municipal airport commissioners." *Id.* at 231. Perhaps in anticipation of defeat, Plaintiffs presented an alternative theory at oral argument. If S.B. 2162 was implemented, they insisted, they would lose their positions as volunteer commissioners, who are "treated as public employees under some aspects of Mississippi law and that other courts of appeals have generally found standing where a government volunteer's position is threatened by government action." *Id.* at 231. Because the newly alleged injuries were untimely raised, this court remanded with instructions to dismiss without prejudice for lack of standing. *Id.* at 232.

On remand, Plaintiffs amended their complaint in an attempt to cure the standing defect and to add two newly appointed commissioners as Plaintiffs. *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 682–83 (5th Cir. 2023). They again served subpoenas on the legislators, "the Legislators again objected on the basis of legislative privilege; the district court again ordered the Legislators to comply with the subpoena; and the Legislators again declined and appealed." *Id.* at 683.

In the course of that second appeal, the panel held that Plaintiffs had standing based on the amended complaint because the alleged injury was "concrete" in that the commissioners would be "deprived of their benefits if they lose their position," including a "*per diem*" and "travel reimbursement." *Id.* at 684–85. The panel then reversed the district court's privilege ruling as overbroad on the issue of requiring production of any communications with third parties. *Id.* at 687. Shortly thereafter, this court granted a petition for rehearing *en banc*, which vacated the panel opinion. *See* Fifth Cir. Local Rule 41.3.

4

No. 24-60371

After a third round of briefing followed by oral argument, the *en banc* court dismissed the appeal as moot because none of the Plaintiff-Commissioners continued to hold their positions at the JMAA. *Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 146–47 (5th Cir. 2024) (en banc).

Following the *en banc* dismissal, Plaintiffs again amended their complaint to add two sitting commissioners as Plaintiffs whose terms will not expire for several years. That cured the mootness problem. The district court then reinstated its prior discovery order, which the legislators again resisted, leading to this fourth appellate round.

## II. Standard of Review

This court reviews questions of subject-matter jurisdiction *de novo*. *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014). We also review *de novo* a district court's determination of controlling law. *Stallworth*, 936 F.3d at 229 (citing *In Re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003)).

## III. Discussion

Yet again, the issues presented on appeal are Plaintiffs' Article III standing and the scope of legislative privilege.[2] Because Plaintiffs lack standing to sue, it is unnecessary to delve into privilege.

Under Article III, § 2, of the Constitution, federal courts have jurisdiction only over cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997) (quoting *Valley Forge Christian Coll. v. Ams.*

---

[2] In case there were doubt, this court has exercised appellate jurisdiction in each of the previous appeals. *See Stallworth*, 936 F.3d at 226; *Jackson Mun. Airport Auth.*, 98 F.4th at 144. We continue to have appellate jurisdiction.

5

*United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 758 (1982)). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37, 96 S. Ct. 1917, 1924 (1976).

Critical to the case-or-controversy requirement is that "[plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines*, 521 U.S. at 818, 117 S. Ct. at 2317 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136–37 (1992)). To meet the requirements of Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016).

Further, the injury alleged by plaintiffs must be "personal." *Raines*, 521 U.S. at 818, 117 S. Ct. at 2317 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984)). Plaintiffs must establish that they have a "'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to [them]." *Id.* at 819. In contrast, actions that allegedly damage "all [m]embers of [an entity] equally" cause "a type of institutional injury." *Id.* at 821. Such plaintiffs lack a sufficient "personal stake" in the dispute, and do not allege a "sufficiently concrete injury to . . . establish[] Article III standing." *Id.* at 830.

The injury that these Commissioner-Plaintiffs allege as a result of S.B. 2162 is an institutional one. Because S.B. 2162 supplants the JMAA with the Authority in its entirety, any alleged injury caused by the statute necessarily affects the JMAA as an entity. Plaintiffs have not alleged any particularized personal injury arising from this governmental restructuring. Plaintiffs are not "singled out for specially unfavorable treatment" when the

6

No. 24-60371

JMAA (and the commissioners' positions) is replaced with a new regional airport authority. *Id.* at 821; *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 307 (3d Cir. 2022) (holding that individual legislators lacked standing to challenge a ban on fracking because the "injuries they allege affect the state legislature as a whole"); *Kerr v. Hickenlooper*, 824 F.3d 1207, 1215 (10th Cir. 2016) (defining an "institutional injury" as one that "impacts all members . . . in equal measure"). As Judge Duncan explained, "the Commissioners' asserted injuries are institutional to the core. They are seeking to stop the abolition of the JMAA, pure and simple. That's an institutional injury. *See Raines*, 521 U.S. at 821 (explaining that an 'institutional injury' is one 'which necessarily damages all Members . . . *equally*) (emphasis added).'"[3] *Jackson Mun. Airport Auth. v. Harkins*, No. 21-60312, 2023 WL 5522213, at *11 (5th Cir. Aug. 25, 2023) (unpublished) (Duncan, J., concurring in part and dissenting in part).

Plaintiffs also fail to show that they are in effect employees who can claim injury from the loss of the *per diem* payments and travel reimbursements that accompany the position of JMAA Commissioner. Under Mississippi law, commissioners receive "per diem compensation . . . for each day or fraction of a day engaged in attendance of meetings of the authority or engaged in other official duties of the authority," up to a yearly cap, and reimbursement for "actual travelling expenses incurred." Miss. Code Ann. § 61-3-13(1). Plaintiffs attempt to equate

---

[3] Even if some kind of personal, non-institutional injury was inflicted on the Plaintiffs by the state legislature's transferring airport governance to the new Authority, it would still be too speculative for standing. Under S.B. 2162, Jackson's mayor and city council will appoint two commissioners to the Authority. Miss. Code Ann. § 61-3-6(2)(c) and (d). These Plaintiffs have as good a shot at being appointed to the two new positions as fellow JMAA commissioners. They may not suffer injury at all, or in any event, the possibility is even further speculative. *See, e.g., Lujan*, 504 U.S. at 583, 112 S. Ct. at 2148 (Stevens, J., concurring).

7

No. 24-60371

this remuneration with a salary, the loss of which would give rise to Article III standing. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 496–500, 550, 89 S. Ct. 1944 (1969); *Myers v. United States*, 272 U.S. 52, 47 S. Ct. 21 (1926). But the Plaintiffs receive no other monetary benefits of employment status, like insurance or retirement compensation, and these minimal payments are not a formal salary. They do not transform purely political appointments to volunteer positions into an employer-employee relationship.[4] The Plaintiffs have no protected property interest in their appointments, nor in the perks that might accompany those appointments. This is why they suffer no personal injury when the office to which they were appointed is terminated or sunset by the legislature. *See Houchens v. Beshear*, 850 F. App'x 340, 344 (6th Cir. 2021) (citing *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339 (6th Cir. 1992) (holding that a political appointee cannot bring a substantive due process claim for improper discharge)); *see also Haddock v. Tarrant Cnty.*, 852 F. App'x 826, 830 (5th Cir. 2021) (noting that appointed judges may even be removed for political reasons).[5]

There is also a fundamental disconnect between the Plaintiffs' theory of employment-related injury, *i.e.* loss of *per diem* and travel reimbursement, and the remedy they seek, which is an injunction preventing abolition of the JMAA. As the Supreme Court recently re-emphasized, plaintiffs must

---

[4] That state law grants the JMAA commissioners immunity for official duties, bars them from lobbying, and subjects them to state ethics rules also does not transform them into "employees" of the state or JMAA. *See, respectively,* MISS. CODE ANN. § 11-46-1(f) (immunity "whether with or without compensation"); Sec. 5-8-3(p) ("lobbying barred "whether compensated or not"); Sec. 25-4-3(i) (ethics rules applicable if per diems paid or expenses reimbursed).

[5] Other circuits recognize that an unpaid volunteer may have a protectible legal interest, but most require that state law creates that interest. *See Barton v. Clancy*, 632 F.3d 9, 25 (1st Cir. 2011) (collecting cases). Plainly, Mississippi law creates no such protection, because the JMAA was legislatively superseded when the Authority was created.

No. 24-60371

establish standing for each claim they make and each form of relief they seek. *Murthy v. Missouri,* 144 S. Ct. 1972, 1988 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S. Ct. 2190 (2021)). Even if Plaintiffs had standing to recover lost "compensation," they lack standing to seek an injunction against S.B. 2162. None of the salary-related cases cited in Judge Ho's concurrence to this court's en banc dismissal, *Jackson Mun. Airport Auth.*, 98 F.4th at 149 (Ho, J., concurring), resulted in an injunction to preserve their positions.

Moreover, this court's previous cases concerning personal injury with respect to *per diem* payments and travel expenses are readily distinguishable. In *United States v. Georgia Power Co.*, a company engaged in disparate treatment of black employees compared to similarly situated white employees. 474 F.2d 906, 922 (5th Cir. 1973); *see also Langley v. Jackson State Univ.*, 14 F.3d 1070, 1072 (5th Cir. 1994) (overruled on other grounds) (involving the alleged denial of travel expenses based on race). S.B. 2162 does no such thing. Rather than singling out particular JMAA commissioners for adverse treatment, or disadvantaging JMAA Commissioners vis a vis other airport commissioners, S.B. 2162 eliminates the JMAA altogether and replaces it with a new regional entity.

The elimination of JMAA and its replacement by the Authority is the crux of this case. JMAA Commissioners' *per diem* and travel expenses compensate and reimburse them only for their official duties as appointees. If the seat to which these duties are owed disappears, so too does the need for any associated reimbursement or compensation. With the elimination of the JMAA, there are no official duties requiring a *per diem*; and in the absence of JMAA-related travel expenses, there is nothing to reimburse. *See* Miss. Code Ann. § 61-3-13(1). As in *Raines*, "the injury claimed . . . here is not claimed in any private capacity but solely because they are [commissioners]." *Raines*, 521 U.S. at 821, 117 S. Ct. at 2318. "The claimed

9

No. 24-60371

injury thus runs (in a sense) with the [commissioners'] seat, a seat which the [commissioner] holds (it may quite arguably be said) as trustee for his constituents, not as a prerogative of personal power." *Id.*

Taking a final cue from Judge Duncan's dissent to the second panel opinion, the district judge was "refreshingly frank about what's really at stake in this case. In an order approving the amended complaint, the judge writes:

> The fundamental question at the heart of this dispute is, who gets to control the airport and its surrounding assets? Is it the local government, which in this case owns and operates the Jackson airport, or the state government, which generally speaking has authority over the composition of airport boards in Mississippi?

Exactly. This suit is nothing more than a political dispute between state and local governments over control of an airport and the land around it. One side has dragged that fight into federal court by tricking it out in equal protection colors. That won't fly." *Jackson Mun. Airport Authority*, 2023 WL 5522213, at *12 (Duncan, J., concurring in part and dissenting in part).

These Plaintiffs lack standing to sue under any plausible theory.

For the foregoing reasons, the order of the district court is VACATED, and the case is REMANDED with instructions to DISMISS.